# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| **TERRY PETTEWAY, et al.**<br><br>    **Plaintiffs,**<br>v.<br><br>**GALVESTON COUNTY, TEXAS, et al.**<br><br>    **Defendants.** | § § § § § § § § § § § | **Civil Action No. 3:22-CV-00057 (Consolidated)** |
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiffs,**<br>v.<br><br>**GALVESTON COUNTY, TEXAS, et al.**<br><br>    **Defendants.** | § § § § § § § § § § § § § | **Civil Action No. 3:22-CV-00093** |
| **DICKINSON BAY AREA BRANCH NAACP, et al.**<br><br>    **Plaintiffs,**<br>v.<br><br>**GALVESTON COUNTY, TEXAS, et al.**<br><br>    **Defendants.** | § § § § § § § § § § § § § | **Civil Action No. 3:22-CV-00117** |

**DEFENDANTS', GALVESTON COUNTY, TEXAS, GALVESTON COUNTY COMMISSIONERS COURT, AND HON. MARK HENRY'S, IN HIS CAPACITY AS GALVESTON COUNTY JUDGE, REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF THE UNITED STATES OF AMERICA**

**INTRODUCTION**

This Court should dismiss the United States' First Amended Complaint ("FAC") for lack of jurisdiction and for pleading insufficient facts. In its Response, the United States either addresses arguments Defendants never made or it relies upon caselaw that, upon closer inspection, supports Defendants. Accordingly, this Court should grant Defendants' Motion to Dismiss.

**ARGUMENT**

**I.     THIS COURT LACKS JURISDICTION TO HEAR THE UNITED STATES' CLAIM.**

This Court lacks jurisdiction for three reasons. *First*, the United States' Voting Rights Act claim is, at its core, a partisan gerrymandering claim demanding a fair partisan allotment of seats on the Commissioners Court.

*Second*, this Court lacks jurisdiction because the United States' claim is moot. The United States failed to plead sufficient facts establishing that Commissioner Holmes is the candidate of choice for Black and Latino voters in Commissioners Court Precinct 3. Within the four corners of the FAC, Commissioner Holmes is apparently the candidate of choice because he is Black. The Commission now has a second Black Commissioner whom the voters will be able to vote for this November. Accordingly, based on the United States'FAC, this claim is now moot.

*Third*, this Court lacks jurisdiction because the United States failed to plead sufficient facts to assure this Court that the United States' claim is redressable. The United States failed to demonstrate that the Commissioners Court has enforcement authority over

1

the precinct lines. The United States should have also sued the Galveston County Clerk who enforces the Commissioners Court precinct boundaries.

### A. The United States' Claim Is a Non-Justiciable Political Question.

The U.S. Supreme Court has long recognized that "[p]olitics and political considerations are inseparable from districting and apportionment[]" and redistricting is intended to have substantial political consequences. *Gaffney v. Cummings*, 412 U.S. 735, 753 (1973).

The United States asserts that Black and Latino voters in Galveston County are politically cohesive because in recent elections, they have voted for the same candidates. First Amended Complaint ("FAC") ¶ 92. The United States does not identify who the candidates are that Black and Latino voters support. But, the Petteway Plaintiffs do identify which candidates Black and Latino voters support, namely Democrats, while Anglo voters within the County primarily vote Republican. Petteway Second Am. Compl. ¶¶ 124-127, ECF No. 42.[1] The United States responds that this Court cannot impute the Petteway Plaintiffs' arguments to the United States. Pls.' Opp'n Br. at 6. But this responds to an argument Defendants did not advance. Rather, the Defendants point out that the Petteway Plaintiffs say directly what the United States implies indirectly. Defendants' argument is

---

[1] Although it is true that consolidation does not merge lawsuits into one, Pls.' Opp'n Br. at 6, it is also true that this Court is permitted to take "judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings" while not crediting the facts themselves as true. *Ferguson v. Extraco Mortg. Co.*, 264 Fed. App'x 351, 352 (5th Cir. 2007) (citing and quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998).

2

that this case is about the United States' vision for a fair allocation of partisan political power and nothing more. Defendants simply cited the Petteway Plaintiffs' Second Amended Complaint as an example of that argument. Tellingly, in its opposition brief, the United States does not deny what the Petteway Plaintiffs overtly assert and, in any event, that assertion is not novel. *See, e.g.*, *Easley v. Cromartie*, 532 U.S. 234, 258 (2001).

Furthermore, the United States does not deny that the Department of Justice met with Galveston County Democratic Party officials. Pls.' Opp'n Br. at 7 n.1. Instead, and again, the Department of Justice responds to an argument never advanced, namely, that the Department has no control over what a newspaper prints. But this avoids the point Defendants did advance: the Galveston County Democratic Party knew the Department of Justice was visiting the county— a fact unbeknownst to Galveston County officials—and the County Democrats intended to meet with the Department of Justice officials to present the Department with evidence it could use in this case. Defs.' Mot. To Dismiss at 10-11 n.7. The Department's non-denial seemingly admits the facts and demonstrates the Department's true intent: to ensure that Democrats receive what the Department considers a fair share of seats on the County Commissioners Court.

This partisan lens is important to ascertaining whether the United States' FAC presents a non-justiciable political question. *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1260 (11th Cir. 2020) (holding that plaintiffs brought a non-justiciable political question in their complaint, despite challenging Florida' ballot order statute, because the case required "a threshold determination about what a 'fair' apportionment of political power looks like" (citing *Rucho v. Common Cause*, 139 S. Ct. 2484, 2499-500 (2019)).

3

The United States' FAC ultimately calls for the same threshold determination about the allocation of political power. This Court should dismiss. *See Rucho*, 139 S. Ct. at 2499.

Additionally, precisely because race and political preference often correlate, the United States must plead exogenous election studies involving primary elections to support a Section 2 claim. *But see* Pls.' Opp'n Br. at 7. This is because primary elections remove the partisan element of voting behavior, thereby allowing researchers to assess political preference in an environment untainted by partisanship. Accordingly, allegations concerning primary election results are needed to disentangle racial reasons from partisan reasons. Without such allegations, the United States' Section 2 claim does not rise to the level of the plausible.

### B. The United States' Claim Is Moot.

The United States alleges that Commissioner Holmes "is Black" and that he was elected from Precinct 3, the only majority-minority Commissioners Court precinct. FAC ¶¶ 21, 27, 81, 109. But the United States never explains why Commissioner Holmes represents the interests of minority voters beyond merely asserting that he is "the sole minority member of the commissioners court . . . and is elected from the only commissioners court precinct in which Black and Hispanic voters constitute a majority of eligible voters." FAC ¶ 21 (emphasis added). Without further explanation, it seems, relying only upon the facts pleaded in the FAC, that the United States believes that either Commissioner Holmes's race or his partisan affiliation is what makes him the candidate of choice of minority voters. Thus, either the United States' claim is moot or a non-justiciable political question. Importantly, Defendants are not asserting that proportional representation shields the

County from liability. Defs.' Mot. To Dismiss at 12. But the lack of proportional representation, if evidence of a problem at all, is evidence only of a problem that no longer exists. *See id*.

Finally, Dr. Armstrong (the Commissioner Court's second currently sitting Black member) intends to run for reelection in November of 2022.[2] And if it is true that there is no evidence that Commissioner Armstrong is the candidate of choice for minority voters in Galveston County given that he has not previously run for a seat on the Commissioners' Court, then perhaps the United States' claim is unripe until Commissioner Armstrong's election occurs in November of 2022. Pls.' Opp'n Br. at 9.

C. **The United States' Claim Is Not Redressable.**

It is the United States' burden to prove that this Court has jurisdiction. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). This means that the United States must plead sufficient facts to establish each element of standing, including redressability. *See id*. at 560-61. The United States appears to conflate the Article III redressability requirement with a merits inquiry into *how* an injury can be remedied. *See* Pls.' Opp.'n Br. at 11 (citing *League of United Latin Am. Citizens v. Abbott*, No. 121-CV-1006RPJESJVB, 2022 WL 1631301, at *7 (W.D. Tex. May 23, 2022) ("*LULAC II*"). This is a critical problem, because the discussion cited in *LULAC II* concerned whether an injury-in-fact existed, not whether the defendant was someone against whom relief could be granted. But the United States

---

[2] i45NOW, Facebook (May 17, 2022), https://www.facebook.com/watch/?v=382179253834541 (local news site noting that "Armstrong did say he intends to run for office on the November ballot.").

5

cannot avoid the Article III redressability requirement by recasting it as a merits inquiry into what type of "remedy" is available. *See, e.g., OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (state's argument about statutory validity did not meet the redressability component of standing, explaining that a merits inquiry into whether the statute was valid but misapplied by county officials must wait until after standing is established).

The United States asks this Court to enjoin Defendants, their agents, assigns, and those acting in concert with the Defendants "from administering, implementing, or conducting any future elections for the Galveston County Commissioners Court under the 2021 redistricting plan." FAC, Prayer for Relief 3. Importantly, in the context of injunctive relief, a plaintiff cannot satisfy the redressability prong of standing when the plaintiff sues a defendant who has no power to redress the alleged injury. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001). Here, there are no allegations that the Defendants, the Commissioners Court and County Judge Mark Henry have the authority to administer, implement or conduct Commissioners Court elections. *See* Defs.' Mot. To Dismiss at 12-15.

As Defendants noted, the United States pleads that the Commissioners' Court has the authority to determine and approve the Commissioners Court precinct boundaries. Defs.' Mot. To Dismiss at 14 (citing FAC ¶¶ 15, 22); *see also* Pls.' Opp'n Br. at 11. But this is not the same as asserting the Commissioners Court has the authority to administer, implement, or conduct the elections. Instead, it is the County Clerk who is imbued with authority to administer and conduct elections in Galveston County.

Unlike the County Commissioners or the Commissioners Court, the County Clerk is an election official, Tex. Elec. Code § 1.005(4-a)(a); is the chair of the County Election Board, *id*. § 51.002(c); transmits the county commission precinct map to the Secretary of State after redistricting, *id*. § 42.037(a); receives the official certified list of candidates in the county from the Secretary of State, *id.* § 161.008(b); tabulates the unofficial returns of elections, *id.* § 66.056; and prepares and certifies County election returns. *id.* § 67.007. Additionally, it is either the county tax assessor or the county clerk who is the voter registrar for the county, not the Commissioners Court. *Id*. §12.031. The United States fails to plead (and cannot establish, anyway) that they have any control over the decisions of any election official in the County. Injunctive relief is impossible against Defendants.

The United States' FAC is devoid of these necessary allegations showing that they can obtain relief from any Defendant. They ignore who in Galveston County has authority to implement, administer, and conduct elections. The United States has not pleaded sufficient facts to demonstrate that this Court has jurisdiction to proceed under the FAC.

**II. THE UNITED STATES FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM.**

**A. The United States Fails to Plead Sufficient Facts to Satisfy the Second and Third *Gingles* Preconditions.**

To survive this Motion to Dismiss, the United States must plead sufficient facts to establish each of the three *Gingles* preconditions. *See Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). "Each of these preconditions must be shown on a district-by-district basis." *LULAC v. Abbott*, No. 3:21-CV-259, 2022 U.S. Dist. LEXIS 91761, at *47-48 (W.D. Tex. May 23, 2022) (three-judge court) (hereinafter "*LULAC II*").

The United States fails to satisfy the second and third *Gingles* preconditions. Although the United States alleges that Black and Latino voters are cohesive and have voted for the same candidates in recent elections, FAC ¶ 92, it fails to sufficiently plead the *Gingles* second precondition because it fails to allege the level of cohesion. Defs.' Mot. To Dismiss at 16-17; *see LULAC II*, 2022 U.S. Dist. LEXIS 91761, at *55.

The United States insists that it pleaded sufficient facts. It cites paragraphs 90 and 92 of the FAC to show that it alleged "statistical analyses of voting patterns in Galveston County" demonstrating that Black and Hispanic voters voted for the same candidate. Pls.' Opp'n Br. at 14. The United States also alleges that the Black and Hispanic voters living in "prior versions" of Precinct 3 have elected minority county commissioners. *See id*.

But these allegations miss the point because the United States does not plead the approximate *level* at which Black and Latino candidates vote for the same candidate. The allegation is therefore insufficient because it does not say how "unified" Black and Latino voters are. *LULAC II*, 2022 U.S. Dist. LEXIS 91761, at *55. Perhaps Black and Latino voters consistently vote for the same candidate 51% of the time; if true, that would be insufficient cohesiveness under controlling law. *See id*. Thus, allegations that prior versions of Commissioner Precinct 3 where Black and Hispanic voters formed a majority and a minority representative consistently won are irrelevant because they do not demonstrate the level of cohesion in the hypothetical Precinct. Far from sufficing to provide a "plausible allegation," the United States' FAC falls short. Pls.' Opp'n Br. at 14.

Reliance on *LULAC v. Abbott* is misplaced and, in fact, supports Defendants' arguments for dismissal. There, the plaintiffs provided a "list" of the results from several

8

elections and asserted that the minority-preferred candidates prevailed in those elections. 2022 U.S. Dist. LEXIS 8305, at *9 (W.D. Tex. Jan. 18, 2022) (three-judge court) (hereinafter "*LULAC I*"). The Court there held that such pleading was plausible. *See id*. This is because the complaint there provided the Court with an approximation of the cohesiveness because it listed each election, from the county level to national level, from 2018 and 2020, and listed the percentage margin of victory in each race. *See LULAC v. Abbott*, No. 21-259, Compl. ¶ 37 (W.D. Tex. Nov. 10, 2021, ECF 7, Ex. 7) (three-judge court). This permitted the Court to infer that the percentage of cohesiveness was sufficiently high to make cohesiveness plausible. *LULAC I*, 2022 U.S. Dist. LEXIS 8305, at *9 (holding that because plaintiffs there pleaded the election results where the minority candidate of choice won, including the percentage margin of victory, plaintiffs' allegations of cohesiveness were plausible).

By contrast, here, the United States does not even identify the candidates, indicate which candidate won, which candidate lost, for whom Black and Latino voters voted, and most importantly, what was the percentage margin of victory. *Compare LULAC I*, No. 21-259, Compl. ¶ 37 (providing election results with the percentage margin of victory in the challenged district) *with* FAC ¶¶ 5, 92, 109 (asserting that Black and Latino voters vote for the same candidates without identifying who the candidates are and without providing any percentage margin of victory for the winning candidate). Without providing an approximation of cohesion, this Court cannot infer that the allegations of cohesiveness are even plausible. *See LULAC II*, 2022 U.S. Dist. LEXIS 91761, at *55 (holding that because plaintiffs' allegations do not indicate "how unified" Hispanic voters were, their claim failed

9

to move from conceivable to plausible). Accordingly, because the United States failed to allege any election related information and failed to allege how unified Black and Latino voters are, this Court should dismiss this case.

*Next*, the United States also fails to plead sufficient facts to plausibly allege that Anglo voters vote sufficiently as a bloc to prevent Black and Latino voters from electing their candidate of choice. *See* Defs.' Mot. To Dismiss at 17. In *LULAC I*, the plaintiffs there again pleaded election results and percentage margins of victory to demonstrate that in the challenged district, the Anglo voters would consistently defeat the minority's candidate of choice at the polls. *LULAC I*, No. 21-259, Compl. ¶ 47; *see also LULAC I*, 2022 U.S. Dist. LEXIS 8305, at *10-11 (holding that plaintiffs plausibly alleged white bloc voting by showing that Anglo voters "vote by large margins for Republican candidates and against Democratic candidates, who are preferred by the large majority of blacks and Hispanics"). By contrast, in *LULAC II*, the plaintiffs there failed pleading standards by alleging that Anglo voters "engage in 'bloc voting'" and that polarized voting occurs at "levels which are legally significant" without providing any election results or approximate percentages of polarization. *LULAC II*, 2022 U.S. Dist. LEXIS 91761, at *55-56.

Here, the United States fails to move the needle from the conceivable to the plausible because the United States does not plead any election results, percentage margin of victory, or approximate percentage of polarization. The United States relies on paragraph 93 of its FAC. But that paragraph is even more deficient than the paragraph in *LULAC II*. The plaintiffs in *LULAC II* at least pleaded that polarization was at "levels which are legally sufficient." *Id.* Here, the United States simply asserts that voting in Galveston

10

County—not even in a specific precinct, but within the County as a whole—is racially polarized. Furthermore, based on election studies, the results of which are not revealed, the United States asserts that the candidate of choice of Black and Latino voters consistently loses in the newly enacted precincts. FAC ¶ 93. This is an unadorned assertion and is therefore insufficient. *Id*. The United States' Section 2 claim should be dismissed.

### B. The United States Fails to Plead Sufficient Facts to Sustain a Claim of Intentional Vote Dilution.

The United States alleges that the history of redistricting in the County, including litigation victories concerning justice of the peace and constable districts, interposing Section 5 objections in two of the last three redistricting cycles, is relevant to determining intentional discrimination here. Pls.' Opp'n Br. at 18-19. But reliance on Section 5 letters is wrong as a matter of law because "[T]he judiciary retains an independent obligation in adjudicating [] equal protection challenges to ensure that the State's actions are narrowly tailored to achieve a compelling interest." *Miller v. Johnson*, 515 U.S. 900, 922 (1995). The relevant evidence is judicial determinations of invalidity (none of which appear in the record), not *prima facie* Section 5 letters issued before fact-finding and litigation commenced. *See LULAC v. Abbott*, No. 3:21-CV-259-DCG-JES-JVB, 2022 U.S. Dist. LEXIS 80659, at *51-52 (W.D. Tex. May 4, 2022) (hereinafter "*LULAC III*") (denying plaintiffs' motion for preliminary injunction). A DOJ letter advising a state that it has detected indicia of discrimination does not relieve the state of its independent obligation to assure itself with a strong basis in evidence that a remedy is required. *See Miller*, 515 U.S. at 922. Defs' Mot. To Dismiss at 17-22.

11

Reliance on *Veasey* is also inapposite. The court there ruled only that the DOJ's Section 5 objection letter *augmented* the other circumstantial evidence of discriminatory intent, but never held that the Section 5 letter *itself* was evidence of discriminatory intent. *Veasey v. Abbott*, 830 F.3d 216, 239-240 (5th Cir. 2016) (*en banc*).

And, although past judicial determinations of discrimination are relevant here, the United States' reliance on judicial decisions that are 30 years old are irrelevant under the *Arlington Heights* analysis. FAC ¶ 25. Wine may get better with age, but the relevance of past judicial determinations under *Arlington Heights* dissipates. "[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful. The ultimate question remains whether a discriminatory intent has been proven in a given case. More distant instances of official discrimination in other cases are of limited help in resolving that question." *Mobile v. Bolden*, 446 U.S. 55, 74 (1980); *see also Abbott v. Perez*, 138 S. Ct 2305, 2324-25 (2018) (holding that "[t]he allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination," and noting that the Court has "never suggested that past discrimination flips the evidentiary burden on its head").

*Next*, the United States alleges that the sequence of events, including the failure to adopt redistricting criteria, the alleged exclusion of Commissioner Holmes, and the elimination of the prior Commissioner Precinct 3 leads to an inference of intentional discrimination. Pls.' Opp'n Br. at 19, 23. But like every other Commissioner, Commissioner Holmes had the ability and legal authority to place redistricting on any

meeting agenda. *See* Tex. Att'y. Gen. Op. No. DM-228 at 3; Defs.' Mot. To Dismiss at 5, 20-21. Yet he never did.

The United States does not respond to Defendants' point that Commissioner Holmes has the legal authority to place matters—including redistricting—on the public agenda. Instead, the United States attempts to reframe Defendants' response as challenging the veracity of the United States' allegation. Pls.' Opp'n Br. at 22. But, in demonstrating that Commissioner Holmes is vested with the legal authority to place items on the agenda, Defendants were not making a factual assertion, but were showing that as a matter of law, Commissioner Holmes has this legal authority. The United States' assertion that Commissioner Holmes was "effectively excluded from the 2021 redistricting process," Pls.' Opp'n Br. at 23, is simply wrong, not as a factual matter but as a matter of law. *See* Tex. Att'y. Gen. Op. No. DM-228 at 3.[3]

Similarly, the arguments that Defendants advanced, including that the Commissioners Court is not required to adopt redistricting criteria and that its redistricting meeting on November 12, 2021 followed the Commissioners Court's normal procedures, are similarly not factual assertions that are outside the Court's scope of review on a Motion to Dismiss. *See* Defs.' Mot. to Dismiss at 19-20.

*First*, it is an assertion of law, not fact, that there is no legal requirement to adopt redistricting criteria. *Id.* at 19 and n.8. The United States' assertion that this Court can take

---

[3] The Fifth Circuit has recognized that opinions of the Texas Attorney General have a legally binding effect. *See Freedom from Religion Found., Inc. v. Mack*, 4 F.4th 306, 309 n.2 (5th Cir. 2021).

13

a negative inference because the Commissioners Court did not do something that is not legally required cannot be sufficient to overcome the presumption of legislative good faith. *Abbott*, 138 S. Ct at 2324-25.

*Second*, the public meeting schedules that were attached to the Motion to Dismiss as Exhibit A are—as the United States indicates—a matter of public record. Pls.' Opp'n Br. at 17; FAC ¶ 41. Documents that are publicly available, directly relevant to the issues in the case, and generated by the government are judicially noticeable. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see* Defs.' Mot. To Dismiss at 8. Accordingly, because the public agendas attached as Exhibit A are publicly available, generated by the Galveston County government, and are directly relevant to the issues at hand, this Court should take judicial notice of the public meeting agendas in Exhibit A. *Funk*, 631 F.3d at 779, 783 (holding that district court properly took judicial notice of a government document in granting a 12(b)(6) motion where the government document showed that the medical device at issue in the case was approved under a process that preempted states from enacting more strict safety standards, preempting plaintiff's claim).

Here, the United States asserts that the November 12, 2021 meeting departed from normal procedures. FAC ¶¶ 62-66. But the public agendas contained in Exhibit A, that are publicly available, generated by Galveston County, and whose accuracy is undisputed, show that the November 12, 2021 was consistent with normal meeting procedures. This Court should take judicial notice of the meeting agendas contained in Exhibit A. *See Funk*, 631 F.3d at 783. And, because the United States does not dispute the information contained

14

on the Census Bureau's website, this Court should take judicial notice of the information contained on that website. Defs.' Mot. To Dismiss at 8.

The Parties here do not dispute the key fixtures of the redistricting map. Pls.' Opp'n Br. at 22 n.5. The United States agrees that the website was publicly available on October 29, 2021 and allowed the public to submit public comment. FAC ¶¶ 56-57. This is all Defendants wanted the Court to recognize. Thus, the public had approximately two weeks to review the map and submit public comments through the website. Then, there was a public meeting for the public to provide additional in-person comments. Nothing more is required. Defs.' Mot. To Dismiss 19-20.[4] The arguments that Defendants advance are not factual but legal and therefore go to the legal sufficiency of the FAC. Accordingly, this Court should grant the Motion to Dismiss.

## **CONCLUSION**

This Court should grant Defendants' Motion to Dismiss.[5]

Date: July 12, 2022                              Respectfully submitted,

---

[4] Additionally, in their Motion to Dismiss, Defendants do not advance an argument that COVID caused the Commissioners Court to depart from normal practice. *But see* Pls.' Opp'n Br. at 23. Rather, the Motion to Dismiss merely highlights that in the compressed timeframe that the Commissioners Court was dealt by the Census Bureau—which the United States does not dispute—the Commissioners Court still provided the public two weeks to review the map, provide public comment over the website, and held a hearing for the public to also provide comments. Defs.' Mot. To Dismiss at 20.

[5] This Court should grant the requested Motion to Dismiss with prejudice. *See* Defs.' Mot. to Dismiss at 23 n.10; *but see* Pls.' Opp'n Br. at 24-26. Plaintiff is the United States, represented by the Department of Justice Civil Rights Division and not a *pro se* party who failed to timely serve. Reliance on *Millan v. USAA GIC* is therefore misplaced. 546 F.3d 321, 323 (5th Cir. 2008). Furthermore, in their May 16, 2022 letter, Defendants did inform the United States that it failed to plead sufficient facts to support their allegations. Therefore, if this Court dismisses the Section 2 claim for failure to plead sufficient facts under the Second and Third *Gingles* preconditions, it should dismiss with prejudice.

15

/s/ Dallin B. Holt
Dallin B. Holt
Attorney in Charge
Texas Bar No. 24099466
S.D. of Texas Bar No. 3536519
Jason B. Torchinsky*
Shawn T. Sheehy*
dholt@holtzmanvogel.com
jtorchinsky@holtzmanvogel.com
ssheehy@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 2019
P: (540) 341-8808
F: (540) 341-8809
*Pro hac vice pending

Joseph R. Russo, Jr.
Greer, Herz & Adams, L.L.P.
State Bar No. 24002879
Federal I.D. No. 22559
Jordan S. Raschke
State Bar No 24108764
jrusso@greerherz.com
jraschke@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (telephone)
(866) 456-0170 (facsimile)

Angie Olalde
Greer, Herz & Adams, L.L.P.
State Bar No. 24049015
Fed. ID No. 11084
aolalde@greerherz.com
2525 South Shore Blvd., Ste. 203
League City, Texas 77573
(409) 797-3200 (telephone)
(866) 422-4406 (facsimile)
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2022, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Dallin B. Holt*
Counsel for Defendants
