UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DICKINSON BAY AREA BRANCH NAACP, et al., | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-117- JVB |
| GALVESTON COUNTY, TEXAS, et al., | § § § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| TERRY PETTEWAY, et al., | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | Civil Action No. 3:22-cv-57-JVB [Lead Consolidated Case] |
| GALVESTON COUNTY, TEXAS, et al. | § § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff*, | § | |
| v. | § § § | Civil Action No. 3:22-cv-93-JVB |
| GALVESTON COUNTY, TEXAS, et al. | § § | |
| *Defendants*. | § | |

## *NAACP* PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION TO STAY

Defendants once again argue that this case should be stayed pending the U.S. Supreme Court's decision in *Merrill v. Milligan*, No. 21-1086 (U.S. Feb. 7, 2022) and

*Merrill v. Caster*, No. 21-1087 (U.S. Feb. 7, 2022) (together, "*Merrill*"), even though this Court already denied Defendants' earlier stay motions in these consolidated matters, *see NAACP* Stay Ord., No. 3:22-cv-117, Dkt. 36 (hereafter "*NAACP* Stay Ord."); *Petteway* Stay Ord., No. 3:22-cv-57, Dkt. 40; *U.S.* Stay Ord., No. 3:22-cv-93, Dkt. 28, which relied on substantially the same grounds. *See* No. 3:22-cv-117, Dkt. 33; No. 3:22-cv-57, Dkt. 36; No. 3:22-cv-93, Dkt. 27. Their motion should be denied for several reasons.

*First*, Defendants' motion lacks any procedural justification. They cite to no procedural rule that would justify their "renewed" motion. Instead, Defendants either assert arguments this Court already rejected or present new arguments that they should have asserted in their prior motions. The Court should reject Defendants' improper request for a "do over" on these grounds alone.

*Second*, the grounds for denying a stay remain unchanged since this Court rejected Defendants' arguments in May. A stay in this matter would risk irreparable harm to Plaintiffs if they and their members are forced to vote in a second set of elections under a constitutionally suspect map. By contrast, granting a stay would not alleviate any perceived hardship or inequity for Defendants, especially given that the Supreme Court's decision in *Merrill* will have no bearing on Plaintiffs' ability to pursue their intentional discrimination and racial gerrymandering claims—a fact Defendants do not meaningfully dispute. And as for the impact Defendants "speculate" *Merrill* may have in this matter (*see NAACP* Stay Ord. at 1), it would be negligible given that the questions presented here are not at issue in *Merrill*. Thus, a stay will not further judicial economy either. And in any event, this Court has already observed (and Defendants have agreed, *see* Mot. at 4) it will be able to "adjust

quickly to any changes in the law that may come from *Merrill* or any other case." *NAACP* Stay Ord. at 3. Defendants' remaining arguments—which they failed to assert in their initial stay motions—are otherwise unavailing.

For these and the additional reasons set forth below, Defendants' renewed motion should be denied.

## I. LEGAL STANDARDS

### A. Motions for Reconsideration

"As the Fifth Circuit has noted, the Federal Rules of Civil Procedure do not recognize a 'motion for reconsideration.'" *Kaden v. Schleese Saddlery Serv.*, No. EP-17-CV-00053-KC, 2017 U.S. Dist. LEXIS 218975, at *3 (W.D. Tex. Nov. 20, 2017) (citing *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004)). And while trial courts retain the power under Rule 54(b) to revise interlocutory orders before entry of judgment,

> District courts in the Fifth Circuit have emphasized that the purpose of a motion to reconsider is not to re-debate the merits of a particular motion, or to advance legal theories that could have been presented earlier. Instead, these motions serve a narrow purpose: to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence. Litigants are expected to present their strongest case when the matter is first considered. In fact, it is an improper use of a motion to reconsider to file it as merely a second attempt to sway the judge.

*Id.* at *3–4 (internal quotations, alterations, and citations omitted).

### B. Motions to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In

determining whether to grant a stay, the court must consider "whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 U.S. Dist. LEXIS 15120, at *7 (E.D. Pa. Feb. 22, 2010) (citing *Landis*, 299 U.S. at 254–55). The burden is on the movant, who "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255; *see also Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

## II. ARGUMENT

This Court already rejected Defendants' motion to stay once and should do so again.

Defendants' Renewed Motion is a thinly veiled motion for reconsideration, but one that provides no legal basis for the request, asserts no error whatsoever in this Court's prior order, and identifies no changes in the legal or factual landscape that would merit reconsideration. Instead, they refer to developments in a separate district court case that is neither controlling nor persuasive in this matter, and that is easily distinguished by the equitable considerations at play here. Defendants' motion is merely an improper "second attempt to sway the judge," *Kaden*, 2017 U.S. Dist. LEXIS 218975, at *4 (internal quotation omitted), and should be summarily dismissed as such.

Even putting aside the impropriety of Defendants' motion, it also fails in substance. They provide no reasons to conclude that the balance of the equities, which this Court properly determined weighed against a stay, has changed since May. Instead, Defendants

4

raise three new prudential arguments, each of which is irrelevant and two of which were waived when Defendants failed to raise them in their first stay request. Accordingly, even if properly raised a second time, Defendants' arguments fail on the merits as well.

### A. A Stay in This Matter Will Indisputably Prejudice Plaintiffs, While Defendants Have Failed to Substantiate Any Prejudice from Continuing to Litigate This Case.

Defendants have once again failed to carry their burden of showing that the balance of equities favors a stay. *See Landis*, 299 U.S. at 254–55.

As this Court observed in May, granting a stay in this matter would "compress[] the amount of time available to litigate this case" and "only make it more difficult for both the court and the parties to ultimately achieve a just and lawful result." *NAACP* Stay Ord. at 3. This is because "any delay in reaching a final ruling in this case—and a stay would almost certainly cause such a delay—could impair this court's ability to issue effective relief later," *id.*, given that, under the *Purcell* principle, "federal district courts ordinarily should not enjoin state election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)).

Since denying Defendants' request for a stay in May, this Court issued a scheduling order, Dkt. 66, that will allow for the resolution of this matter on the merits in time to provide relief to Plaintiffs before (and without any disruption to) the 2024 elections. Specifically, the June 2023 docket call will permit remedial redrawing and emergency appeals to be resolved before December 11, 2023, the last date that candidates for the 2024

general election may file for a place on the 2024 primary ballot.[1]

Defendants' request for a stay asks the Court to toss this schedule aside and hold this matter in abeyance indefinitely. They do not meaningfully dispute in their Motion that granting their request would risk extreme prejudice to Black and Latino Galvestonians, including Plaintiffs and their members, who may be forced to elect their County Commissioners under a constitutionally suspect map for *yet another* Commissioner election cycle. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done to enjoin this law.").

The only alternative to risking irreparable harm on Plaintiffs would be at the extreme expense of judicial economy. If this case were stayed for up to eight months,[2] it would be either infeasible or require an exceptionally expedited schedule to have this matter fully resolved on the merits, and allow for remedial redrawing and expedited appeals, before the December 11, 2023, candidate-filing deadline. Accordingly, it will force Plaintiffs either to be consigned to another election under challenged maps or to seek preliminary injunctive relief before the 2024 elections cycle, requiring significant and compressed motions practice and court proceedings at additional expense to the parties and great imposition on

---

[1] *See* TEX. ELEC. CODE § 172.023 (Regular Filing Period); *Important Election Dates 2022–2024*, Tex. Sec'y of State, https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml#2024 (last accessed October 21, 2022).
[2] The Supreme Court typically releases Opinions for cases argued in October before the end of June the following year, although they can be issued at "any time after argument." *See* Clerk of the Court, Guide for Counsel in Cases To Be Argued Before the Supreme Court of the United States (2021), https://www.supremecourt.gov/casehand/Guide%20for%20Counsel%202021.pdf.

the Court.

By passing the Commissioners Court map on the eve of the 2022 candidate filing deadline, Defendants rendered it infeasible for Plaintiffs to seek relief before the 2022 general election. Now they ask this Court once again to pave the way for another election cycle under constitutionally suspect maps while this case is pending, even while they do not dispute the irreparable harm this would risk to Plaintiffs.[3] The Court should decline to do so.

What is more, in support of this request, Defendants have failed to show any reasons (much less "hardship and inequity" to Defendants) that could justify it. As this Court has already observed, Defendants' request for a stay is premised on mere "speculat[ion]" that the Supreme Court will alter the standard it announced in *Thornburg v. Gingles*, 478 U.S. 30 (1986). *See NAACP* Stay Ord. at 1. But the exchanges during oral argument in *Merrill* on October 4, 2022 (as described below) indicate that this is unlikely and that the law applicable to Plaintiffs' specific claims here is unlikely to change. *See infra* at 11–12. Even if that is not the case, the Court is well able to "adjust quickly to any changes in the law that may come from *Merrill* or any other case," and that remains true under the schedule set forth by the Court. *NAACP* Stay Ord. at 3.

Finally, Defendants have not and cannot explain what prejudice they would face in timely litigating Plaintiffs' intentional discrimination and racial gerrymandering claims,

---

[3] While a court may set aside primary election results if needed to remediate VRA and constitutional violations, *see Toney v. White*, 488 F.2d 310, 315 (5th Cir. 1973), such a remedy would cause greater confusion and inefficiency for Plaintiffs and other voters, candidates, administrators, and Defendants than a remedy ordered prior to the December 2023 candidate filing deadline.

7

which "will likely be unaffected by any outcome in *Merrill*." *Id.* at 2. Their assertion that the Court's decision in *Merrill* may have "wide-ranging consequences for intentional discrimination claims," Mot. at 5, is just more speculation. This flawed argument also ignores the well-established principle that consideration of VRA Section 2 claims is "an intensely local appraisal." *Gingles*, 478 U.S. at 79 (quotation omitted). And it assumes without evidence that the Supreme Court would contravene its principled approach of avoiding issuing broader holdings than necessary. *See, e.g.*, *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2336 (2021) ("[W]e decline in these cases to announce a test to govern all VRA § 2 claims involving rules, like those at issue here, that specify the time, place, or manner for casting ballots."); *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011) ("We therefore decide the case before us and leave broader issues for another day.").

None of Defendants' purported equitable justifications comes close to requiring the risk of irreparable harm a stay would present to Plaintiffs. The equities thus clearly favor denying a stay.

**B. Defendants' New Arguments Do Not Support a Stay.**

In the face of the balance of the equities and the serious risk of prejudice to Plaintiffs if a stay is granted, Defendants' three new—and irrelevant—arguments must fail.

    **1.** <u>Stays Granted in Unrelated State-wide Section 2 Cases Do Not Justify A Stay in This Matter.</u>

Despite obvious dissimilarities with this case, Defendants cite to a recent stay order in *Nairne v. Ardoin*, No. 3:22-cv-178 (M.D. La. 2022), a Section 2 challenge to Louisiana's state legislative maps, as a reason for this Court to revisit its decision. *Nairne* was stayed

8

pending the Supreme Court's decision in *Merrill*, because a related case challenging Louisiana's congressional map, *Robinson v. Ardoin*, No. 3:22-cv-211 (M.D. La. 2022), was held in abeyance due to *Merrill*. *See Nairne*, No. 3:22-cv-178, 2022 U.S. Dist. LEXIS 155706, at *3–4 (M.D. La. Aug. 30, 2022) (together, with *Robinson*, the "Louisiana Cases"). The holdings in these unrelated matters have no bearing on the balance of the equities in this case. But even if they did, the equitable considerations present in the Louisiana Cases are entirely distinct from those present here.

First, the Louisiana Cases each involve just a single cause of action for Section 2 discriminatory results. *See Robinson* Compl. at ¶¶ 164–70, No. 3:22-cv-211, Dkt. 1 (M.D. La. 2022)[4]; *Nairne* Compl. at 55–57 ¶¶ 1–11, No. 3:22-cv-178, Dkt. 1 (M.D. La. 2022).[5] Neither case brings intentional discrimination or racial gerrymandering claims, as Plaintiffs here.[6] This is significant because Plaintiffs' racial gerrymandering and intentional discrimination claims under Section 2 and the Equal Protection clause require discovery into Defendants' redistricting process, communications on redistricting, alternative precinct maps, and the history of discrimination in Galveston County, regardless of the legal framework applicable to Plaintiffs' Section 2 vote dilution claim. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–67 (1977) (noting the

---

[4] *Available at* https://www.democracydocket.com/wp-content/uploads/2022/03/NAACP-MDLA.pdf (last accessed Oct. 21, 2022).
[5] *Available at* https://www.aclu.org/sites/default/files/field_document/complaint_-_nairne_v._ardoin.pdf (last accessed Oct. 21, 2022).
[6] Plaintiffs note that their VRA claim alleges both dilutive impact and discriminatory purpose that would violate Section 2. *See NAACP* First Am. Compl. at ¶¶ 154–55, No. 3:22-cv-117, Dkt. 38; *see also League of United Latin Am. Citizens v. Abbott*, No. CV 1:21-cv-1006, 2022 U.S. Dist. LEXIS 91761, at *41 (W.D. Tex. May 23, 2022) ("[A] 'showing of intent is sufficient to constitute a violation of section 2[.]'" (quoting *McMillan v. Escambia County*, 748 F.2d 1037, 1046 (5th Cir. 1984))).

"historical background of the decision" and the "specific sequence of events leading up to the challenged decision" among relevant factors to intentional discrimination claims); *Miller v. Johnson*, 515 U.S. 900, 910, 928 (1995) (affirming lower court finding that race was a predominant factor in redistricting based on "much evidence of the legislature's purpose and intent in creating the final plan") Accordingly, the reasons for staying discovery in the single-count Louisiana Cases, where all discovery depends on the Section 2 dilution claims, are not applicable to this multi-count matter.

Second, even putting aside the differences in claims asserted, the legal and factual questions posed in *Merrill* and the Louisiana Cases do not apply to Galveston County and Plaintiffs' VRA claims. The central question in *Merrill* is "whether the VRA requires Alabama to intentionally create a *second* majority-black congressional district." Appellants' Br. at 28, *Merrill v. Milligan*, 2022 U.S. S. Ct. BRIEFS LEXIS 1361 (U.S.) (emphasis added). Similarly, in *Robinson* and *Nairne*, the plaintiffs have argued that Black Louisianans are sufficiently numerous and geographically compact to allow the State to create one *additional* majority-Black congressional district and several *additional* state senate and house districts. See *Robinson* Compl. at ¶ 167; *Nairne* Compl. at 55 ¶ 3. By contrast, the question in this matter is whether the VRA and Constitution permit the County to dismantle an *existing* majority-minority precinct with historic boundaries, for which the well-worn *Gingles* preconditions are easily satisfied.

These distinctions between the issues here and in *Merrill* were highlighted in the recent oral argument of that case. The defendants-appellants in *Merrill* contend that (1) the first *Gingles* precondition requires plaintiffs to proffer a demonstrative map that is

10

reasonably configured without any consideration of race, *see* Tr. of Oral Argument 21:16–22:18, and (2) that the district court incorrectly concluded that plaintiff-appellees' proposed additional majority-Black congressional district in Alabama was in fact sufficiently compact and reasonably configured, *see* Tr. of Oral Argument 45:21–46:13. Neither argument, even if adopted, would impact this case, because: (1) Plaintiffs in this matter have already alleged that such a "race-neutral" *Gingles I* demonstrative district is possible by shifting just one voting precinct from the existing core to rebalance population, *see NAACP* First Am. Compl., Dkt. 38 at ¶ 65, and (2) the factual dispute about the Alabama Congressional map's configuration is irrelevant to the County Commissioner Precinct at issue here.

Indeed, rather than implicate the issues in *Merrill*, Plaintiffs' claims in this matter track much more closely with the longstanding precedent of *League of United Latin American Citizens* ("*LULAC*") *v. Perry*, 548 U.S. 399 (2006), which found a Section 2 violation based on the "dismantling" of an existing "compact opportunity district." *Id.* at 431. And, as even the *Merrill* defendants-appellants themselves clarified at oral argument, no opinion in *Merrill* is expected to displace the holding in *LULAC*. *See* Tr. of Oral Argument, 41:19–24 (citing *LULAC* to argue that "breaking up an existing district is – is inherently suspect. And so that would be a much stronger [Voting Rights Act] case.").

In fact, the *Merrill* defendants-appellants essentially conceded that a case such as the one alleged by Plaintiffs here—where Galveston County's nearly 50 percent minority population will be foreclosed from electing the candidate of their choice in *any* Commissioner precinct, *see NAACP* First Am. Compl., Dkt. 38 at ¶¶ 42–45, 63–64, 85—

11

would be an "easy case to bring." Tr. of Oral Argument at 42:3–19. When addressing a hypothetical from Justice Elena Kagan in which "there are circumstances in which a population that is 27 percent of the state's population could essentially be foreclosed from electing a candidate of their choice anywhere[,]" *Merrill* defendants replied:

> [I]f we had had these guidelines and we passed a map that took us from one down to zero, where we retained the cores of Districts 1 through 6 but not District 7, that would be an easy case. That would be *LULAC* all over again. It would be an easy case to bring."

*Id.* As the oral argument in *Merrill* shows, parties are not even raising arguments that would alter, much less foreclose, Plaintiffs' Section 2 claims here.

So even if the recent holdings in *Nairne* and *Robinson* were properly considered as relevant here, which they are not, the reasoning behind these holdings has no bearing on the considerations in this matter and thus would not support the stay requested by Defendants.

### 2. The Principle of Constitutional Avoidance Does Not Apply at The Pleading Stage And, in The Alternative, Does Not Warrant A Stay.

Defendants' second new argument regarding the principle of constitutional avoidance also fails to justify staying this case.

*First*, Defendants failed to raise this argument in their first motion, and they give no explanation for their failure to do so. As such, the argument should be deemed waived. *See generally*, *Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.*, 542 F. Supp. 2d 653, 658 n.9 (S.D. Tex. 2008) ("The Fifth Circuit consistently holds that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that

12

court.") (internal citations omitted); *see also Kaden*, 2017 U.S. Dist. LEXIS 218975, at *4 ("[I]t is an improper use of a motion to reconsider to file it as merely a second attempt to sway the judge." (internal citation omitted)).

*Second,* even if Defendants had properly lodged this argument in their first stay motion, it is nonetheless irrelevant to the court's decision of whether to grant a stay at the pleading stage. Courts utilize constitutional avoidance as an ordering tool when considering preliminary or final *relief. See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). But constitutional avoidance does not prevent the parties from "properly present[ing] . . . the record" on constitutional and non-constitutional claims via timely discovery and briefing. *Id.* In the cases on which Defendants rely, the courts applied constitutional avoidance when considering what relief is proper after evidence and arguments, not when determining the scope of discovery itself.[7] In other words, the parties in these cases already had the opportunity to develop and present an evidentiary record, and based on that record, the courts did not need to reach the constitutional questions in order to grant plaintiffs their requested relief. *See, e.g.*, *Nw. Austin Mun. Dist.*, 557 U.S. at 206. By contrast, this case remains at the pleading stage,

---

[7] *See* Renewed Mot. at 5–6 (citing *Citizens United v. FEC*, 558 U.S. 310, 322 (2010) (reviewing after summary judgment); *Nw. Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 201, 211 (2009) (reviewing after summary judgment); *LULAC*, 548 U.S. at 413 (reviewing after judgment); *Gingles*, 478 U.S. at 38 (reviewing after judgment); *Singleton v. Merrill*, 582 F. Supp. 3d 924, 936 (N.D. Ala. 2022) (granting preliminary injunction); *Singleton v. Merrill*, No. 2:21-cv-1291, 2022 U.S. Dist. LEXIS 83367, at *17 (N.D. Ala. Feb. 25, 2022) (postponing ruling on renewed preliminary injunction motion)).

and the Court has not yet granted any relief or passed judgment on the validity of any claims. Defendants do not cite to cases in which a stay was granted due to constitutional avoidance on the pleadings alone.

Furthermore, when addressing constitutional issues is necessary to support the particular relief sought, constitutional avoidance does not apply. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 446–47 (1988) (declining to apply constitutional avoidance where the First Amendment supplied a basis for a broader injunction than would have been granted on statutory grounds alone). Here, Plaintiffs' constitutional claims could be grounds for granting bail-in preclearance, *see* 52 U.S.C. § 10302(c), which requires a finding of a violation of the Fourteenth or Fifteenth Amendment and would not be available through Section 2. *See NAACP* First Am. Compl., Dkt. 38 at 39 (seeking "any additional or alternative relief to which Plaintiffs may be entitled"). Thus, even if this were an appropriate stage to apply constitutional avoidance—which it is not—the Court would need to consider Plaintiffs' constitutional claims in adjudicating full relief.

### 3. The Current Discovery Timeline Allows The Parties Enough Time to Incorporate November 2022 Election Results into Their Analyses.

Finally, Defendants offer a left-field argument that staying proceedings would be in the interest of "time", because it would allow the parties to analyze data from the November 2022 general election about how candidates perform under the challenged map. Mot. at 6–7. As with their constitutional avoidance argument, they give no reason for their failure to raise this point in their first motion, and so it, too, should be deemed waived.

Accepting, *arguendo*, that the November 2022 election will provide additional

useable data, Defendants also fail to explain how the current scheduling order prevents the parties from incorporating November 2022 data, much less why staying *all* discovery indefinitely would be an appropriate or even logical response to this consideration. Under the adopted scheduling order, expert discovery is not set to conclude until April 21, 2023, a full five months after the November 8, 2022, election. *See* Am. Docket Control Ord, Dkt. 66. This is more than enough time to analyze voting data and patterns from a single election in a single county, and Defendants do not argue otherwise.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' renewed motion to stay this case.

/s/   *Sarah Xiyi Chen*
**TEXAS CIVIL RIGHTS PROJECT**
Attorney-in-Charge
Mimi M.D. Marziani
Texas Bar No. 24091906
Hani Mirza
Texas Bar No. 24083512
Joaquin Gonzalez*
Texas Bar No. 24109935
Sarah Xiyi Chen*
California Bar No. 325327
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org
joaquin@texascivilrightsproject.org
schen@texascivilrightsproject.org

**SOUTHERN COALITION FOR SOCIAL JUSTICE**

Hilary Harris Klein*
North Carolina Bar No. 53711
1415 W. Hwy 54, Suite 101
Durham, NC 27707
919-323-3380 (Telephone)
919-323-3942 (Facsimile)
hilaryhklein@scsj.org

**WILLKIE FARR & GALLAGHER LLP**
Richard Mancino*
New York Bar No. 1852797
Michelle Anne Polizzano*
New York Bar No. 5650668
Andrew J. Silberstein*
New York Bar No. 5877998
Molly Linda Zhu*
New York Bar No. 5909353
Kathryn Carr Garrett*
New York Bar No. 5923909
787 Seventh Avenue
New York, New York 10019
212-728-8000 (Telephone)
212-728-8111 (Facsimile)
rmancino@willkie.com
mpolizzano@willkie.com
asilberstein@willkie.com
mzhu@willkie.com
kgarrett@willkie.com

JoAnna Suriani*
DC Bar No. 1645212
Diana C. Vall-llobera*
DC Bar No. 1672102
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000 (Telephone)
(202) 303-2000 (Facsimile)
jsuriani@willkie.com
dvall-llobera@willkie.com

**SPENCER & ASSOCIATES, PLLC**
Nickolas Spencer
Texas Bar No. 24102529
9100 Southwest Freeway, Suite 122
Houston, TX 77074
713-863-1409 (Telephone)
nas@naslegal.com

*COUNSEL FOR PLAINTIFFS*
\*admitted *pro hac vice*

**CERTICATE OF SERVICE**

I HEREBY CERTIFY that on October 21, 2022, the foregoing document was filed electronically (via CM/ECF), and that all counsel of record were served by CM/ECF.

/s   *Sarah Xiyi Chen*