**EXHIBIT 4**

```
20   have done.
21       Q.   When you say request for this information,
22   what was Ms. Johnson requesting you to do?
23       A.   I'm not sure.  I'm not sure if it was a
24   request.
25       Q.   Did you do anything with the information
            UNEDITED, UNPROOFREAD, UNCORRECTED, UNCERTIFIED
                        ROUGH DRAFT                         88

 1   contained in the Excel spreadsheet that Ms. Johnson
 2   sent to you?
 3       A.   Not that I can recall.
 4            MS. JAYARAMAN:  Okay.  Cathy, can you
 5   introduce Tab 31, please.
 6            MR. RUSSO:  Hey, counsel, what do you want
 7   to do about lunch?  I mean, how much more time do
 8   you have?  It doesn't sound like -- I don't know,
 9   are you near being done?  If not --
10            MS. JAYARAMAN:  Yeah, so I just want to
11   finish this line of questioning and then I think we
12   can take a lunch break if that's all right.
13            MR. RUSSO:  How much longer in this line?
14            MS. JAYARAMAN:  You know what?  We can
15   take a lunch break now if that sounds good.  So we
16   can go off the record.
17            MS. REYES:  Actually, before we go off the
18   record -- I'm sorry.  Can we go back on the record
```

19   really quickly.  Hi.  Sorry.  I got kicked off for a

20   second.  I wanted to address Mr. Russo.  I sent you

21   an email regarding a prior order from judge brown

22   from the Texas redistricting case.  I believe it's

23   an August order.  You should have received that in

24   your mail a few minutes ago and I wanted to ask

25   based on your reading of that order, are you still

                UNEDITED, UNPROOFREAD, UNCORRECTED, UNCERTIFIED
                            ROUGH DRAFT                              89

1    asserting privilege with regards to questions about

2    Dale Oldham?

3              MR. RUSSO:  Yes.  Based upon my reading

4    that while defending the deposition, I don't think

5    that that order provides you access to

6    attorney-client information, you know.  So right now

7    we're maintaining that the objection -- we'll review

8    it and if you're -- you know, if we come to a

9    different conclusion, we'll have a discussion about

10   that.  But again, what you sent us is discussing a

11   work product privilege and the attorney-client

12   portion deals with documents and generic objection

13   made to production of documents.  That's not what

14   we're dealing with here.  We're dealing with

15   specific communications between a client and a

16   lawyer.

17        MS. REYES:  Okay.  Well, I will give you

18   time to review it like I say over the lunch break as

19   you said you needed to do and we can readdress it.

20   Thank you.

21        MR. RUSSO:  Fair enough.

22        ZOOM TECH:  Okay.  If there's nothing

23   else, then we'll go off the record.

24             (Recess from 12:26 to 1:13)

25   BY MS. JAYARAMAN:
         UNEDITED, UNPROOFREAD, UNCORRECTED, UNCERTIFIED
                     ROUGH DRAFT                           90

1    Q.   Mr. Sigler, let's take a look at Sigler

2    Exhibit 8, please.  And just let me know when you

3    have it up in front of you, please?

4    A.   I have it in front of me.

5    Q.   Great.  So I'm showing you what has been

6    marked as Sigler Exhibit 8, which is Bates stamped

7    DEFS00011706 through DFFS00011709.  It's an email

8    from Ms. Johnson to you -- sorry, Ms. Johnson to a

9    number of recipients on which you are copied dated

10   November 19th, 2021.  Would you agree?

11   A.   Yes.

12   Q.   So the people in the to line are Kristi

13   Saludis who we talked about earlier, then someone

14   named Stephanie berry.  Who is Stephanie berry?

15   A.   I do not know.