# EXHIBIT 2

*Excerpts of January 13, 2023, Expert Declaration and Report of William S. Cooper*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| DICKINSON BAY AREA BRANCH NAACP, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-117- JVB |
| GALVESTON COUNTY, TEXAS, et al., | § § | |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| TERRY PETTEWAY, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-57-JVB [Lead Consolidated Case] |
| GALVESTON COUNTY, TEXAS, et al. | § § | |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff*, | § | |
| v. | § § § | Civil Action No. 3:22-cv-93-JVB |
| GALVESTON COUNTY, TEXAS, et al. | § § | |
| *Defendants*. | § § | |

## EXPERT DECLARATION AND REPORT OF WILLIAM S. COOPER

JANUARY 13, 2023

*Expert Declaration and Report of William S. Cooper – January 2023*

## I.    INTRODUCTION

1.    My name is William S. Cooper. I have a B.A. in Economics from Davidson College. As a private consultant, I serve as a demographic and redistricting expert for the *NAACP* Plaintiffs ("Plaintiffs") in this matter.

### A. Redistricting Experience

2.    I have testified at trial as an expert witness on redistricting and demographics in federal courts in about 50 voting rights cases since the late 1980s. Over 25 of those cases led to changes in local election district plans. Five cases resulted in changes to statewide legislative boundaries: *Rural West Tennessee African-American Affairs Council, Inc. v. McWherter*, No. 92-cv-2407 (W.D. Tenn. 1995); *Old Person v. Brown*, No. 96-cv-0004 (D. Mont. 2002); *Bone Shirt v. Hazeltine*, No. 01-cv-3032 (D.S.D. 2004); *Alabama Legislative Black Caucus v. Alabama*, No. 12-cv-691 (M.D. Ala. 2017), and *Thomas v. Reeves*, 3:18cv441 (S.D. Miss. 2019). In *Bone Shirt v. Hazeltine*, the court adopted the remedial plan I developed.

3.    In 2022, I testified as an expert on redistricting and demographics in six cases challenging district boundaries under Section 2 of the Voting Rights Act: *Caster v. Merrill*, No. 21-1356-AMM (N.D. Ala.), *Pendergrass v. Raffensperger*, No. 21-05337-SCJ (N.D. Ga.), *Alpha Phi Alpha Fraternity v. Raffensperger*, No. 21-05339-SCJ (N.D. Ga.), *NAACP v. Baltimore County,* No.21-cv-03232-LKG (Md.), *Christian Ministerial Alliance v. Hutchinson* No. 4:19-cv-402-JM (E.D. Ar.), and *Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La.). I also testified at trial as an expert on demographics in *NAACP v. Lee*, No. 4:21cv187-MW/MAF (N.D. Fla.), a case involving recent changes to Florida election law.

4.    Since the release of the 2020 Census, three county commission-level plans I developed as a private consultant have been adopted by local governments in San Juan County,

*Expert Declaration and Report of William S. Cooper – January 2023*

Utah, Bolivar County, Mississippi, and Washington County, Mississippi. In addition, a school board plan I developed was adopted by the Jefferson County, Alabama Board of Education subsequent to my expert work in a school desegregation case — *Stout v. Jefferson County Board of Education*, No. 2:65-cv-00396-MHH (N.D. Ala.).

5.      My redistricting experience is further documented in my curriculum vitae, appended to this Declaration as **Exhibit A**.[1]

**B. Purpose of Declaration**

6.      The attorneys for Plaintiffs in this matter asked me to determine whether, while accounting for traditional race-neutral redistricting principles, the combined Black and Latino[2] population in Galveston County is "sufficiently large and geographically compact" to allow for a majority- Black/Latino Commissioners Court precinct ("commissioners precinct"), according to the 2020 Census — i.e., a single-member commissioner precinct in a four-precinct plan that meets the first *Gingles* precondition ("*Gingles* 1").[3]

---

[1] I have also testified and/or provided expert declarations in non-redistricting matters in the past four years, including *Ellison v. Madison County Board of Education*, No. 5:63-CV-00613 (N.D. Ala.); *Horton v. Lawrence County Board of Education*, No. 5:66-CV-00445 (N.D. Ala.); *Stout v. Jefferson County Board of Education*, No. 2:65-CV-00396 (N.D. Ala.); *Thomas et al. v. St. Martin Parish School Board*, No. 65-11314 (W.D. La); *Ellis et al. v. City of Hobbs*, No. 2:17-CV-01011 (D.N.M.); *NARSOL et al. v. Joshua Stein*, No. 1:17-CV-53 (M.D.N.C.).

[2] In this report, unless otherwise indicated, "Black" or "African American" refers to persons who are non-Hispanic single-race Black or non-Hispanic Any Part Black (i.e., persons of two or more races and some part Black). "Latino" refers to persons of any race who identify as Hispanic or Latino. It is my understanding that, following the U.S. Supreme Court decision in *Georgia v. Ashcroft*, 539 U.S. 461 (2003), the "Any Part" definition is an appropriate Census classification to use in most Section 2 cases.

For consistency with Galveston County's reporting methodology, as reflected in the 2011 pre-clearance submission that excludes multi-race African Americans from the count of non-Hispanic Blacks, I also include numerical or percentage references identifying non-Hispanic single-race Black as "NH SR Black" in this report.

For consistency with the U.S. Department of Justice's reporting methodology, as reflected in the ACS Special Tabulation for CVAP calculations, I also include numerical or percentage references that counts NH SR Black persons and non-Hispanic persons of two races who are part Black and part White as Black using the term "NH DOJ Black" in this report.

[3] *See Thornburg v. Gingles*, 478 U.S. 30, 50 (1986).

3

*Expert Declaration and Report of William S. Cooper – January 2023*

7.     The attorneys for Plaintiffs in this matter also asked me to provide an analysis of three maps: (*i*) the Benchmark County Commissioners Plan, which I understand was used in elections from 2012 through 2020 (the "Benchmark Plan"), (*ii*) the new plan adopted in 2021 (the "Enacted Plan"), which I understand was titled "Galveston Texas Map 1" during the redistricting process, as well as (*iii*) the alternative Galveston Texas Map 1 ("Map Proposal 1") that was also proposed during the 2021 redistricting process. The attorneys for Plaintiffs also asked me to opine on the factors that Defendants represented (in discovery responses from December 2022) were considered during the 2021 redistricting process as they relate to these maps.

8.     Lastly, the attorneys for Plaintiffs also asked me to include in my report information on the demographics and the socioeconomic characteristics of the population in Galveston County.

### C. Methodology and Sources

9.     For purposes of the *Gingles* I citizen voting age analysis in this report, I define a majority-Black/Latino Commissioners precinct as one that has a majority Black and Latino citizen voting age population ("CVAP)", i.e., at a minimum, Black CVAP ("BCVAP") plus Latino CVAP ("LCVAP") must be over 50%. I refer to this using the abbreviated term "B+LCVAP majority".[4]

10.     **Exhibit B** describes in more detail the sources and methodology I have employed in the preparation of this report. Briefly, I used the *Maptitude for Redistricting* software program to

---

[4]   The CVAP reported herein are estimates based on block group level estimates published by the U.S. Census Bureau's American Communities Survey (ACS). In the summary population exhibits that I have prepared for each plan, I report the "NH DOJ Black CVAP" metric. The "NH DOJ Black CVAP" category includes voting age citizens who are either non-Hispanic ("NH") single-race ("SR") Black or NH Black and White. An "Any Part NH Black CVAP" category cannot be calculated from the 5-Year ACS Census Bureau Special Tabulation.

The most current 5-year ACS data available is from the 2016-2020 ACS Special Tabulation, with a survey midpoint of July 1, 2018.  It is available at https://www.census.gov/programs-surveys/decennial-census/about/voting-rights/cvap.html.

*Expert Declaration and Report of William S. Cooper – January 2023*

develop and analyze plans. I also relied on population data and corresponding geographic shapefiles from the U.S. Census Bureau, election plan shapefiles from the Defendants, as well as information released by the U.S. Department of Justice as part of the Section 5 preclearance process in effect until 2013.

11.    Finally, for background, I also reviewed the changes made in a prior Commissioners Precinct plan enacted in 2011, as reflected in excerpts of Galveston's Section 5 pre-clearance submission which I have appended to this report as **Exhibit G**.[5]

12.    All of the data and facts relied upon in forming my opinion, as well as assumptions I made in forming my opinions, are included in this report and its Exhibits.

13.    I am being compensated at a rate of $150 per hour for this matter, and my payment is not contingent in any way upon its outcome.

**D. Summary and Expert Conclusions**

14.    Based upon my analysis, I conclude the following:

15.    The combined Black and Latino population in Galveston County has grown consistently since the 1990 Census – in both absolute terms and as a percentage of total population.

16.    In Galveston County, Non-Hispanic "NH" White Anglos outpace African Americans and Latinos across almost all measures of socioeconomic well-being as reported in the American Community Survey.[6]

---

[5]    2011 Enacted Plan and 2002 Benchmark Plan are titled "Exhibit C" and "Exhibit D" in the Pre-Clearance Submission Letter appended as Exhibit G.

[6]    In this report, I use the terms "NH White" and "Anglo" interchangeably.

*Expert Declaration and Report of William S. Cooper – January 2023*

17.     The 2021 Enacted Plan is a textbook example of a racial/ethnic gerrymander. It cracks Galveston's Black and Latino populations, and specifically those populations that were in Benchmark Precinct 3, among all four of the 2021 Enacted Plan Commissioners Precincts.

18.     The 2021 Enacted Plan also unambiguously violates a key tenet of traditional redistricting principles – the non-dilution of minority voting strength – by eliminating the only majority-Black and Latino Benchmark Precinct (3) and instead drawing all of Galveston's Black and Latino residents into Anglo-majority commissioner precincts. The transformation of every commissioner precinct (4 out of 4) into majority Anglo precincts is all the more stark when one considers that these minority groups comprise approximately 45% of Galveston's total population and have accounted for 65.1% of the county's overall population growth since 1990.

19.     The three Illustrative Maps I have prepared demonstrate that the combined Black and Latino population in Galveston County is sufficiently numerous and geographically compact to allow for at least one majority-Black/Latino precinct, based on the 2020 Census and the 5-Year 2016-2020 ACS Special Tabulation.

20.     The three Illustrative Maps comply with traditional redistricting principles, including population equality, compactness, contiguity, municipal and Census "VTD" boundaries,[7] respect for communities of interest, and the non-dilution of minority voting strength.

21.     Furthermore, the three Illustrative Maps demonstrate that a majority-Black/Latino precinct could also be easily constructed by adhering to only race-neutral traditional redistricting

---

[7] "VTD" is a Census Bureau term meaning "voting tabulation district." According to the 2020 Census, there are 92 VTDs in Galveston County. A VTD typically has a single polling place within its boundaries. The Illustrative Maps are drawn to follow, to the extent possible, municipal and VTD boundaries. I have generally used whole 2020 Census VTDs as sub-county components. Where VTDs are split, I have followed census block boundaries that are aligned with roads, natural features, census block groups, municipal boundaries, and current or historical commissioners plan precincts.

6

*Expert Declaration and Report of William S. Cooper – January 2023*

principles (including a "coastal" precinct if so-desired), and that there are a multitude of such possible Census 2020 plan configurations.

### E. Organization of Report

22.   The remainder of this declaration is organized as follows:

23.   **Section II** summarizes Galveston's demographics at the county and municipal levels. In this section, statistical data from the U.S. Census Bureau documents socioeconomic disparities experienced by African Americans and Latinos in Galveston County when compared with their Anglo counterparts, as reported in the American Community Survey.

24.   **Section III** provides analysis of the 2012 Benchmark Plan and two Commissioners Court plans developed by the County based on the 2020 Census — the 2021 Enacted Plan (Proposed Plan 2) and Proposed Plan 1.

25.   **Section IV** presents three illustrative plans that I have prepared, demonstrating that there are a variety of ways to draw a majority-Black/Latino commissioner's precinct, based on the 2020 Census, and consistent with traditional redistricting principles.

*(Rest of page intentionally left blank)*

50.    Precinct 3, at the time it was drawn in 2012, was a majority-minority commissioner precinct. Under the 2010 Census, the Non-Hispanic Black and Latino voting age population ("NH DOJ B+LVAP") was 64.2%, with a B+LCVAP of about 58%, according to the 5-Year 2009-2013 ACS Special Tabulation (with a survey midpoint of July 2011).

51.    According to the updated 2020 Census numbers, Precinct 3 stood the test of time as a majority-minority precinct: Column 8 of Figure 7 shows that the NH DOJ B+LVAP in Precinct 3 was 58.31%.

**B. 2021 Enacted Plan**

52.    The map in **Figure 8** displays the 2021 Enacted Plan, which I understand was called Galveston Texas Map 2 prior to its enactment.[18] The map is zoomed out to show the full extent of Galveston County.


*(Rest of page intentionally left blank)*

---

[18]   I received the shapefile for this map from Plaintiffs' attorneys, in a file entitled "PROD02.zip", which I understand was a file produced by Defendants in this matter. I also received the shapefile for what I understand was an earlier draft of the 2021 Enacted Plan in a file titled "Galveston_Blocks_Map2_10_21_21," also produced by Defendants. The metadata for this file shows a creation date of October 21, 2021. I confirmed the two versions of this map are identical.

*Expert Declaration and Report of William S. Cooper – January 2023*

**Figure 8: Galveston County Commissioners Court — 2021 Enacted Plan**



53.     The dramatic change in the configuration of Commissioners precincts between the Benchmark and the 2021 Enacted Plan indicates to me that the map drawers who drew the Enacted Plan did not follow a simple redistricting solution to population imbalances resulting from the 2020 Census. Instead, it appears that they performed a full-scale remap – eliminating the B+LCVAP-majority in Commissioner Precinct 3 and fundamentally altering the geographic and population configurations of all four commissioner precincts. The Black and Latino community on Galveston Island is cut from Precinct 3 and submerged in majority-Anglo Precinct 2. Under the Enacted Plan, Precinct 3 has shifted to the Houston suburbs in and around League City.

54.     The 2021 Enacted Plan places all of the Bolivar Peninsula and Galveston Island in a single precinct (Precinct 2). I understand that during the 2021 redistricting cycle, creating a

20

*Expert Declaration and Report of William S. Cooper – January 2023*

"coastal" precinct was one objective that the Commissioners publicly announced. As I demonstrate in Illustrative Maps 2 and 3 *infra*, the coastal-precinct objective did not require the destruction of a majority B+LCVAP Precinct 3.

55.    **Figure 9** is a map zooming in on the area previously encompassed by Precinct 3 under the Benchmark Plan (identified with red lines), a high-resolution version of which I have included as **Exhibit F-1**.

**Figure 9: 2021 Enacted Plan with Benchmark Precinct 3 Overlay**



56.    Under the 2021 Enacted Plan, Black and Latino residents in Benchmark Precinct 3 are divided and distributed across all four of the Enacted Plan precincts, resulting in an overall dilution of minority voting strength in the voting plan.

57.     Under the Enacted Plan, 100% of Anglo voters reside in a majority-Anglo precinct – controlling 100% of the five Commissioners Court votes (including the county judge elected at-large). By contrast, 0% of the Black/Latino voting coalition resides in a majority Black/Latino precinct. This is visually numerically apparent by **Figure 10** below, which summarizes the population by demographic of the 2021 Enacted Plan.

58.     As shown in **Figure 10**, Precinct 3 is converted into a precinct with the lowest B+ L CVAP of all four precincts: 28.4% – a 30 percentage point drop compared to the Benchmark Plan. Elsewhere the map drawers managed to keep the other three precincts between 32% and 35% B+L CVAP.

**Figure 11: 2021 Enacted Plan – Population Summary**

| Precinct | 2020 Pop. | Deviation | % Dev. | 18+ Pop | %18+ NH AP Black + Latino | % 18+_NH White | % NH DOJ Black + LCVAP |
|---|---|---|---|---|---|---|---|
| 1 | 87689 | 18 | 0.02% | 66641 | 34.69% | 58.98% | 32.28% |
| 2 | 87697 | 26 | 0.03% | 71389 | 36.56% | 58.02% | 34.87% |
| 3 | 88111 | 440 | 0.50% | 64704 | 30.92% | 60.20% | 28.38% |
| 4 | 87185 | -486 | -0.55% | 64648 | 38.52% | 54.67% | 33.50% |

\* CVAP calculations are based on the 2016-2020 Special Tabulation

59.     In other words, the 2021 Enacted Plan has cracked[19] the Black and Latino residents in Benchmark Precinct 3 among all four 2021 Enacted Plan precincts.

60.     For further reference, I have appended to this report additional analysis of the 2021 Enacted Plan, including:

- **Exhibit F-2:** a table reporting additional Census 2020 population statistics and CVAP estimates.

---

[19] "Cracking" is a term used by redistricting practitioners to identify election districts that unnecessarily fragment or divide the minority population, resulting in an overall dilution of minority voting strength in the voting plan.

*Expert Declaration and Report of William S. Cooper – January 2023*

- **Exhibit F-3**: a set of *Maptitude for Redistricting* reports for the Enacted Plan, documenting contiguity (**F-3A**), municipal and unincorporated place splits (**F-3B**), and 2020 VTD splits (**F-3C**). Compactness scores are in (**F-3D**).

61.    I reviewed the First Supplemental Answers submitted by the Defendants on December 14, 2022, in response to the Department of Justice Interrogatories 1 and 2. These were provided to me by Plaintiffs' Counsel in the form appended to this report as **Exhibit L**, with the text I reviewed to prepare my analysis highlighted. After reviewing these responses and my analysis of the 2021 Enacted Plan, I have the following opinions:

62.    The 2021 Enacted Plan fails the first factor listed, "compliance with requirements under the Fourteenth Amendment to the U.S. Constitution and the Voting Rights Act." This is because, by cracking the Black and Latino population previously encompassed in Benchmark Precinct 3 between all four 2021 Enacted Precincts and failing to include any majority-Black and Latino precinct at all, the 2021 Enacted Plan fails to prevent the dilution of minority voting power that is required by the Voting Rights Act. As I mentioned above, the simplest way to account for the population growth recorded in the 2020 Census would have been to move approximately 8,000 individuals from Precinct 2 to Precinct 3, leaving Precinct 1 and 4 unaltered.

63.    Regarding the second factor, consideration of "unified representation on Galveston Island and the Bolivar Peninsula," this factor did not require the 2021 Enacted Plan's elimination of a majority Black/Latino precinct, as my Illustrative Maps 2 (unifying the entire coastline in one precinct) and 3 (unifying the entirety of Galveston Island and the Bolivar Peninsula) below prove.

64.    I also note that travel time and distance from the northeastern extremity of the Bolivar Peninsula (High Island Bridge) to the southwestern extremity of Galveston Island is significant. Both points, which are 60 miles apart, are in Precinct 2 under the Enacted Plan. According to Google Maps, travel time at 10 a.m. between the two points is about two hours

(without accounting for waiting for the Bolivar ferry, thus assuming no ferry delays).[20] Further, Google Maps indicates that travel time to Santa Fe – where the Commissioner Precinct 2 office is located – is between 1.5 and 2 hours to High Island[21] and approximately 1 hour to the Southwestern end of Galveston Island.[22] It would be reasonable to assume that residents on Bolivar Peninsula and Galveston are better served by their commissioners with a 3-precinct or 2-precinct configuration, given the significant travel distances involved.

65.     Regarding the third factor listed, the "compactness of the Commissioners Court precincts," I first note that compactness scores are not particularly meaningful given that Galveston County boundaries extend beyond the coast into the Gulf and Galveston Bay, thereby artificially skewing compactness calculations due to the inclusion of unpopulated water within coastal areas. (A technical explanation of compactness measures is attached to **Exhibit B**.) Nonetheless, as set forth in Section IV below and in the compactness scores appended as **Exhibits F-3D** (Enacted Plan), **H-3D** (Proposal 1), **J-3D** (Illustrative Map 2), and **K-3d** (Illustrative Map

---

20   Travel time calculated for 10 a.m. CST, December 15, 2022. Source: https://www.google.com/maps/dir/High+Island+Bridge,+High+Island,+TX+77623/San+Luis+Beach,+Galveston,+TX/@29.462222,-95.3501668,9z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x863ee2717948f7e9:0xee79f897909c5120!2m2!1d-94.388755!2d29.5946589!1m5!1m1!1s0x864076e3e8dc03f7:0xce62d8e942b60b33!2m2!1d-95.116358!2d29.0836537.

21   I understand Commissioner Precinct 2 office is located at 11730 Hwy 6, Santa Fe, TX 77510 from the following website: https://www.galvestoncountytx.gov/our-county/commissioners/commissioner-2.
     Travel time calculated for 9 a.m. CST, January 11, 2023 is 1 hour, 43 minutes. Source: https://www.google.com/maps/dir/11730+Hwy+6,+Santa+Fe,+TX+77510/High+Island+Bridge,+High+Island,+TX/@29.6721517,-95.068377,10z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x864081cb440b14fb:0xdc729834a2830e68!2m2!1d-95.0760697!2d29.3689476!1m5!1m1!1s0x863ee2717948f7e9:0xee79f897909c5120!2m2!1d-94.388755!2d29.5946589.

22   Travel time calculated for 9 a.m. CST, January 11, 2023 is 1 hour, 43 minutes. Source: https://www.google.com/maps/dir/Galveston+County+Justice-Peace,+11730+Hwy+6,+Santa+Fe,+TX+77510/San+Luis+Beach,+Galveston,+TX/@29.1606079,-95.4016201,10z/data=!3m1!4b1!4m17!4m16!1m5!1m1!1s0x864081cb440b14fb:0x9cf90ba2c09c80ef!2m2!1d-95.0761214!2d29.3688202!1m5!1m1!1s0x864076e3e8dc03f7:0xce62d8e942b60b33!2m2!1d-95.116358!2d29.0836537!2m3!6e0!7e2!8j1673517960.

*Expert Declaration and Report of William S. Cooper – January 2023*

3), Map Proposal 1 and Illustrative Maps 2 and 3 have substantially the same compactness scores as this map. Accordingly, this factor did not require the 2021 Enacted Plan's cracking of Black and Latino populations.

66.    Regarding the fourth listed factor, "minimizing the splitting of voting precincts," the 2021 Enacted Plan contains four populated VTD splits. It keeps nine communities whole (CDPs and municipalities) with 16 populated splits.[23] As noted below in Section IV, Illustrative Maps 1 and 3 contain fewer VTD splits, and all three Illustrative plans either keep the same or more communities whole and have the same or fewer populated splits. Accordingly, this factor also did not require the 2021 Enacted Plan's cracking of Black and Latino populations.

67.    I note that, in Defendants' interrogatory responses (**Exhibit L**), they state that the Enacted Map "splits nine voting precincts out of a total of 96 precincts." This statement does not make sense from a map-drawing perspective for several reasons. First, there were only 92 voting precincts, which aligned with the census VTD's I mention above, at the time the Enacted Plan was passed in November 2021. Second, I understand that the updated 96 voting precincts were not in place until after this 2021 redistricting of Commissioners precincts, on December 14, 2021. So if minimizing voting precinct splits was the stated objective considered at the time the maps were drawn and enacted, the splits should have to be calculated using the 92 voting precincts in place (which is what I have done) instead of the 96 referenced in the interrogatory response.

---

[23]  A "populated" split means a split of a CDP or municipality that has a recorded census population. Splits of parts of CDPs or municipalities that do not have a recorded census population are not counted.

*Expert Declaration and Report of William S. Cooper – January 2023*

68.     Regarding the fifth factor, precincts that included the Commissioners' residences, I also evaluated the impact of the 2021 Enacted Plan on the Commissioners Court incumbents at the time of redistricting.[24] No incumbents are paired.

69.     Finally, I was unable to fully assess the sixth factor, consideration of the "partisan composition of [Commissioners'] districts," as I was not entirely clear on what was meant by this factor and, in any event, have not included any partisan analysis in my report.

**C. 2021 Proposed Plan 1**

70.     I also analyzed the alternative Proposed Plan 1, which I understand was considered during the 2021 Redistricting process.[25] Plan 1 was titled a "Min. Change" plan in the field properties of the GIS shapefile provided to Plaintiffs on December 13, 2022.

71.      Proposed Plan 1 keeps most of Benchmark Precinct 3 intact but adds population from the Bolivar Peninsula and Pelican Island to Precinct 3 in order to meet one-person one-vote requirements.

72.     The map in **Figure 12** displays Proposed Plan 1. Under Proposed Plan 1, the Bolivar Peninsula and Pelican Island are in Precinct 3. Galveston Island is split between Precinct 2 and Precinct 3 along the Benchmark Plan boundary.

---

[24]   I was provided the following address information from Plaintiffs' counsel for the commissioners, which I understand are consistent with the addresses listed for these individuals in a Jan. 26, 2022 voter file produced as DEFS00029727 in this litigation:
-     Precinct 1: Darrell Apffel: 1276 Bella Luna Lane, League City, TX 77573.
-     Precinct 2: Joe Giusti: 12506 D Bar Drive, Santa Fe, Tx 77570.
-     Precinct 3: Stephen Holmes: 2216 Jernigan Ford, Dickinson, TX 77534
-     Precinct 4: Ken Clark: 631 My Road, Algoa, Tx 77511

[25]   I received the shapefile for this map from Plaintiffs' attorneys in a file titled "Galveston_Map1 10_28_21", which I understand was a file produced by Defendants in this litigation. I also reviewed a shapefile for what I understand is an earlier version of this map in a file titled "Galveston_Blocks_Map1 10_21_21," also produced by Defendants. The metadata for this file shows a creation date of October 17, 2021. I confirmed the two versions of this map are identical.

26

**Figure 12: Galveston County — 2021 Proposed Plan 1**



73.   As shown in **Figure 13**, under Proposed Plan 1, Precinct 3 remains majority Black and Latino, with B+L CVAP at 55%.

**Figure 13: 2021 Proposed Plan 1 – Population Summary**

| Precinct | 2020 Pop. | Deviation | % Dev. | 18+ Pop | %18+ NH AP Black + Latino | % 18+_NH White | % NH DOJ Black + LCVAP |
|---|---|---|---|---|---|---|---|
| 1 | 87659 | -12 | -0.01% | 66625 | 29.99% | 63.20% | 28.78% |
| 2 | 86431 | -1240 | -1.41% | 67003 | 27.69% | 65.73% | 23.66% |
| 3 | 88633 | 962 | 1.10% | 68547 | 58.69% | 36.87% | 55.00% |
| 4 | 87959 | 288 | 0.33% | 65207 | 23.58% | 66.87% | 21.07% |

* CVAP calculations are based on the 2016-2020 Special Tabulation

*Expert Declaration and Report of William S. Cooper – January 2023*

74.    For further reference, I have appended to this report:

- **Exhibit H-1:** a map zooming in on the area previously encompassed by Precinct 3 under the Benchmark Plan.

- **Exhibit H-2:** a table reporting additional Census 2020 population statistics for 2021 Proposed Plan 1, as well as CVAP estimates.

- Exhibit **H-3:** a set of *Maptitude for Redistricting* reports for Proposed Plan 1, documenting contiguity (**H-3A**), municipal and unincorporated place splits (**H-3B**), and 2022 VTD splits (**H-3C**). Compactness scores are in (**H-3D**).

75.    In terms of the factors outlined in Defendants First Supplemental Interrogatory Answers (**Exhibit L**), my analysis of Proposed Plan 1 leads me to opine the following:

76.    Commissioner precincts in the plan are contiguous, population deviations by precinct are within +/- 5%. Defendants noted the difference in deviations between the Enacted Plan and Map Proposal 1 in their interrogatory response. In my experience, any redistricting plan within +/- 5% comports with traditional redistricting factors, and such a small difference in deviation would not be a significant consideration in choosing between plans.

77.    Galveston Island and Bolivar Peninsula are split between Precinct 2 and 3. While this does not unite them into a single district, Proposed Plan 1 is superior to the 2021 Enacted Plan in terms of lessening intra-district distance and travel time. End-to-end distance in Precinct 3 from the High Island Bridge to downtown Galveston is 36 miles, with a corresponding 10 a.m. weekday travel time of 72 minutes.[26] End-to-end distance in Precinct 2 from downtown

---

[26]  Travel time calculated for 10 a.m. CST, Dec. 16, 2022.  Source: https://www.google.com/maps/dir/High+Island+Bridge,+High+Island,+TX+77623/Galveston,+TX/@29.4471065,-94.8741244,10z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x863ee2717948f7e9:0xee79f897909c5120!2m2!1d-94.388755!2d29.5946589!1m5!1m1!1s0x863f59c8c4059259:0xe58b03c9b9eaecc1!2m2!1d-94.7976958!2d29.3013479.

*Expert Declaration and Report of William S. Cooper – January 2023*

Galveston to San Luis Beach is 25 miles, with corresponding 10 a.m. travel time of 38 minutes.[27]

78.    Commissioner precincts are reasonably compact within the context of the complex Galveston County geography.

79.    Excluding unpopulated areas, Proposed Plan 1 contains three populated VTD splits, and keeps 10 communities whole (CDPs and municipalities) with 16 populated splits.

80.    As with the Enacted Plan, there are no paired incumbents.[28]

## IV. PLAINTIFFS' ILLUSTRATIVE MAPS[29]

### A.  Illustrative Map 1 – Least Change Plan

81.    **Illustrative Map 1** is a "least-change" plan I drew which prioritizes equalizing populations between precincts by making the least number of changes to the Benchmark Plan. I took this approach because the Benchmark Plan resulted from a legal settlement in 2012 with the Department of Justice, and in my experience, it would therefore be reasonable for a map drawer to start from the Benchmark Plan in addressing changes required due to population deviations in a newly-released Census. Furthermore, I understand Precinct 3 has been operating as a majority-minority district since the 1990s and existed in a substantially similar form since at least 2002.[30] In my opinion these facts, along with the demographic and socioeconomic factors outlined above

---

27  Travel time calculated for 10 a.m. CST, Dec. 16, 2022. Source: https://www.google.com/maps/dir/Galveston,+Texas/San+Luis+Beach,+Galveston,+TX/@29.1928256,-95.2353637,10z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x863f59c8c4059259:0xe58b03c9b9eaecc1!2m2!1d-94.7976958!2d29.3013479!1m5!1m1!1s0x864076e3e8dc03f7:0xce62d8e942b60b33!2m2!1d-95.116358!2d29.0836537.

28  For this factor, I used the same addresses noted above in Note 24.

29  I have included native Shapefiles of the Illustrative Maps 1, 2, and 3 as **Exhibits M, N,** and **O**, respectively, to this report.

30  Source: **Exhibit G,** excerpts of Galveston's 2011 pre-clearance submission showing 2002 Benchmark map titled as "Exhibit D" in that document.

*Expert Declaration and Report of William S. Cooper – January 2023*

in Section II, would also provide a reasonable basis to consider Precinct 3 as an established

community of interest.

82.    The map in **Figure 14** displays Illustrative Map 1 zoomed out to show the full extent

of Galveston County.

**Figure 14: Galveston County — Illustrative Map 1**



83.    Illustrative Map 1 makes no changes to Benchmark Plan precinct boundaries on

Galveston Island. On the mainland, the changes are made with minimal impact: two VTDs are

shifted from Precinct 2 to Precinct 3, bringing both precincts into compliance with one-person one

vote requirements. The addition of these two VTDs into Precinct 3 places all of La Marque in

Precinct 3, eliminating a split of the City that existed in the Benchmark Plan.

*Expert Declaration and Report of William S. Cooper – January 2023*

84. As shown in **Figure 15**, under Illustrative Map 1, Precinct 3 remains Black and Latino majority, with B+LCVAP at 56.60%.  Precinct 3 in Illustrative Map 1 therefore shows that Galveston County has a sufficiently large and geographically compact Black and Latino population to constitute a majority in at least one Commissioners precinct.

**Figure 15: 2021 Illustrative Map 1 – Population Summary**

| Precinct | 2020 Pop. | Deviation | % Dev. | 18+ Pop | %18+ NH AP Black + Latino | % 18+_NH White | % NH DOJ Black + LCVAP |
|---|---|---|---|---|---|---|---|
| 1 | 87336 | -335 | -0.38% | 67096 | 29.26% | 63.95% | 28.70% |
| 2 | 87025 | -646 | -0.74% | 67208 | 26.57% | 66.52% | 23.02% |
| 3 | 88502 | 831 | 0.95% | 67809 | 60.22% | 35.31% | 56.60% |
| 4 | 87819 | 148 | 0.17% | 65269 | 24.21% | 66.59% | 20.80% |

\* CVAP calculations are based on the 2016-2020 Special Tabulation

85. For further reference, I have appended to this report the following additional information:

- **Exhibit I-1:** a map that zooms in on the area previously encompassed by Precinct 3 under the 2012 Plan, underscoring that Benchmark Precinct 3 is virtually unchanged under Illustrative Map 1.

- **Exhibit I-2:** a table reporting additional Census 2020 population statistics for Illustrative Map 1, as well as CVAP estimates.

- **Exhibit I-3:** a set of *Maptitude for Redistricting* reports for Illustrative Map 1, documenting contiguity (**I-3A**), municipal and unincorporated place splits (**I-3B**), and 2022 VTD splits (**I-3C**). Compactness scores are in (**I-3D**).

86. In my opinion, Illustrative Map 1 adheres to traditional redistricting principles.

Specifically:

- Commissioner precincts in the plan are contiguous, population deviations by precinct are within +/- 5%;

- Commissioner precincts are reasonably shaped and compact within the context of the complex Galveston County geography.

*Expert Declaration and Report of William S. Cooper – January 2023*

- Excluding unpopulated areas, Illustrative Map 1 splits just one populated VTD in order to avoid pairing incumbents and keeps 11 communities whole (CDPs and municipalities) with 15 populated splits.

- Travel time from the northern extremity of Precinct 3 (near the Chester L. Davis Sportsplex) to East Beach on Galveston Island (28 miles) is about 37 minutes.[31]

- There are no paired incumbents.[32]

**B. Illustrative Map 2 – Least Change with Coastal Precinct 2**

87.    I prepared **Illustrative Map 2** to incorporate the redistricting objective of a "coastal" precinct, while also working from a "least-change" strategy for equalizing populations that I described above for Illustrative Map 1. This in the map of Illustrative Map 2 in **Figure 16**, which shows that, similar to the 2021 Enacted Plan, the entire coastline of the Bolivar Peninsula and Galveston Island is assigned to a single precinct.

---

31  Travel time calculated for 10 a.m. CST, Jan. 4, 2022. Source:
https://www.google.com/maps/dir/Chester+L+Davis+Sportsplex,+1251+TX-96,+League+City,+TX+77573/East+Beach,+Galveston,+TX/@29.3868015,-95.0691569,11z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x864082d8b2d0c6d3:0x373c7a1eddbbc724!2m2!1d-95.1006231!2d29.4885081!1m5!1m1!1s0x863f9fc3915777db:0x4ed44e337cec9de3!2m2!1d-94.7526947!2d29.3180143.

32  For the three Illustrative Plans included in Section IV of this report, I have used the addresses specified above in Note 24 for incumbents, except I have substituted the address for the current Precinct 4 incumbent, Robin Armstrong, for his predecessor Ken Clark. I was provided the following address for Mr. Armstrong by counsel, from the same Jan. 26, 2022 voter file produced as DEFS00029727: 1987 Rolling Stone Dr, Friendswood TX 77546.

*Expert Declaration and Report of William S. Cooper – January 2023*

**Figure 16: Galveston County — Illustrative Map 2**



88.     Like the Benchmark Plan and Illustrative Map 1, the City of Galveston is split between Precincts 2 and 3 in Illustrative Map 2. However, boundary lines between Precincts 2 and 3 change so that Precinct 3 has a clear continuous pathway along Seawall Boulevard and on to its intersection with Highway 87 and the ferry to the Bolivar Peninsula.

89.     **Figure 17** reports summary population by precinct under Illustrative Map 2, Precinct 3 remains majority Black and Latino, with B+LCVAP at 56.51%. Precinct 3 in Illustrative Map 2 therefore also shows that Galveston County has a sufficiently large and geographically compact Black and Latino population to constitute a majority in at least one Commissioners precinct.

*Expert Declaration and Report of William S. Cooper – January 2023*

**Figure 17: 2021 Illustrative Map 2 – Population Summary**

| Precinct | 2020 Pop. | Deviation | % Dev. | 18+ Pop | %18+ NH AP Black + Latino | % 18+_NH White | % NH DOJ Black + LCVAP |
|---|---|---|---|---|---|---|---|
| 1 | 87674 | 3 | 0.00% | 66553 | 30.21% | 62.93% | 29.24% |
| 2 | 87402 | -269 | -0.31% | 69368 | 26.59% | 66.92% | 22.74% |
| 3 | 87899 | 228 | 0.26% | 67026 | 60.84% | 35.08% | 56.51% |
| 4 | 87707 | 36 | 0.04% | 64435 | 22.96% | 67.04% | 20.87% |

\* CVAP calculations are based on the 2016-2020 Special Tabulation

90.   For further reference, I have appended to this report the following additional information:

- **Exhibit J-1:** a zoomed in map for the area previously encompassed by Precinct 3 under the 2012 Plan.

- **Exhibit J-2:** a table reporting additional Census 2020 population statistics for Illustrative Map 2, as well as CVAP estimates.

- **Exhibit J-3:** a set of *Maptitude for Redistricting* reports for Illustrative Map 2, documenting contiguity (**J-3A**), municipal and unincorporated place splits (**J-3B**), and 2020 VTD splits (**J-3C**). Compactness scores are in (**J-3D**).

91.   In my opinion, Illustrative Map 2 adheres to traditional redistricting principles. Specifically:

- Commissioner precincts in the plan are contiguous and population deviations by precinct are within +/- 5%.

- Commissioner precincts are reasonably shaped and compact within the context of the complex Galveston County geography.

- Excluding unpopulated areas, Illustrative Map 2 contains nine populated VTD splits, and keeps 10 communities whole (CDPs and municipalities) with 15 populated splits.

- There are no paired incumbents, and all incumbents are assigned to their current districts.

*Expert Declaration and Report of William S. Cooper – January 2023*

### C.  Illustrative Map 3 – Coastal Precinct 1

92.    I prepared Illustrative Map 3 (shown in **Figure 18**) to demonstrate that all of the Bolivar Peninsula, Pelican Island, Galveston Island, and most of the Galveston Bay coast can be placed in a single precinct (Precinct 1) in a plan that both (*i*) adheres to race-neutral traditional redistricting criteria and (*ii*) still maintains an adjacent mainland Precinct 3 that is B+LCVAP majority.

**Figure 18: Galveston County — Illustrative Map 3**



93.    **Figure 19** reports summary population by district under Illustrative Map 3. Precinct 3 remains B+LCVAP majority (52.34%). Precinct 3 in Illustrative Map 1 therefore shows that Galveston County has a sufficiently large and geographically compact Black and Latino population to constitute a majority in at least one Commissioners precinct.

35

*Expert Declaration and Report of William S. Cooper – January 2023*

**Figure 19: 2021 Illustrative Map 3 – Population Summary**

| Precinct | 2020 Pop. | Deviation | % Dev. | 18+ Pop | %18+ NH AP Black + Latino | % 18+ NH White | % NH DOJ Black + LCVAP |
|---|---|---|---|---|---|---|---|
| 1 | 88189 | 518 | 0.59% | 70936 | 38.42% | 55.20% | 36.40% |
| 2 | 89190 | 1519 | 1.73% | 66812 | 21.66% | 70.28% | 19.31% |
| 3 | 87208 | -463 | -0.53% | 64741 | 56.66% | 38.98% | 52.34% |
| 4 | 86095 | -1576 | -1.80% | 64893 | 24.25% | 67.30% | 21.99% |

\* CVAP calculations are based on the 2016-2020 Special Tabulation

94.    For further reference, I have appended to this report the following additional

information:

- **Exhibit K-1:** zoomed-in map of the area previously encompassed by Precinct 3 under the 2012 Plan.

- **Exhibit K-2:** a table reporting additional Census 2020 population statistics for Illustrative Map 3, as well as CVAP estimates.

- **Exhibit K-3:** a set of *Maptitude for Redistricting* reports for Illustrative Map 3, documenting contiguity (**K-3A**), municipal and unincorporated place splits (**K-3B**), and 2020 VTD splits (**K-3C**). Compactness scores are in (**K-3D**).

95.    In my opinion, Illustrative Map 3 adheres to traditional redistricting principles.

Specifically:

- Commissioner precincts in the plan are contiguous, population deviations by precinct are within +/- 5%.

- Commissioner precincts are reasonably shaped and compact within the context of the complex Galveston County geography.

- Illustrative Map 3 contains three populated VTD splits and keeps nine communities whole (CDPs and municipalities) with 16 populated splits.

- There are no paired incumbents, and all incumbents are assigned to their current districts.

96.    I observe that Illustrative Map 3 differs from the 2021 Enacted Plan in ways that

indicate Illustrative Map 3 better reflects the socioeconomic data I have summarized in Section II,

as well as other considerations. Specifically, unlike the 2021 Enacted Plan, Illustrative Map 3

36

*Expert Declaration and Report of William S. Cooper – January 2023*

follows the USDA summer meal eligibility map (**Figure 6** *supra*). In my experience, this indicates that Precinct 1 here would be a better community of interest match for a "coastal" district than Precinct 2 as drawn in the 2021 Enacted Plan, assuming a single coastal district is a criterion second only to population equalization and contiguity. Furthermore, I also observe that, because Bolivar Peninsula is a particularly geographically insular community of interest in Galveston County (being connected only by ferry to the rest of the County), Illustrative Map 3 would allow the Bolivar Peninsula to retain an elected official from the Benchmark Plan who has already served the community and, it is reasonable to assume in my experience, is therefore already familiar with its needs.

### D. Postscript

97.    The three Illustrative Maps in this report are just three examples of a multitude of potential plans adhering to traditional redistricting principles that would result in maps that maintain a majority B+L CVAP Commissioners Precinct. For example, Galveston Island could be divided between Precincts 1 and 2, with mainland Precinct 3 configured exactly the same way as drawn under Illustrative Map 3, among other possibilities.

#        #        #

I reserve the right to continue to supplement my declaration considering additional facts, testimony and/or materials that may come to light.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct according to the best of my knowledge, information and belief.

Executed on:   January 12, 2023            _William S. Cooper_

                                     WILLIAM S. COOPER