# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, THE HONORABLE DERRECK ROSE, MICHAEL MONTEZ, SONNY JAMES and PENNY POPE, | § § § § § | |
| *Plaintiffs,* | § § | Civil Action No. 3:22-cv-57 |
| v. | § § § | |
| GALVESTON COUNTY, TEXAS, and HONORABLE MARK HENRY, in his official capacity as Galveston County Judge, | § § § § § § | |
| *Defendants.* | § § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 3:22-cv-93 |
| GALVESTON COUNTY, TEXAS, GALVESTON COUNTY COMMISSIONERS COURT, and HONORABLE MARK HENRY, in his official capacity as Galveston County Judge, | § § § § § § § | |
| *Defendants.* | § § | |
| DICKINSON BAY AREA BRANCH NAACP, GALVESTON BRANCH NAACP, MAINLAND BRANCH NAACP, GALVESTON LULAC COUNCIL 151, EDNA COURVILLE, JOE A. COMPIAN, and LEON PHILLIPS, | § § § § § § § | Civil Action No. 3:22-cv-117 |

|  | § |
| :---: | :---: |
| *Plaintiffs,* | § |
|  | § |
| v. | § |
|  | § |
| GALVESTON COUNTY, TEXAS, | § |
| HONORABLE MARK HENRY, in | § |
| his official capacity as Galveston | § |
| County Judge, and DWIGHT D. | § |
| SULLIVAN, in his official capacity as | § |
| Galveston County Clerk | § |
|  | § |
| *Defendants.* | § |

## UNITED STATES' MOTION TO COMPEL
## <u>PRODUCTION OF DOCUMENTS FROM DEFENDANTS</u>

# TABLE OF AUTHORITIES

**Cases**

*Doe 1 v. Baylor Univ.*, No. 6:16-cv-173, 2019 WL 2462800 (W.D. Tex. June 7, 2019) . 10

*Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869 (5th Cir. 1991) ................................. 8

*EEOC v. BDO USA, L.L.P.*, 876 F.3d 690 (5th Cir. 2017) ...................................... 7, 9, 10

*Fisher v. United States*, 425 U.S. 391 (1976) ..................................................................... 7

*Hodges, Grant & Kaufman v. U.S. Gov't*, 768 F.2d 719 (5th Cir. 1985).......................... 8

*In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021) ........... 10, 11

*In re Lindsey*, 148 F.3d 1100 (D.C. Cir. 1998) ............................................................ 9, 13

*In re TETRA Techs., Inc. Securities Lit.*, No. 4:08-cv-0965, 2010 WL 1335431 (S.D. Tex.
    Apr. 5, 2010) ................................................................................................................ 12

*League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227 (W.D. Tex. 2022)......... 13

*LULAC v. Abbott*, No. 3:21-CV-00259-DCG-JES-JVB, 2022 WL 2921793 (W.D. Tex.
    July 25, 2022),.................................................................................................... 14, 15, 16

*LULAC v. Abbott*, No. 3:21-CV-259-DCG-JES-JVB, 2022 WL 3353409 (W.D. Tex.
    Aug. 12, 2022)......................................................................................................... 8, 13

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) .................................................... 7

*Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622  (S.D. Ohio
    Dec. 15, 2018) .............................................................................................................. 16

*Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, No. 19-13134, 2020 WL 9172077 (E.D. La.
    June 25, 2020) .............................................................................................................. 12

*United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996) ...................................................... 10

*United States v. Davis*, 636 F.2d 1028 (5th Cir. Unit A Feb. 1981) ............................ 8, 18

*United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) ...................................... 17, 18

*United States v. Zolin*, 491 U.S. 554 (1989)...................................................................... 7

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .......................................................... 16

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 6

Fed. R. Civ. P. 37(a)(3)(B)(iv) ............................................................................................ 7

The United States seeks an order from this Court compelling Defendants to produce documents they have inappropriately withheld under expansive and unsupported assertions of the attorney-client privilege and the work product doctrine. Discovery in this matter concludes on April 21, 2023. *See* ECF No. 66. On January 25, 2023, following a meet-and-confer concerning Defendants' privilege log, the Parties submitted a joint dispute letter to this Court about the scope of Defendants' productions and their assertions of privilege. ECF No. 97. During a hearing on January 30, 2023, this Court stated that it would undertake an *in camera* review of the disputed documents and invited briefing on this discovery dispute.

As detailed below, a judicial order is appropriate because these documents do not contain privileged legal advice. Rather, redistricting consultants, one of whom happens to be an attorney, created them to further Defendants' policy, political, and strategic goals regarding redistricting. Many of the documents concern underlying facts and data that the attorney-client privilege does not cover. Finally, because these documents were not created in anticipation of litigation, the work product doctrine does not apply.

**INTRODUCTION**

The United States respectfully seeks an order compelling Galveston County, Texas, the Galveston County Commissioners Court, and the Honorable Mark Henry ("Defendants") to produce documents responsive to the United States' First Request for Production. Defendants have incorrectly asserted attorney-client privilege and/or work product protections over 356 documents related to the legislative redistricting of Galveston's 2021 commissioners court, including communications with the private

individuals to whom the commissioners court delegated its legislative duty of drawing commissioners court precinct maps.[1] Despite substantial attempts to resolve this dispute without judicial intervention, the United States and Private Plaintiffs have been unable to obtain discovery into documents and communications prepared primarily for purposes other than obtaining legal advice, into underlying facts and data that are not subject to withholding, and into various other documents that are not protected from disclosure. Pursuant to the Court's request for further briefing regarding the Parties' dispute and a minute entry issued subsequent to a hearing held on January 30, 2023, the United States submits this motion seeking an order compelling production of the documents Defendants are withholding.

## BACKGROUND

### 1. Procedural Background

This is a challenge to the Galveston County Commissioners Court's 2021 redistricting plan under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. The United States' First Amended Complaint alleges that the redistricting plan, which eliminated the sole commissioners court precinct in which Black and Hispanic voters had an equal opportunity to elect candidates of their choice, has a discriminatory result and

---

[1] On June 1, 2022, this case was consolidated with *Petteway v. Galveston Cnty., Tex.*, 3:22-cv-57 (S.D. Tex. 2022), and *Dickinson Bay Area Branch NAACP et al. v. Galveston Cnty., Tex.*, 3:22-cv-117 (S.D. Tex. 2022). Plaintiffs across all three cases are referred to as "Consolidated Plaintiffs," while plaintiffs from the *Petteway* and *NAACP* cases are collectively referred to as "Private Plaintiffs." Separately, Consolidated Plaintiffs are also seeking review of Defendants' objections concerning the attorney-client privilege raised during depositions held in December 2022 and January 2023. The Parties intend to file a dispute letter with this Court on this issue no later than next week.

was motivated, in part, by a discriminatory purpose. *See* First Am. Compl. ¶¶ 1-10, *United States v. Galveston Cnty.*, No. 3:22-cv-00093 (S.D. Tex. May 31, 2022), ECF No. 30.

The United States served its First Request for Production of Documents on Defendants on August 19, 2022. *See* U.S. First RFP, Ex. A. *NAACP* Plaintiffs and *Petteway* Plaintiffs also served document requests on August 12 and August 16, 2022, respectively. After the Consolidated Plaintiffs agreed to several requests by Defendants to extend Defendants' time to respond, Defendants began rolling productions on October 18, 2022.

Shortly before midnight on December 31, 2022, Defendants produced to the Consolidated Plaintiffs a privilege log, which indicated that Defendants had withheld 468 responsive documents from their productions based on claims of attorney-client privilege and work product protections. Defendants subsequently produced a corrected log on January 2, 2023, maintaining their assertions of privilege and work product protection. *See* Defs.' Corr. Priv. Log, Ex. B. Consolidated Plaintiffs exchanged numerous emails with Defendants about the basis of Defendants' claims that the documents were properly withheld and met and conferred on January 12, 2023, in an attempt to resolve this dispute. While the meet-and-confer resulted in Defendants producing an additional 22 documents over which they had previously asserted privilege and work product protection—as well as an updated privilege log on January 20, 2023[2]—Defendants

---

[2] Pursuant to the Parties' agreement and the Court's consent during the January 30, 2023, hearing, a native Excel version of Defendants' privilege log that includes Consolidated

continue to assert attorney-client privilege and/or the work-product doctrine over 464

documents.[3]  The Parties then submitted a joint dispute letter on this issue on January 25,

2023, ECF No. 97, and this Court held a hearing on January 30, 2023, ECF No. 99.  At

the hearing, this Court stated that it would conduct an *in camera* review of the disputed

documents and invited briefing on the issue.  Accordingly, the United States seeks to

compel production of 350 responsive documents[4] that Defendants continue to withhold

based on inappropriate claims of attorney-client privilege and/or the work product

doctrine and remain listed on Defendants' January 20, 2023, privilege log.[5]

### 2.  Relevant Factual Background

During a commissioners court meeting on April 5, 2021, the commissioners court

approved the engagement of the law firm of Holtzman Vogel as redistricting counsel to

assist in the redrawing of the commissioners court's map in accordance with the 2020

Census.  *See* Def. First Supp. Interr. Resp. (hereinafter "Def. Interr. Resp.") at 11, Ex. C.

According to the engagement letter, the firm "w[ould] be associated with Dale Oldham,

---

Plaintiffs' annotations and objections was sent to this Court via email on February 9,
2023.  To avoid duplicative productions of the privilege log and for this Court's
convenience, the United States refers to this document as "Annotated Priv. Log." in this
brief.

[3] Although Defendants produced 22 documents after the Parties' meet-and-confer,
Defendants duplicated some entries on the January 20, 2023, privilege log that were not
included in the January 2, 2023, privilege log.  *See* ECF No. 97-6 at 2.

[4] While Defendants have withheld 356 documents under expansive assertions of attorney-
client privilege and/or work product protections, the United States is seeking the
production of 350 of these documents.  Six documents are inappropriately withheld under
the work product doctrine but reflect an acceptable use of the attorney-client privilege.
*See* Ann. Priv. Log, Doc IDs 137-38, 147, 150-51, 182.

[5] Private Plaintiffs are separately moving to compel production of these documents. ECF
No. 102.

P.C. in representation on this matter," although Mr. Oldham was not a signatory to the engagement letter.  *See* Engagement Letter, DEFS00011722-26, Ex. D.

In their interrogatory responses, Defendants identify six factors considered in redistricting: (i) legal compliance, (ii) placing Galveston Island and the Bolivar Peninsula in a single commissioners precinct; (iii) compactness of commissioners precincts; (iv) minimizing the splitting of voting precincts; (v) drawing a commissioners precinct that "included the[] residence" of existing Commissioners (*i.e.*, incumbent protection); and (vi) the partisan composition of commissioners precincts.  *See* Def. Interr. Resp. at 5-7, Ex. C.  With respect to legal compliance, Defendants identify the "most important factor" as "equalization of population and to make the four commissioners precincts geographically sound."  *Id.* at 5.

Judge Henry specifically sought out Mr. Oldham to draw the 2021 commissioners court redistricting plan.  Henry Dep. Tr. Ex. E at 4 ("I want to be clear that my belief was that Dale was really the person that I was hiring.  Holtzman Vogel comes with him."); *id.* ("Q: So your understanding was that Dale [Oldham] would draft the map for you? A: Yes.").  Then, Mr. Oldham, along with Thomas Bryan, a non-lawyer "technical expert," worked to implement those six goals.  *Id.* at 11; *see also* Ex. D at 1 (explaining Firm was engaged to "provid[e] a technical expert to draw the map.").  According to Defendants, in August and September 2021, Mr. Oldham had telephone conversations with each commissioner and County Judge Mark Henry "as part of his fact-finding to develop a map that complied with the U.S. constitution and federal law."  Ex. C at 15-16.  Mr. Bryan, Mr. Oldham, as well as attorneys at Holtzman Vogel subsequently held meetings

to "conduct legal deliberations with Mr. Bryan and to assist Mr. Bryan in drawing the maps." *Id.* at 16.

Mr. Bryan then drew the maps considered in the course of the redistricting process. The first three maps identified by Defendants were created on or about October 17, 2021, "at the direction of Dale Oldham," and Defendants state they were not shared with the commissioners. *Id.* at 11. Mr. Bryan then drew "first iterations" of map proposals originally called "Minimum Change Plan" and "Optimal Geo Plan," and later renamed Map Proposal 1 and Map Proposal 2, respectively. *Id.* at 16. These two plans were shared with the commissioners.

Mr. Oldham, with Mr. Bryan participating remotely, then met with each commissioner to "solicit[] feedback" regarding the map proposals, and the information received was "then used to instruct Mr. Bryan in adjusting these two map proposals." *Id.* at 11-12; 16-17. Mr. Bryan followed Mr. Oldham's directions and "completed a second draft" of the two map proposals on or about October 26, 2021, which were "shared with redistricting counsel" and the County's attorney, Paul Ready. *Id.* at 12, 17. Ultimately, the commissioners court voted 3-1 to adopt Map Proposal 2 (originally the "Optimal Geo Plan") on November 12, 2021. *Id.* at 18.

## LEGAL STANDARD

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the other party "fails to produce

documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

"The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26[.]" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005)). The party asserting the privilege bears the burden of proving it applies, and "must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *Id.* (emphasis omitted) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). Any ambiguities in establishing these elements "are construed against the proponent." *Id.* (quoting *Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 462-63 (W.D.N.Y. 2006)).

The attorney-client privilege is "interpreted narrowly," *id.*, and "applies only where necessary to achieve its purpose." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). That purpose is to "encourage[] clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "Accordingly, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher*, 425 U.S. at 403 (citing *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (Friendly, J.)).

"[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). "The burden of establishing that a document is work product is on the party who asserts the claim." *Hodges, Grant & Kaufman v. U.S. Gov't*, 768 F.2d 719, 721 (5th Cir. 1985). To establish work product protection, a subpoena recipient must show that the document was created "in anticipation of litigation" and not the *mere possibility* of a legal challenge. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A. 1981) (citations omitted). "[D]ocuments created in the ordinary course of drafting legislation—including redistricting legislation—are not covered by the work product doctrine, even when the Legislature may have reasonably believed that litigation would result from its redistricting efforts." *LULAC v. Abbott*, No. 3:21-CV-259-DCG-JES-JVB, 2022 WL 3353409, at *5 (W.D. Tex. Aug. 12, 2022) (quotation omitted).

## ARGUMENT

Defendants' withholding of core documents relevant to Galveston County Commissioners Court's 2021 redistricting is not justified by their overbroad claims of the attorney-client privilege and the work product doctrine. In asserting privilege over nearly every communication about how the commissioners court precincts were drawn, Defendants err in three ways. *First*, they refuse to produce documents without making the required showing that the primary purpose of the communication was to secure legal advice. After delegating the task of redrawing the commissioner precincts, a quintessentially legislative and policy function of the commissioners court, to a

demographer and a consultant, Defendants cannot withhold all communications about the exercise of that function under the guise of an attorney-client privilege or attorney work product protection. *Second*, Defendants incorrectly assert attorney-client privilege over underlying facts and data that are never covered by attorney-client privilege. *Third*, Defendants erroneously claim work product protection over documents that were not created in anticipation of litigation.

I.  **Defendants Have Not Shown the Challenged Documents Are Protected by Attorney-Client Privilege.**

   A.  **Defendants' Explanations for Withholding Documents are Facially Inadequate.**

   First, Defendants fail to show that a privilege applies. "A confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance." *BDO USA,* 876 F.3d at 696 (internal quotation marks and citation omitted); *see also In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998). There is "no presumption" that all communications with counsel are privileged, and the party asserting the privilege must provide enough information to establish that the communication was (a) confidential, (b) with their counsel or a subordinate, and (c) for the primary purpose of obtaining legal advice. *BDO USA*, 876 F.3d at 696. And where a party communicates with an attorney who plays multiple roles, the party must demonstrate the lawyer was "acting in [their] capacity" as legal counsel at the time of the communication. *Id.* (quoting *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993)). Accordingly, "simply

describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *Id.*; *see also United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("Calling a lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion, it *is* the conclusion."); *Doe 1 v. Baylor Univ.*, No. 6:16-cv-173, 2019 WL 2462800 (W.D. Tex. June 7, 2019) (statement that communications "were made for the purpose of facilitating the rendition of professional legal services" not sufficient to establish privilege).

Neither Defendants' privilege log nor any other information they have produced to date satisfies this threshold burden. Instead, the log is replete with conclusory assertions that communications were made, for example, to "assist in forming legal opinion and providing legal analysis," to "assist in the formulation and provision of legal advice," and "containing legal advice." Ex. B. To be sure, the privilege log often provides additional information tying this "legal advice" back to the redistricting maps, but this added detail offers none of the substance needed to evaluate whether the communication was for the primary purpose of securing legal advice regarding those maps (beyond the conclusory assertion that the advice was legal in nature). For example, the log supports the existence of the privilege by stating only "[c]ommunication between Mr. Gordon [Holtzman Vogel attorney] and other redistricting counsel passing along several documents related to Map 1 and 2 proposals for the purpose of furnishing legal advice and analysis." Ann. Priv. Log, Doc ID 251, 259. In *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504, at *2 (5th Cir. July 29, 2021), the Fifth Circuit concluded that the district court did not clearly err in finding that the set of documents being withheld was not attorney-client privileged

because all the proponent stated in asserting privilege to the documents was that its counsel "in fact provided legal advice on the content of th[o]se communications." According to the court, this "bare conclusory statement" did not suffice to carry out the proponent's burden of establishing attorney-client privilege because the statement "did not explain what kind of 'legal advice' [] counsel were providing regarding th[e] documents." *Id*. Similarly, here, Defendants' log entries do not establish that the documents and communications withheld from discovery were made primarily for the purpose of legal advice; they merely assert it, without explaining what kind of legal advice was provided or otherwise making the required showing.

Furthermore, and as discussed in greater detail below, *see* Part I.B *infra*, Defendants' withholding of communications with Dale Oldham and Thomas Bryan is inconsistent with Defendants' own account of Mr. Oldham's and Mr. Bryan's roles as the primary legislative drafters of the redistricting maps. Defendants have made clear that Mr. Oldham and Mr. Bryan were hired to draft a new commissioners court map, Ex. E at 4; Ex. C at 15, and accordingly, Mr. Oldham communicated with commissioners and others to obtain the individual commissioners' views and preferences. Given these roles, Defendants' invocation of "forming legal opinion" or "assist[ing] in the formulation and provision of legal advice" is not enough to show that the withheld documents and communications were primarily for the purpose of giving or receiving legal advice, as

opposed to fulfilling the legislative drafting or policy role delegated to Mr. Oldham and Mr. Bryan by the commissioners court.[6]

### B. Defendants Claim Protection Over Documents Categorically Not Protected by Attorney-Client Privilege or Work Product Doctrine.

Even if Defendants had adequately supported their privilege assertions, they cannot justify their expansive claims of privilege to withhold virtually all communications about how Galveston County Commissioners Court's redistricting maps were drafted. Mr. Oldham and Mr. Bryan were engaged in legislative and policy activity when drawing the maps. Though Defendants claim to have desired for Mr. Oldham and Mr. Bryan to draw a commissioners court map consistent with federal law, each of their communications regarding how to redraw the commissioner precinct lines are not entirely

---

[6] To be sure, the United States' arguments regarding the facial inadequacy of Defendants' explanations for withholding documents are not only limited to communications involving Mr. Oldham and Mr. Bryan. Instead, and as identified in the Annotated Privilege Log, Defendants have also failed to adequately demonstrate that numerous communications involving County attorney Paul Ready and attorneys from the law firm of Holtzman Vogel were made for the primary purpose of seeking legal advice. *See In re TETRA Techs., Inc. Securities Lit.*, No. 4:08-cv-0965, 2010 WL 1335431 at *5 (S.D. Tex. Apr. 5, 2010) ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from a lawyer."); *see also Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, No. 19-13134, 2020 WL 9172077 at *3 (E.D. La. June 25, 2020) ("Not all communications between a client and his or her attorney are protected by the attorney-client privilege. While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects 'only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.' The attorney-client privilege therefore does not attach to every communication between a client and counsel, as the privilege 'does not embrace everything that arises out of the existence of an attorney-client relationship.'") (citations omitted).

converted into privileged communications for the purpose of seeking or providing legal advice.

"A communication must be for the *primary* purpose of *legal* advice for attorney-client privilege to attach." *LULAC*, 2022 WL 3353409, at *4 (citing *BDO USA*, 876 F.3d at 695) (emphases in original). Accordingly, "documents that are instead concerning advice on political, strategic or policy issues are not shielded from disclosure by the attorney-client privilege." *Id.* (quoting *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005)) (alterations and internal quotation marks omitted); *see also In re Lindsey*, 148 F.3d at 1106. "Just because attorneys were involved with the redistricting process or attorneys advised the legislature does not mean that all facts about a legislative decision are shielded from discovery." *League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 236 (W.D. Tex. 2022).

As Defendants admit (and could hardly contest), drafting a redistricting map is a multifaceted legislative enterprise that requires balancing several factors. *See* Ex. C at 5-7. Virtually all are matters of legislative policy, such as geographic composition, compactness, incumbent protection, and partisan composition. *Id.* Because they were the individuals specifically tasked with creating the maps, Mr. Oldham and Mr. Bryan were necessarily balancing all of these factors in drawing maps and communicating with the commissioners and others about the maps. Indeed, across both their privilege log and interrogatory responses, Defendants do not identify a single additional individual who weighed the policy considerations they have identified to determine where the commissioner precinct lines should be drawn. *See id*. at 11-18. The United States' First

Request for Production of Documents accordingly arises in a context materially different from one in which a legislator merely asks retained counsel for a legal opinion or legal advice on pending legislation; Defendants have instead given the task of drafting legislation to an individual who happens to be a lawyer[7] and a demographer. Defendants now seek to shield all discussions about all aspects of that drafting on the grounds that Mr. Oldham and Mr. Bryan considered legal compliance while drafting.

That Mr. Oldham and Mr. Bryan were hired to draft maps that would comply with the commissioners court's obligations to legislate consistently with the U.S. Constitution and to craft legislation that complies with federal law does not render all of their map-related communications and activities "legal advice." First, the mere aim of crafting constitutional and enforceable legislation is common to all legislative drafting. Delegating drafting duties to someone who happens to be an attorney and a non-attorney technical expert, and then allowing every communication about such drafting to be shielded by privilege based on the goal of crafting compliant legislation would drastically

---

[7] Even if Mr. Oldham were acting as an attorney, "[d]ocuments do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *LULAC v. Abbott*, No. 3:21-CV-00259-DCG-JES-JVB, 2022 WL 2921793, at *7 (W.D. Tex. July 25, 2022) (quoting *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997)), *appeal filed*, No. 22-50662 (5th Cir. July 26, 2022). Likewise, to the extent some communications involving Mr. Oldham may have been *bona fide* requests for legal analysis of the drafted maps, which Defendants' productions have not sufficiently shown, Defendants are still required to redact these documents to withhold only the privileged portions. *Id.* At *9 ("To the extent such documents actually implicate legal advice, redaction is the appropriate solution."). And with respect to dual-purpose documents— those that serve both legal-advice and political, strategic, or technical purposes—if the primary purpose is unclear, this Court can rule on them during its *in camera* review to determine their purpose. *Id.* at *9, *11-*14.

expand the privilege past its established boundaries. Here, it would grant protections to communications about policy matters that, absent the presence of an attorney, would plainly be nonprivileged. Simply because an attorney played a central role in communicating about and crafting a final policy does not render every communication with that attorney privileged. Indeed, during his deposition, Defendant Henry himself conceded that Mr. Oldham was retained to *draft* maps. *See* Ex. E at 4. ("Q: So your understanding was that Dale [Oldham] would draft the map for you? A: Yes."); *see also* Ex. C at 15-17. Defendants cannot now claim these activities that crafted redistricting legislation were somehow legal advice. *LULAC v. Abbott*, No. 3:21-CV-00259-DCG-JES-JVB, 2022 WL 2921793, at *9 (W.D. Tex. July 25, 2022), *appeal filed*, No. 22-50662 (5th Cir. July 26, 2022).

Moreover, Defendants make no attempt to demonstrate which portions of the communications actually comprised legal advice, nor do they provide any basis to evaluate the correctness of that assertion. This is especially true for those of Mr. Bryan, who is not an attorney. Instead, Defendants claim that virtually *every substantive communication* that allowed Mr. Bryan and Mr. Oldham to complete redistricting maps was exclusively for the purpose of legal advice and legal analysis. Neither Defendants' privilege log nor their interrogatory responses contain information to validate this broad claim of privilege. Instead, Defendants repeatedly rely on claims that communications were, for example, made to "assist in forming legal opinion and providing legal analysis," made to "assist in the formulation and provision of legal advice," and "contain[] legal advice." Ex. B; *see also* Ann. Priv. Log. But whether Mr. Oldham—much less Mr.

Bryan—"formed a legal opinion" based on some of the information communicated is irrelevant; the question is whether the primary purpose of such communication was to convey legal advice. Drawing a county's legislative district maps is not itself legal advice. And with respect to underlying documents and information sent from Defendants or commissioners to an attorney, "[d]ocuments do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *LULAC*, 2022 WL 2921793, at *7 (quoting *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997)).

## II. Underlying Facts and Data Are Not Privileged.

Defendants also withhold documents that show underlying facts and data about the redistricting process, but do not contain privileged communications. Such documents are facially outside the scope of attorney-client privilege. The privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts." *Upjohn*, 449 U.S. at 395. Even if some of the logged communications, or some portion of those communications, were protectable, many of the documents show only "facts, data, and maps that are not protected by the attorney client privilege." *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (citing *Upjohn*, 449 U.S. at 395-96).

The non-privileged underlying facts and data that Defendants withhold are voluminous. For example, on October 19, 2021, Mr. Bryan emailed Mr. Oldham draft PDF maps and analyses. Ann. Priv. Log, Doc ID 66-69. Defendants claim privilege over these documents, asserting the "data and analysis" were "to assist in the provision of

legal analysis and opinion." *Id.* In another withheld email exchange between Mr. Bryan and Mr. Oldham, Defendants claim privilege even though the email contains nothing more than "updated redistricting data and analysis." *Id.* Doc ID 76. Defendants also withhold a series of emails and attachments from the county's GIS specialist to a county employee with the County attorney, Paul Ready, copied, containing "attachments showing voting precinct changes, and metes and bounds descriptions for Map 2," among other factual data. *Id.* Doc ID 158-79. Defendants presumably assert the privilege because they were "submitted for Mr. Ready's legal opinion," though Defendants fail to identify any legal opinion contained in the withheld documents. These are a small sample of the inappropriately withheld underlying facts and data. *See generally id.* (identifying non-privileged facts and data on privilege log).

## III.   Assertions of Work Product are Improper.

The mere possibility that a lawsuit *might* challenge legislation sometime in the future does not convert quintessentially legislative activity into protected attorney work product. "[D]ocuments created in the ordinary course of drafting legislation—including redistricting legislation—are not covered by the work product doctrine, even when the Legislature may have reasonably believed that litigation would result from its redistricting efforts." *LULAC*, 2022 WL 3353409, at *5 (quotation omitted) (granting motion to compel documents withheld due to work product doctrine); *cf. United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (materials prepared "in the ordinary course of business" are excluded from work product protection). "That is 'because the legislature could *always* have a reasonable belief that *any* of its enactments would result

in litigation.'" *Id.* (emphasis in original) (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015)). And as "the advisory committee notes to Rule 26(b)(3) make clear, . . . '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation'" are not protected. *El Paso Cnty.*, 682 F.2d at 542.

Here, documents created by a consultant who happens to also be a lawyer and any non-attorney consultants during a legislative process should be produced. Defendants do not offer, nor can they, any justification that the documents at issue were created "in anticipation of litigation." *Davis*, 636 F.2d 1028 at 1040. The work product doctrine does not apply.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its requested relief. A proposed order is attached.

Date: February 9, 2023

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

DANIEL D. HU
Civil Chief
United States Attorney's Office
Southern District of Texas
Texas Bar No. 10131415
SDTX ID: 7959
1000 Louisiana Ste. 2300
Houston, TX 77002
713-567-9000 (telephone)
713-718-3303 (fax)
daniel.hu@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
ELISE C. BODDIE
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Catherine Meza*
T. CHRISTIAN HERREN, JR.
ROBERT S. BERMAN*
CATHERINE MEZA*
Attorney-In-Charge
BRUCE I. GEAR*
THARUNI A. JAYARAMAN*
ZACHARY J. NEWKIRK*
K'SHAANI SMITH**
MICHAEL E. STEWART**
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202-307-2767 (telephone)
202-307-3961 (fax)
catherine.meza@usdoj.gov

* *Admitted Pro Hac Vice*
** *Pro Hac Vice Admission Pending*

## CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies that on January 30, 2023, the following representatives of the Parties participated in a conference with this Court via Zoom during which the United States agreed to file this opposed Motion to Compel on February 9, 2023:

Present for the United States: Catherine Meza, Tharuni Jayaraman, Zachary Newkirk, K'Shaani Smith, and Bruce Gear.

Present for the *Petteway* Plaintiffs: Mark Gaber, Neal Baron, Simone Leeper, Alexandra Copper, Chad Dunn, Valencia Richardson, and Sonnie Waknin.

Present for the *NAACP* Plaintiffs: Joaquin Gonzalez, Sarah Chen, Hilary Klein, Richard Mancino, Adrianne Spoto, Diana C. Vall-llobera, Hani Mirza, and Andrew Silberstein.

Present for the Defendants: Shawn Sheehy, Jordan Raschke, and Joe Russo, Jr.

　/s/ *Catherine Meza*　　　
CATHERINE MEZA

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of record in this case.

 /s/ *Catherine Meza*
CATHERINE MEZA
