February 16, 2023

The Honorable Judge Andrew M. Edison
United States Magistrate Judge
United States District Court
601 Rosenberg, Seventh Floor
Galveston, TX 77550

**Re: Petteway et. al, v. Galveston County, et al., Civil Action No. 3:22-cv-00057**

Dear Judge Edison,

The parties seek a ruling from this Court concerning whether certain instructions not to answer questions on the basis of privilege were proper. This dispute involves questions asked of Commissioners Joseph Giusti and Darrell Apffel, County Judge Mark Henry, Mr. Tyler Drummond, and Mr. Nathan Sigler about their discussions and interactions with Mr. Dale Oldham. Relatedly, Plaintiffs seek an order instructing Mr. Oldham and Mr. Thomas Bryan to answer questions concerning the political, strategic, or policy decisions concerning the redistricting process in Galveston County in their upcoming depositions that are currently scheduled for the week of March 13th. Defendants contend that it is improper for Plaintiffs to request an advisory opinion regarding hypothetical questions and topics that are not before this Court.

## I.    Plaintiffs' Position

Plaintiffs maintain that Defendants have not met their burden of showing that the attorney-client privilege protects conversations involving Mr. Oldham.

In April 2021, the Galveston County Commissioners Court hired Mr. Oldham to assist in carrying out its duty to redistrict Commissioners Court precincts by drafting map proposals for the commissioners court's consideration. His retainer also covered the map-drawing services of an expert demographer, Mr. Bryan. Despite the clear policy and strategic work Mr. Oldham and Mr. Bryan performed, Defendants now erroneously assert attorney-client privilege over nearly all communications with those individuals.

First, "a statement is privileged only if it was for the 'primary purpose' of legal advice or services." *LULAC v. Abbott* ("*LULAC IV*"), 342 F.R.D. 227, 232 (W.D. Tex. 2022) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). Courts applying the attorney-client privilege in redistricting cases have consistently held that individuals do not provide legal advice merely by virtue of being lawyers retained to aid in the redistricting legislative process. *See, e.g.*, *LULAC v. Abbott* ("*LULAC III*"), No. EP-21-CV-00259, 2022 WL 3353409 *4 (W.D. Tex. Aug. 12, 2022) (holding that documents "concerning advice on political, strategic or policy issues are not shielded from disclosure by the attorney-client privilege") (citation omitted).[1]

---

[1] The authority on this point is uncontroverted. *See also Baldus v. Brennan*, No. 11-CV-1011 JPS-DPW, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011) (finding that communications between redistricting consultant and outside counsel were not privileged because they likely "concerned

1

Second, "[f]acts within the client's knowledge are not privileged, even if the client learned those facts through communications with counsel." *LULAC IV*, 342 F.R.D. at 235.

In *LULAC IV*, the Texas statewide redistricting case, the court recently evaluated questions at a deposition seeking to uncover policy advice or underlying facts, as opposed to legal advice. *Id.* at 233. There, the court found no privilege over answers to questions "inquiring exclusively about [the legislator's] personal knowledge, his actions (or inaction), and empirical features of the redistricting plans." *Id.* For example, the plaintiffs could inquire about whether a proposed plan "created two new majority Hispanic [voting age population] districts as compared to the prior plan," whether he "review[ed] any analysis of racial block voting, otherwise known as racially polarize[d] voting in drawing up" the plan, and whether the initial plan "decrease[d] Latino population share" in a specific district. *Id.*

These questions are analogous to questions Plaintiffs have already attempted to ask Defendants and County employees regarding the policy deliberations during the 2021 redistricting process in the depositions of Judge Mark Henry, Commissioner Darrell Apffel, Commissioner Joseph Giusti, and County employees Tyler Drummond and Nathan Sigler. *See generally* Pls.' Ex. 1. For example, Plaintiffs have asked about the decision to create a coastal commissioner precinct comprised of Galveston Island and the Bolivar Peninsula, *id.* at ¶ 10; whether the Defendants considered or received racial demographic data, *id.* at ¶ 17; and whether the Defendants considered maintaining Commissioner Precinct 3 as a majority-minority district, *id.* at ¶ 22. These are plainly questions pertaining to strategic and political decisions made during the County's 2021 redistricting process.

Yet, Defendants ignored the existing precedent and objected on the basis of an astonishingly broad interpretation of attorney-client privilege, instructing the deponents not to answer. For example, after a series of overbroad objections, Counsel for the NAACP Plaintiffs asked Judge Henry: "So you are not willing to say whether or not you were aware of a fact later if that fact was told to you by counsel and only counsel?" Pls.' Ex. 4 Henry Dep. 262:15-18. Judge Henry responded, "I guess, yes." *Id.* Despite Counsel's assertion that this "oversimplif[ied]" the objection, Judge Henry himself acknowledged that was his understanding of his attorneys' instruction to him. *Id.*

Third, to the extent any privilege exists over the communications, Defendants waived this privilege through their own testimony. Specifically, Defendants have waived privilege with regard to any communications related to draft maps; any communications related to population, including shifts in population, demographic data, *etc.*; and procedures related to the redistricting process. For example, during Commissioner Apffel's deposition, when asked what was discussed during a meeting with Mr. Oldham, Commissioner Apffel stated, "The maps and population." Pls.' Ex. 2 Apffel Dep. 97:9-10. Later, he stated the lawyers spoke to him about "identifying the procedure

---

advice on political, strategic, or policy issues"); *S.C. State Conf. of NAACP v. Alexander*, No. 21-CV-03302-TJH-MBS-RMG, 2022 WL 2375798, at *5 (D.S.C. Apr. 27, 2022) (rejecting assertions of attorney-client privilege over redistricting communications concerning "legislative strategy"); *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3359324, at *1, 2014 U.S. Dist. LEXIS 93294, at *15. (W.D. Tex. July 9, 2014) (noting that attorney-client privilege does not protect communications between legislator and outside counsel where "the topics of these communications are political in nature").

that was going to take place." *Id.* 116:13-14. Additionally, when Commissioner Giusti was asked about his meeting with Mr. Oldham and Mr. Bryan, he disclosed that he "did look at a couple of maps on Zoom." Pls.' Ex. 3 Giusti Dep. 54:21-55:17; *cf.* Pls.' Ex. 2 Apffel 152:25-153:10 (objecting to a similar line of questioning).

On January 31, 2023, this Court ordered Plaintiffs to outline the specific questions that Plaintiffs seek to ask Defendants and their staff regarding conversations with Mr. Oldham. Plaintiffs have identified the questions previously asked as well as additional questions in Exhibit 1. Plaintiffs now seek a ruling from this Court on whether Plaintiffs are permitted to ask the questions listed in Exhibit 1 and any reasonable follow-up questions that will naturally flow from the answers to those questions.

Finally, Plaintiffs also seek a ruling from this Court regarding the scope of information that Plaintiffs may ask about in the depositions of Mr. Oldham and Mr. Bryan. "[Q]uestions about the rationale behind legislative choices do not necessarily transgress privilege, even if the answers have legal consequences or expose the [government body] to legal liability." *LULAC IV,* 342 F.R.D. at 235. Deposition testimony has made clear that Mr. Oldham was retained to "draft the map" in 2021. *E.g.,* Pls.' Ex. 4 Henry Dep. 140:2-141:4. Plaintiffs intend to depose Mr. Oldham and Mr. Bryan regarding the political and technical decision-making that informed the map-drawing redistricting process in Galveston County. In light of the previous privilege assertions made by Defendants, Plaintiffs seek an order instructing Mr. Oldham and Mr. Bryan to answer any questions concerning political, strategic, or policy decisions or objectives concerning the 2021 redistricting process in Galveston County. Defendants cannot use potential liability as a broad shield to prevent Plaintiffs from learning whether certain facts, such as racial demographic data, were considered during the 2021 redistricting process in Galveston County.

\* \* \*

In sum, Plaintiffs seek an order reopening the depositions of Judge Mark Henry, Commissioner Darrell Apffel, Commissioner Joseph Giusti, and County employees Tyler Drummond and Nathan Sigler, and instructing the witnesses to answer the questions listed in Plaintiffs' Exhibit 1, as well as reasonable follow-up questions. Additionally, Plaintiffs request that the Court order future deponents to answer similar questions. Finally, Plaintiffs request that Mr. Oldham and Mr. Bryan be instructed to answer questions concerning the political, strategic, or policy decisions concerning the redistricting process in Galveston County.

## II.     Defendants' Position

The U.S. Supreme Court describes the process of redistricting as a "legal obstacle course" requiring legislators to avoid competing hazards of liability: the Fourteenth Amendment's prohibition against racial gerrymandering and Section 2 of the Voting Rights Act's requirement that legislators periodically consider race. *See Abbott v. Perez*, 138 S. Ct. 2305, 2315 (2018). For Commissioners to navigate this complex legal thicket, the attorney-client privilege is essential. *See United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir. 1996) (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989).

Defendants hired Mr. Oldham and Holtzman Vogel to help navigate the legal obstacle course of redistricting and provide Galveston County with legal advice. Defs' Ex. 1. Holtzman Vogel stated that they would provide a separate person, a technical expert, "to draw the map." *Id.*

3

Plaintiffs agree that the "technical expert" to draw the map was Tom Bryan, not Mr. Oldham. Henry Dep. 204:1-14. It is also understandable that witnesses testified that Mr. Oldham drew the map when they never met Mr. Bryan. *See, e.g.,* Henry Dep. 147:20-22. Commissioners Apffel and Giusti however testified that Mr. Oldham was legal counsel and Mr. Bryan was the map demographer. Apffel: 96:10-12, 106:12-17. Giusti Dep. 54:24-25, 55:1. And although the Plaintiffs try to characterize Mr. Oldham as a political consultant, *see, e.g.,* Giusti Dep. 51: 8-12, even Plaintiffs acknowledge that Mr. Oldham is a lawyer. Henry Dep. 127:8-11, 138:1-5, 265:14-16; Giusti Dep. 302:1-4; Apffel Dep. 32:22-24. Mr. Oldham even defended the county before this Court during the last round of redistricting. Plaintiffs cannot intercept communications with Mr. Oldham.[2]

*First*, the underlying facts exception to the attorney-client privilege requires a witness to testify to facts within their personal knowledge. This is uncontroversial as the attorney-client privilege protects communications, not facts. *Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 479 (E.D. Tex. 2000).[3] Still protected, however, are communications *of and about* those facts; and this basic misunderstanding is a major source of the dispute here. Opposing counsel may ask a witness "what do you know about the accident?" but opposing counsel cannot ask "what did you tell your lawyer about the accident?" *Id*. The attorney-client privilege also prohibits counsel from asking questions where the answers would reveal the substance of confidential attorney-client communications. *See id*. at 482. Plaintiffs' hypothetical questions demonstrate that they misunderstand the underlying facts exception. The majority of Plaintiffs' hypothetical questions listed in Plaintiffs' Exhibit 1 seek communications with Mr. Oldham, not facts within the witnesses' personal knowledge. *See, e.g.,* Pls.' Ex. 1 at ¶¶ 2, 5, 6, 7, 8, 11, 12, 15, 16).

Importantly, Defendants privilege assertions are not "blanket"-style objections. Defendants have properly answered questions as to their understanding but objected when the question required the witness to reveal communications with counsel. Giusti Dep. 27:17-25; 47:19-25; 296:11-14; *Compare* Giusti Dep. 87:16-25, 88:1 (attorney-client privilege instruction because question asked about Commissioner Giusti's opportunity to present redistricting preferences) *with id*. at 88:2-15 (Commissioner Giusti explaining his redistricting preferences when asked what his preferences were). Apffel Dep. 136:5-13; Henry Dep. 234:12-25. Proper instructions were also given when the answer to the question would reveal the substance of confidential attorney-client communications. *See, e.g.,* Henry Dep. 204:7-14 (premising the question with whether the witness became aware of a fact during pre-deposition meetings with counsel and answer would have revealed those very communications); *Thurmond*, 198 F.R.D. at 482.

Although, and importantly, some of Plaintiffs' questions drew cautionary instructions from Defendants' counsel, **all but seven questions were answered.** Defs.' Ex. 2. In fact, the three questions highlighted in Plaintiffs submission above were answered. Defs.' Ex. 3.

---

[2] Defendants have also invoked the attorney work-product protection for some of their questions.
[3] Plaintiffs overstate *LULAC IV*'s holding. The court held that questions calling for attorney-client communications were generally privileged. *LULAC IV*, 342 F.R.D. at 235.

*Second*, although the attorney-client privilege protects only legal advice and not political, strategic, or policy advice, Plaintiffs' argument would destroy the privilege to unravel all communications with counsel. Communications giving non-legal advice are still privileged when the communications are tethered to the legal implications of that advice. *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 381-82 (5th Cir. 2014). Thus, for example, a criterion adhering to the one person, one vote constitutional principle can create legal liability under Fourteenth Amendment's prohibition against racial gerrymandering. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 271-72 (2015). A criterion achieving compactness also triggers legal liability under both Section 2 of the Voting Rights Act and the Fourteenth Amendment's prohibition against racial gerrymandering. *Gingles,* 478 U.S. at 50-51; *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433-35 (2006). Even conversations regarding drawing districts for partisan advantage can trigger legal liability under the Fourteenth Amendment's one person, one vote principle when population deviations are systematically skewed to favor one political party. *Larios v. Cox*, 300 F. Supp. 2d 1320, 1329 (N.D. Ga. 2004) (three-judge court) *aff'd. mem.* 542 U.S. 947 (2004). Questions about whether Mr. Oldham discussed or reviewed racial demographic data with the Commissioners also triggers potential liability under Section 2 and Fourteenth Amendment. *Abbott*, 138 S. Ct. at 2315. The Commissioners rightly retained legal counsel to help traverse this minefield.

Furthermore, in determining whether the attorney-client privilege applies, context is key. *Exxon Mobil Corp.*, 751 F.3d at 382. For example, in all three cases that Plaintiffs cite, the context demonstrated that the person at the center of the privilege fight was acting in a political/policy making capacity, not a legal capacity. *Baldus v. Members of the Wis. Gov't Accountability Bd.*, No. 11-cv-562, 2011 U.S. Dist. LEXIS 146869 *4, 9-11 (E.D. Wis. Dec. 20, 2011) (holding that communications between legislator and non-lawyer government relations specialist not protected under attorney-client privilege because the non-lawyer was likely providing political/policy advice, not legal advice)*; see also Perez v. Perry*, No. 11-cv-360, 2014 U.S. Dist. LEXIS 93294 at *15-16 (W.D. Tex. July 9, 2014) (holding that the attorney-client privilege does not protect comments from chief of staff to legislator and legislator's political consultant concerning the "political ramifications of pending legislation[]" because it was untethered from any discussion of the legislation's legal implications) (internal quotation marks omitted) (citing *Exxon Mobil Corp.*). The record establishes that Mr. Oldham was hired as an attorney to provide legal advice concerning redistricting. Plaintiffs have not adduced any evidence to indicate that Mr. Oldham was providing any political or policy advice that "was divorced from its legal implications." *Exxon Mobil Corp.*, 751 F.3d at 382.

*Third*, Plaintiffs are wrong that to assert that Commissioners Apffel's and Giusti's short non-substantive responses to questions waive any attorney-client privilege, much less all privileged communications. The Fifth Circuit has long recognized that waiver occurs only when a "significant portion" of the attorney-client communication is revealed. *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). These short responses contained topics of conversation, not the substance of the conversation, and therefore are not even privileged. *RLIS, Inc. v. Cerner Corp.*, No. 3:12-CV-209, 2014 WL 12599509, at *1 (S.D. Tex. Dec. 24, 2014).

Respectfully submitted,
February 16, 2023

5

/s/ Valencia Richardson
Mark P. Gaber*
Simone Leeper*
Valencia Richardson*
Alexandra Copper*
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegal.org
sleeper@campaignlegal.org
vrichardson@campaignlegal.org

Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Cave Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

*admitted *pro hac vice*

*Counsel for Petteway Plaintiffs*

/s/     Sarah Xiyi Chen
**TEXAS CIVIL RIGHTS PROJECT**
Attorney-in-Charge
Hani Mirza
Texas Bar No. 24083512
Sarah Xiyi Chen*
California Bar No. 325327
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

*admitted *pro hac vice*

*Counsel for NAACP Plaintiffs*

JENNIFER B. LOWERY

/s/ Dallin B. Holt
Dallin B. Holt
Attorney in Charge
Texas Bar No. 24099466
S.D. of Texas Bar No. 3536519
Shawn T. Sheehy*
dholt@holtzmanvogel.com
ssheehy@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
15405 John Marshall Hwy
Haymarket, VA 2019
P: (540) 341-8808
F: (540) 341-8809

**Admitted Pro Hac Vice*

*Counsel for Defendants*

KRISTEN CLARKE

| | |
|---|---|
| United States Attorney<br>Southern District of Texas | Assistant Attorney General<br>Civil Rights Division |
| DANIEL D. HU<br>Civil Chief<br>United States Attorney's Office<br>Southern District of Texas<br>Texas Bar No. 10131415<br>SDTX ID: 7959<br>1000 Louisiana Ste. 2300<br>Houston, TX 77002<br>713-567-9000 (telephone)<br>713-718-3303 (fax)<br>daniel.hu@usdoj.gov | /s/ *Catherine Meza*<br>T. CHRISTIAN HERREN, JR.<br>ROBERT S. BERMAN*<br>CATHERINE MEZA*<br>Attorney-In-Charge<br>BRUCE I. GEAR*<br>THARUNI A. JAYARAMAN*<br>ZACHARY J. NEWKIRK*<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br>202-307-2767 (telephone)<br>202-307-3961 (fax)<br>catherine.meza@usdoj.gov<br><br>* *Admitted Pro Hac Vice*<br><br>*Counsel for the United States* |