IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS GALVESTON
DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-00057 |
| | § | |
| GALVESTON, TEXAS et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO THE
## UNITED STATES' MOTION TO COMPEL

**Table of Contents**

Nature and Stage of Proceeding ........................................................................... 1

Issues to be Ruled Upon ...................................................................................... 3

Standard of Review .............................................................................................. 3

Argument................................................................................................................ 3

COMES NOW, Defendants Galveston, Texas and the Honorable Mark Henry, et al. (collectively "Defendants"), and files this Response in Opposition to the United States' ("DOJ Plaintiff") Motion to Compel (ECF No. 103).

## NATURE AND STAGE OF PROCEEDING

Plaintiffs assert constitutional and Voting Rights Act claims against Defendants in connection with a commissioners' precinct map adopted after the 2020 census, alleging the map discriminates against Black and Latino voters in Galveston County. Defendants' Motion to Dismiss is pending (ECF 46), discovery is ongoing, and trial is set for this summer. ECF 65.

### A. Summary and Introduction

Defendants are now responding to Plaintiffs' second motion to compel, despite the Court's order stating all Plaintiffs should file a single motion to compel. *See Minute Entry*, (S.D. Tex. Jan. 30, 2023) ("Plaintiffs to file *a* motion to compel by February 9, 2013; Defendant to file *a* response by February 16, 2023; and Plaintiffs to file *a* reply by February 21, 2023." (emphasis added)).[1]

DOJ Plaintiff's motion to compel focuses predominantly on two arguments: (1) Dale Oldham was an attorney in name only, and functioning more as a political consultant to Defendants; and (2) Defendants' privilege log is conclusory and insufficient. Both

---

[1] Notably, only one joint discovery letter was submitted to the Court in this matter, containing a single position on behalf of all Plaintiffs in this action. *See* ECF 97 (Jan. 25, 2023). No separate position was included by DOJ Plaintiff. Defendants were thus surprised to see the United States file a separate Motion to Compel in response to the Court's order. Nevertheless, given the overlapping arguments made by DOJ Plaintiff and Private Plaintiffs, at the appropriate points Defendants will incorporate by reference the points made in opposition to Private Plaintiffs' motion to Compel, and vice versa for DOJ Plaintiff's motion.

positions are without merit.

First, both Holtzman Vogel attorneys and Mr. Oldham were retained by Defendants to provide legal advice throughout the redistricting process. The redistricting process is a constitutionally required legislative activity that the U.S. Supreme Court has described as a "legal obstacle course." *Abbott v. Perez*, 138 S. Ct. 2305, 2315 (2018). Accordingly, Galveston County retained legal counsel to ensure compliance with the law's requirements, including the Voting Rights Act and the Constitution. Therefore, their communications with clients and amongst themselves seeking and providing legal advice are protected by the attorney-client privilege. Furthermore, and contrary to DOJ Plaintiff's assertions, the Galveston County Commissioners are protected by the attorney-client privilege regardless of their status as government actors. If adopted as law, DOJ Plaintiff's position threatens to swallow the attorney-client privilege rule entirely for government actors.

Second, Plaintiff's argument that Defendants' privilege log insufficiently describes the documents or privilege claims is without merit.  Defendants have gone above and beyond here, providing who the communication is between, when the communication took place, what type of communication it was, and a detailed description of the communication.

For these reasons, the Court should deny DOJ Plaintiff's Motion to Compel.

## B. Background Facts

For the relevant factual and procedural background in support of this Opposition, Defendants incorporate by reference the "Background" section of their Opposition to Plaintiffs' Motion to Compel. *See* Defs.' Opp. to Pls.' Mot. to Compel at 4-7.

**ISSUES TO BE RULED UPON (RESTATED) & STANDARD OF REVIEW**

Whether the Court should deny Plaintiffs' request to compel production of documents identified in Exhibit 16 (ECF 102-17).

The Court has discretion in determining these issues, subject to a "clearly erroneous" standard of review by the district court. *See Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995) (citing 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)).

**ARGUMENT**

I.  **The Galveston County Commissioners Court is Entitled to Legal Counsel and the Privileges that Attach to Communications with Counsel and Documents Prepared In Anticipation of Litigation.**

A.  **Attorney-client privilege protects Galveston County's communications seeking or providing legal advice assisting the Commissioners Court in preparing a legally compliant redistricting plan.[2]**

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677 (1981) (citing 8 J. Wigmore, Evidence § 2290 (J. McNaughton rev. 1961)). Its aim is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389; *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

As the Supreme Court has affirmed, "[t]he objectives of the attorney-client privilege apply to governmental clients. The privilege aids government entities and

---

[2] For further argument on this point, Defendants incorporate by reference Section I.A. of their Opposition to Plaintiffs' Motion to Compel. *See* Defs' Opp. To Pls.' Mot to Compel at I.A.

employees in obtaining legal advice founded on a complete and accurate factual picture."
*United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-170 (2011) (quoting 1
Restatement (Third) of the Law Governing Lawyers § 74, Comment b, pp. 573-574
(1998)). "[G]overnmental agencies and employees enjoy the same privilege as
nongovernmental counterparts." *Id.* Accordingly, "[u]nless applicable law provides
otherwise, the Government may invoke the attorney-client privilege in civil litigation to
protect confidential communications between Government officials and Government
attorneys." *Id.*

It is common practice for legislators to communicate with legal counsel about
drafting legislation. Typically, this process involves legislative counsel preparing initial
drafts of bills and sending them to the legislator for their review; legislators then return
the drafts with proposed revisions and often include questions to counsel seeking legal
advice regarding the revisions. Many of these communications that take place prior to
the introduction of the bill on the floor of the legislature and final enactment of the bill
into law are private (non-public) communications that fall within the scope of the
attorney-client privilege.

Based on these well-established principles of law, Defendants are entitled to legal
counsel (and the associated privilege protections) during the legislative process to draft
and analyze legislation, and to provide legal analysis of proposed legislation. *LULAC v.
Abbott*, 342 F.R.D. 227, 236 (W.D. Tex. 2022) ("*LULAC IV*"); *Bethune-Hill v. Va. State
Bd. Of Elections*, 114 F. Supp.3d 323, 346 (E.D. Va. 2015); *see also* Tex. Gov't Code §
323.017.

DOJ Plaintiff argues this privilege could not be invoked by Mr. Oldham because he was retained to "*draft* maps," ECF No. 103 at 18, and that because this constituted "legislative and political activity" by "an individual who happens to be a lawyer," Mr. Oldham's services were not for the "primary purpose of legal advice." *See id.* at 14-17. DOJ Plaintiff is wrong on both the law and the facts.

First, DOJ Plaintiff incorrectly assesses the work Mr. Oldham does and was hired to do for Defendants. The U.S. Supreme Court has described the process of redistricting as a "legal obstacle course" requiring legislators to avoid competing hazards of liability: the Fourteenth Amendment's prohibition against racial gerrymandering and Section 2 of the Voting Rights Act's requirement that legislators consider race. *See Abbott,* 138 S. Ct. at 2315. Galveston County, rightfully, retained counsel "to provide legal representation and advice regarding redistricting in Galveston County, Texas, including provision of a technical expert to draw the map." ECF No. 97-8 at 2.

The representation agreement between redistricting counsel and Defendants for the 2021 cycle made clear that Holtzman Vogel would be "associated with Dale Oldham, P.C. in representation on this matter." *Id*. Holtzman Vogel attorney Phillip Gordon was "primarily responsible" for overseeing the representation, and  he would be assisted by Dale Oldham and Jason Torchinsky in providing legal advice to Galveston County as redistricting counsel. *Id.*; *see also* ECF Nos. 97-9 at 6-8 (103:10-128:17), 97-10 at 16 (221:12-21); 97-10 at 22 (261:7-16) (Commissioner Apffel and Judge Henry repeatedly testifying that Mr. Oldham worked as redistricting counsel advising Galveston County to ensure the maps were legally compliant). Mr. Bryan was brought in as the "technical

expert" to draw the map; Mr. Oldham did not draw the maps. *See* Oldham Aff., Ex. 1 ¶¶ 9-10. Accordingly, it was clear from the outset that Mr. Oldham functioned as redistricting counsel for Galveston County.

Contrary to Plaintiffs' argument, ECF 103 at 11, 13, 16, Defendants have shown that confidential communications between Mr. Oldham and the Commissioners during the redistricting process that have been withheld under the attorney-client privilege were for the *primary purpose* of securing a legal opinion, legal advice, legal services, or assistance during legal proceedings and are all protected attorney-client communications. *See* Oldham Aff., Ex. 1 ¶¶ 5-8, 10, 13-15, 17-18; *see also EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017). The fact that these legal opinions were rendered regarding legislation or drafts of proposed legislation (*i.e.*, draft maps for the 2021 redistricting plan) does not remove the protection they receive from taking place within the attorney-client relationship for the purpose of legal advice. *LULAC IV*, 342 F.R.D. at 236 (noting that "the United States went too far by directly asking about the advice that Butler Snow gave Chairman Hunter regarding proposed House Bill 1."); *S.C. State Conf. of the NAACP v. Alexander*, 2022 U.S. Dist. LEXIS 120295 at *19, (D.S.C., Apr. 27, 2022). Any communications with Mr. Oldham seeking or obtaining legal advice regarding the redistricting process to ensure compliance with applicable laws are quintessentially privileged communications that can be withheld under the attorney-client privilege.

Additionally, although the attorney-client privilege only protects legal advice and not political, strategic, or policy advice, DOJ Plaintiff reads that "political, strategic, or

policy advice" language too broadly, in a way that eviscerates privilege. *See* ECF 103 at 12-16. Communications that contain factual information are still privileged when the communications are tethered to the legal advice. *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 381-82 (5th Cir. 2014). Thus, for example, a criterion adhering to the one-person, one-vote constitutional principle can create legal liability under the Fourteenth Amendment's prohibition against racial gerrymandering. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 271-72 (2015) (rejecting argument that the legislature's goal of achieving population equality among districts defeated a claim that race predominated in the drawing of districts). A criterion achieving compactness is also capable of triggering legal liability under both Section 2 of the Voting Rights Act and the Fourteenth Amendment's prohibition against racial gerrymandering. *See Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986); *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433-35 (2006). Even conversations regarding drawing districts for partisan advantage can trigger legal liability under the Fourteenth Amendment's one-person, one-vote principle when population deviations are systematically skewed to favor one political party. *Larios v. Cox*, 300 F. Supp. 2d 1320, 1329 (N.D. Ga. 2004) (three-judge court) *aff'd. mem.* 542 U.S. 947 (2004). Lastly, conversations about whether the Commissioners reviewed racial demographic data could trigger liability under both the Voting Rights Act and the Fourteenth Amendment. *Abbott*, 138 S. Ct. at 2315.

Defendants' communications that are withheld based on attorney-client privilege were drafted for the primary purpose of providing legal advice and were not divorced from the legal implications; on the contrary, they were inextricably intertwined with

those implications. Therefore, the Court should dismiss DOJ Plaintiff's claims to the contrary.

### B. Galveston County's Privilege Log Provides Sufficient Information To Justify The Privilege Assertion.

The Federal Rules of Civil Procedure require that when a document is withheld as privileged, the party asserting the privilege must "describe the nature of the document[] . . . not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim." Fed. R. Civ. P. 26(a)(5).

Given the lack of specificity regarding what is required, "there is understandably tension between what a requesting party and a producing party might consider the minimum standards for disclosure." *Carhartt, Inc. v. Innovative Textiles, Inc*., 333 F.R.D. 118, 119 (E.D. Mich. 2019). Where a party provides generic descriptions only, such as "a notation that a document is correspondence, or meeting notes, or a report containing legal information," this is insufficient. *Id*. at 120 (internal quotation marks omitted). Even where document dates are provided, descriptions such as "email correspondence with [identified individuals] and the asserted privilege" are similarly deficient. *Id*. By contrast, a privilege log containing the date and identifying who is involved in the communication, the privilege assertion, and a description such as "[d]ocument providing, containing, reflecting, or discussing confidential legal advice from counsel concerning anticipated litigation[]" is sufficient *Id*. at 121. To determine the sufficiency of a privilege log, courts review the entries in their entirety, including

whether an entry identifies the individual involved in the communication, the date of the communication, the subject matter of the communication, and an adequate description of the document. *See id.*

Defendants' privilege log goes above and beyond what Rule 26 requires. The descriptions explain who the parties were to the communication, when the communication took place, the subject matter of the communication, what the documents were, and a detailed description of the nature and purpose of the communication. The descriptions speak for themselves. *See, e.g.*, ECF No. 102-5 at 2 (Doc ID 3 entry describes an October 3, 2011 "[c]ommunication from Galveston County Legal Liaison to redistricting counsel responding to redistricting counsel's questions and advice re: DOJ preclearance"); *id.* at 8 (Doc ID 86 entry describes an October 26, 2021 "[c]ommunication from redistricting counsel to map-drawer, copying other redistricting counsel re: revisions to draft Map 1 precinct inventory to assist in providing legal advice and forming opinions"); *id.* at 19 (Doc ID 201 entry describes November 7, 2021 "[c]ommunication from Galveston County General Counsel advising redistricting counsel, Mr. Oldham, Mr. Torchinsky, and Mr. Gordon re: what is legally required for the Commissioners Court to consider and vote on Map 1 and Map 2"). Because Defendants provided all the parties to the communications, the dates, the document names, and the purpose of the communications, Plaintiffs are wrong in contending that 165 of these entries are insufficient.

In spite of this, DOJ Plaintiff dismisses the log descriptions as "conclusory." ECF 103 at 13. The case law cited by DOJ Plaintiff for this argument is readily

distinguishable. First, DOJ Plaintiff relies on *EEOC v. BDO USA, L.L.P.*, which states: "courts have stated that simply describing a lawyer's advice as 'legal' *without more* is conclusory and insufficient to carry-out the proponent's burden of establishing the attorney client privilege." 876 F.3d at 697. But in *BDO*, the court was responding to a magistrate judge's incorrect presumption that because an attorney was on an email, the document in question was presumed privileged, and that the party moving to compel production had to overcome. *See id.* Nowhere did the Fifth Circuit determine that the term "legal advice" on a privilege log was *per se* conclusory and insufficient. To the contrary, such a description is often sufficient. *Cf. Carhartt,* 333 F.R.D. at 119 (noting that a privilege log description like "[d]ocument providing, containing, reflecting, or discussing confidential *legal advice* from counsel concerning anticipated litigation[]" can be sufficient) (emphasis added).

Unlike the magistrate judge in *BDO*, here Defendants never argue that documents are privileged based solely on the fact that an attorney was on an email. *Cf. BDO*, 876 F.3d at 697. Defendants have produced a detailed and thorough privilege log, detailing for each document names of individuals involved in the communication, when communications were made, what kind of document was involved (whether it was a email, document attachment, shapefile, etc.), and provided a detailed description of the communication. *See* ECF 102-5.

Additionally, DOJ Plaintiff cites *Doe 1 v. Baylor University*, but that case is also distinguishable. *Doe 1* involved an affidavit—not a privilege log—that did not assert privilege over any particular document but about a general group of documents. The

affidavits made conclusory assertions of privilege, *e.g.*, "Baylor's communications with Pepper Hamilton in connection with these Other Legal Matters were made for the purpose of facilitating the rendition of professional legal services for Baylor." 2019 U.S. Dist. LEXIS 99362 at *25-26 (W.D. Tex. June 7, 2019). That is inadequate; by contrast, going document by document and providing detailed information about who was involved in the communication, when the communication was made, what kind of communication, and why the communications was made is sufficient. *See Carhartt,* 333 F.R.D. 118 at 121; *see also* ECF 102.

Additionally, DOJ Plaintiff cites *United States v. Chen*, which states: "[c]alling the lawyer's advice "legal" or "business" advice does not help in reaching a conclusion; it *is* the conclusion." 99 F.3d 1495, 1502 (9th Cir. 1996). But this quote is plucked from its context and DOJ Plaintiff tries to shoehorn it into this case. The Ninth Circuit was not discussing privilege log descriptions. Instead, the issue was whether "the lawyer was employed with or without reference to his knowledge and discretion in the law, to give the advice." *Id*. And in *Chen*, the court ruled that the attorneys were "employed for their legal knowledge to bring their clients into compliance with the law in the least burdensome way possible . . . their communications with their client were therefore within the scope of the attorney-client privilege." *Id*.

DOJ Plaintiff also relies on *In re Boeing* for the proposition that stating that a document was privileged because counsel was "in fact provid[ing] legal advice on the content of those communications" was not privileged. ECF 103 at 13-14 (citing *In re Boeing*, 2021 U.S. App. LEXIS 22602 at *5 (5th Cir. July 29, 2021) (unpublished)). As

an initial matter, DOJ Plaintiff neglected to disclose that *In re Boeing* was not published, and the Fifth Circuit expressly stated that this opinion "is not precedent." *See id*. at *1. Separately, unlike the circumstances here, in *In re Boeing* the privilege log's detail was sparse, describing only that the lawyer provided legal advice on draft public communications regarding an accident involving a 737 Max 8 aircraft. *See id*. at *4-5. By contrast, here Defendants have provided far more than that kind of brief assertion that a particular document contained legal advice. As discussed *supra*, Defendants' descriptions detail who the parties were to the communication, when the communication took place, what the subject matter of the communication were, what the documents were, and a description of the nature and purpose of the communication.

For example, Doc ID 74 from Defendants' privilege log describes: 1) the communication was sent from Thomas Bryan to Jason Torchinsky and Phil Gordon; 2) the communication was made on 10/15/2021 at 1:24 PM; 3) this communication was an email; and 4) the communication was "from map-drawer to redistricting counsel re: preparation of first draft map for legal review and posing questions re: redistricting constitutional requirements and traditional redistricting criteria." *See* ECF No. 102-5 at 15. Plaintiffs argue *more* is required. *See* ECF 103 at 12-15. Defendants effectively could provide nothing more than the content of the communication itself, which would break the attorney-client privilege the Defendants have rightfully asserted. The Court should reject DOJ Plaintiff's argument that these descriptions are insufficient.

### C. The Underlying Facts Exception To The Attorney-Client Privilege Does Not Apply To Those Documents Created Within The Attorney-Client Relationship.

As noted, the attorney-client privilege "is the oldest of privileges for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of this privilege "is to encourage clients to make full disclosure to their attorney." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also Upjohn*, 449 U.S. at 389 ("Its purpose is to encourage full and frank communication between attorneys and their clients."). Thus, if a client knows "that damaging information could more readily be obtained from the attorney...the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Id*. The privilege thus "recognizes that sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389.

Further, because the Supreme Court describes the process of redistricting as a "legal obstacle course," *Abbott*, 138 S. Ct. at 2315, the attorney client privilege is essential for the Commissioners to candidly communicate with Mr. Oldham and Holtzman Vogel lawyers to successfully navigate the complex legal thicket of redistricting law. *See Chen*, 99 F.3d at 1499 (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989)).

Defendants agree with DOJ Plaintiff that the attorney-client privilege generally does not protect the underlying facts within the personal knowledge of a client, ECF 103 at 19; *Upjohn*, 449 U.S. at 395. However, it does protect the communication of facts to counsel. *Id*. Thus, those documents outside the scope of the attorney-client relationship are not privileged, even if those documents are sent to an attorney for legal review. *See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981); *see also id.* at 1041 ("[D]ocuments

created outside the attorney-client relationship should not be held privileged in the hands of the attorney unless otherwise privileged in the hands of the client . . .”). By contrast, however, those documents created as communications from client to counsel are protected under the attorney-client privilege. *Id*. at 1041. This is so because “to permit individuals to obtain fully informed legal advice, it is necessary to permit them to transfer relevant documents to their attorneys without losing any evidentiary privileges the documents might possess in their own hands.” *Id*. In summary, documents created as communications from the client to counsel are privileged. *Id*. at 1041. The attorney-client privilege therefore protects those documents such as letters from client to attorney seeking legal advice, and all documents created by the attorney “that are within the normal ambit of the common-law attorney-client privilege…”. *Id*; *Exxon Mobil Corp.*, 751 F.3d at 381-82 (reversing district court opinion holding that a memo prepared by in house counsel was not privileged because it primarily contained business advice because the memo was drafted during contract negotiations and the business advice was tethered to the legal implications of that advice).

DOJ Plaintiff does not lend credence to the client-to-counsel communication consideration detailed above. *See* ECF 103 at 19-20. Galveston County Defendants have observed this distinction between documents created outside the attorney-client relationship, and those documents created as communications with counsel for legal advice. Defendants have disclosed 126 documents as not privileged under the attorney-client privilege but appear on the log only because they are part of communications with counsel. *See* February 9, 2023 Letter, Ex. 2. But documents such as the initial draft maps

were created within the attorney-client relationship and were created for Mr. Oldham to conduct legal analysis of what was legally permissible for Galveston County under both the Constitution and federal law. Oldham Aff., Ex. 1 ¶ 10. Importantly, this is not hiding anything from the people of Galveston as these maps were not ready for review by the Commissioners Court as a whole or by the public until October 21, 2021. *See* Ex. 1 ¶ 15.

> **D.    Work product privilege extends to redistricting documents prepared for the Galveston County Commissioners Court as it was engaged in ongoing redistricting litigation with the Petteway plaintiffs.**

Defendants' work product assertions are entirely proper and supported under the governing law. In support of this, Defendants incorporate by reference the responses contained in Sections I.F. and I.G. of Defendants' Response to private Plaintiffs' Motion to Compel. *See* Defs.' Opp. To Pls.' Mot. to Compel at I.F. and I.G.

## II.    Defendants' Privilege Assertions Are Proper and Fully Supported.

To address Plaintiffs' litany of objections, Defendants have grouped the objections into categories of similar documents and by Document ID number as listed on Defendants' amended privilege log, (*see* ECF No. 97-7), and now address each of these categories in turn.

> **A.    The 2011 Redistricting Cycle and Preclearance Process (Doc IDs 1-21)**

Document ID numbers 1 through 21 of Defendants' amended privilege log all include privileged attorney-client communications and work product generated during Galveston County's 2011 redistricting cycle and preclearance process under Section 5 of the Voting Rights Act.

Specifically, Doc IDs 1 and 2 include a communication from County Judge Mark

Henry to redistricting counsel Joe Nixon requesting legal review of draft redistricting criteria, along with an attachment that is a draft of those criteria that were sent to counsel for review. Galveston County had retained Joe Nixon in 2011 as redistricting counsel. Nixon Engagement Letter, Ex. 3. Judge Henry's purpose for sending this email was to ensure that the Commissioner's Court's redistricting criteria conformed to all of the law's requirements, including compliance with the requirements of the Voting Rights Act and the Fourteenth Amendment (which includes, for example, adherence to the one-person, one-vote principle, *see, e.g.*, *Larios*, 300 F. Supp. 2d at 1329. Plaintiffs' objection to the withholding of Doc ID 2 is unwarranted because it is attached to Doc ID 1 which satisfies all requirements of a privileged attorney-client communication: it seeks both "legal analysis" and "legal opinions," *Alexander*, 2022 U.S. Dist. LEXIS 120295 at *19, to ensure that the Commissioners Court conducted redistricting in a legal manner. And Plaintiffs' objection is even more mystifying when considering that Defendants have already produced that same underlying document to Plaintiffs. *See* Redistricting Criteria, Ex. 4. Plaintiffs have taken the opportunity to ask nearly every witness about this document during deposition testimony. Henry Dep., Ex. 5 at 181:10-195:2; Giusti Dep., Ex. 6 at 4 44:24-45:12, 46:5-50:6; Apffel Dep., Ex. 7 at 171:13-175:17. Plaintiffs' objections are without merit.

Doc IDs 3 through 21 involve communications with or including Joe Nixon for the purpose of gathering documents for the preclearance process under Section 5 of the Voting Rights Act, and involve two tracks that were running simultaneously: (1) the traditional preclearance procedure involving submitting information in response to a request from the

DOJ and (2) litigation that was filed by Galveston County on October 17, 2011 in the U.S. District Court for the District of Columbia seeking a declaratory judgment that the Commissioners' redistricting plan complies with Section 5, *see Galveston County v. United States*, 1:11-cv-01837 (D.D.C. 2011). Because these documents were gathered in preparation for known, imminent litigation and, additionally, for the County redistricting counsel's legal review to ensure compliance with the DOJ's preclearance requirements under Section 5, these documents are protected under both attorney-client and work-product privileges. Fed. R. Civ. P. 26(b)(3); *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d at 593; *Alexander*, 2022 U.S. Dist. LEXIS 120295 at \*19.

Furthermore, Doc IDs 17 through 21 involve Joe Nixon's attempt to gather documents in response to a December 19, 2011 deficiency letter the DOJ sent to Galveston requesting additional necessary information to complete its preclearance submission. The underlying document attached to this correspondence has already been produced to Plaintiffs. *See* Dec. 19, 2011 DOJ Letter to Galveston, Ex. 8. Separately, Mr. Nixon's purpose for gathering these documents was for ongoing litigation that Galveston County had *already filed* seeking a declaratory judgment that the Commissioners' redistricting plan complies with Section 5, *see Galveston County v. United States*, 1:11-cv-01837 (D.D.C. 2011). Because these documents pertain both to ongoing litigation and to the process of obtaining Section 5 preclearance rather than the traditional legislative process of drafting and passing legislation, Plaintiffs' arguments that these were created in the "ordinary

course" of legislative business are entirely unavailing.[3]

**B.      The 2012 Redistricting Process (Doc IDs 22-26).**

Doc IDs 22 through 26 contain a communication (and attachments) from Galveston County's GIS Engineer to redistricting counsel Joe Nixon for legal review regarding Commissioner Court precinct splits, and specifically seeks counsel's review of a draft scenario to resolve the splits. The purpose for seeking counsel's review was to prepare for conducting settlement negotiations between DOJ and Galveston County regarding the Commissioners Court precincts. This communication was made for the purpose of seeking "legal analysis" and "legal opinions," *Alexander*, 2022 U.S. Dist. LEXIS 120295 at *19, from Mr. Nixon. *See Davis*, 636 F.2d at 1041.

**C.      Attorney Communications During Litigation in *Petteway v. Galveston*, No. 3:13-cv-308 (S.D. Tex. 2013) (Doc IDs 27-29).**

Doc IDs 27 through 29 contain correspondence (and attachments) between Galveston County attorneys and redistricting counsel regarding the 2007 consent decree in *United States v. Galveston County*, 3:07-CV-377 (S.D. Tex. 2007). This communication was made in the context of active litigation that the Petteway Plaintiffs brought against Galveston County, *see Petteway v. Galveston*, No. 3:13-cv-308 (S.D. Tex. 2013), and provided an explanation of allegations made during the 2007 lawsuit. This is a quintessentially privileged attorney-client communication between counsel analyzing case law that was relevant to an active litigation matter and for the purpose of strategizing in

---

[3] Ultimately, DOJ Plaintiff is complaining about documents that were likely already sent to the DOJ as part of the Section 5 preclearance process. The documents that were ultimately submitted to the DOJ are equally available to it.

preparation for trial. The attachments to this communication are likewise protected.

### D.   EEOC Complaint Documents (Doc IDs 33, 41, and 43).

Doc IDs 32 through 43 contain communications between Galveston County attorneys regarding fact-finding in response to a pending EEOC complaint. Plaintiffs appear to agree that these communications are protected under the attorney-client privilege, but object that the underlying facts (EEOC complaints themselves) are not privileged, meaning they should be permitted to intrude into these privileged communications.

The problem with Plaintiffs' objection is that the only time those underlying records appear in Defendants' records is when they were attached to privileged attorney communications. Consequently, the "underlying facts" doctrine does not entitle Plaintiffs to pierce those entirely privileged communications. Attorney-client privilege protects not just communications themselves, but also the underlying facts attached to those communications were discussed confidentially. *See Davis*, 636 F.2d at 1041. Plaintiffs' objection to withholding these documents is without merit.

### E.   Phase 1 of 2021 Redistricting: Timing and Strategy (Doc IDs 52-58)

Doc IDs 52 through 58 contain communications between Judge Henry and his office staff and Galveston County General Counsel or redistricting counsel regarding legal strategy concerning redistricting and how that strategy impacts the timing of the 2021 redistricting process. This includes a response from the Galveston County General Counsel asking about the law's requirements regarding Commissioners serving under new precinct lines, which is seeking purely legal rather than policy advice contrary to Plaintiffs' assertion. Also included is a tax assessor's (*i.e.*, a Galveston County employee, not a third

party as Plaintiffs assert, *see* ECF 102-5 at 6) communication seeking a second legal opinion from Shawn Johnson, who is both a lawyer, licensed in the state of Texas, and a CPA. Mr. Johnson is also the son of Ms. Johnson, the County Tax Assessor. Communications providing such legal analysis in response to a legal question are protected. *See Alexander*, 2022 U.S. Dist. LEXIS 120295 at *19. Because the primary purpose of these communications is ultimately legal strategy and its implications, and they were prepared in the context of an active litigation matter against Galveston County, *Petteway v. Galveston*, No. 3:13-cv-308 (S.D. Tex. 2013), these documents are protected under both attorney-client and work product privileges.

## F.   Phase 2 of 2021 Redistricting: Preparation of Initial Draft Baseline Maps (Doc IDs 59-75)

These documents involve redistricting counsel's map drawer Tom Bryan's preparation of initial draft maps at the request of Mr. Oldham as a starting point for Mr. Oldham's review to understand the lay of the land and for Mr. Oldham to conduct legal analysis of new redistricting lines for the Galveston County Commissioners Court. These initial drafts were prepared during the very course of the redistricting cycle for 2021, because they were prepared after the September 2021 phone calls between individual Commissioners and Mr. Oldham where the Commissioners confidentially communicated to Mr. Oldham what they wanted to accomplish for the 2021 redistricting cycle. Oldham Aff., Ex. 1 at ¶ 8. Because this involves the process of beginning to draft maps to approximate the wishes of the legislative client and allow redistricting counsel to conduct analysis and determine if it can be done legally, these communications, and the work

product prepared therewith, are protected. Furthermore, because these maps were prepared in the context of an active litigation matter against Galveston County, *Petteway v. Galveston*, No. 3:13-cv-308 (S.D. Tex. 2013), these documents are protected work product as described *supra*. Oldham Aff., Ex. 1 ¶¶ 8-14.

**G.    Phase 3 of 2021 Redistricting: Legal Review of Map Drafting Process (Doc IDs 76-146).**

Doc IDs 76-146 were prepared or drafted after the Commissioners had provided comments to redistricting counsel regarding the draft maps prepared by Mr. Bryan. These documents involve legal review of the maps conducted by Mr. Oldham for compliance with the law's requirements and for conducting legal analysis.  As described above, *supra* at Section I.A. legislators are entitled to legal counsel (and the associated privilege protections) during the legislative process to draft and analyze legislation, and to provide legal analysis of proposed legislation. Furthermore, these maps were prepared in the context of an active litigation matter against Galveston County, *Petteway v. Galveston*, No. 3:13-cv-308 (S.D. Tex. 2013), and when plaintiff groups were communicating plans with Commissioner Holmes regarding redistricting and their preparations for a potential lawsuit, *see* Defs.' Opp. To Pls. Mot. to Compel at 22-24, meaning these documents are protected work product.

The facts of *LULAC IV* are on point here, and show why Plaintiffs' objections are wrong on the law. 342 F.R.D. at 236. In that case, the United States protested that the nature of the advice was not certain since "a law firm can be retained for non-legal services" and that the law firm was involved "in redistricting in both a legal and non-legal capacity." *Id.*

Chairman Hunter had "expressly stated in [his] deposition that, in this context, he asked [the law firm] to "run the legal" on House Bill 1, and the United States asked to hear their ensuing suggestions." *Id.* The Court held that this "directly calls for Butler Snow's legal advice," which was protected as privileged. *Id.* The same is true for Mr. Oldham, who was plainly retained for his legal advice and whose function Judge Henry and Commissioner Apffel testified was to work as redistricting counsel for Galveston County to ensure the maps were legally compliant. ECF Nos. 97-9 at 6-8 (103:10-128:17), 97-10 at 16 (221:12-21), 97-10 at 22 (261: 7-16).

Further undermining Plaintiffs' objections here is that many of these documents withheld as privileged communications were otherwise produced as underlying facts. *See, e.g.*, Exs. 9, 10, and 11. Because these underlying facts themselves have already been produced to Plaintiffs separately, objection to their withholding here is without merit.

### H. Legal Advice Regarding Letter From League of Women Voters (Doc IDs 147, 150, and 151).

Doc IDs 147 through 151 contain communications between Galveston County General Counsel, Mr. Oldham, and redistricting counsel at Holtzman Vogel seeking and providing legal opinions regarding the legal implications of a letter from the League of Women Voters of Texas outlining the views of that organization regarding the redistricting process. These communications plainly call for legal advice on the redistricting process, as Mr. Oldham and Holtzman Vogel counsel had been retained to provide; these are thus protected under attorney-client privilege. *Cf. LULAC IV*, 342 F.R.D. at 236.  And because the documents were prepared in the context of an active, closely-related litigation matter

against Galveston County, *Petteway v. Galveston*, No. 3:13-cv-308 (S.D. Tex. 2013), these documents are likewise protected work product as described above.

Furthermore, the underlying letter has been produced to Plaintiffs, *see* Oct. 29, 2021 LWV Letter to Galveston, Ex. 12, obviating concerns about not producing underlying facts.

### I.   Emails containing and discussing revisions to Map Proposal 2's voting precincts and metes and bounds descriptions for districts to ensure compliance with the law (Doc IDs 152-200).

Sending emails regarding revisions to Map Proposal 2's voting precincts and metes and bounds descriptions for various districts to Mr. Oldham and Mr. Ready for their legal opinions, advice, and analysis, in the context of separate closely-related ongoing litigation, *see supra*, and in anticipation of imminent litigation, is protected under both work product and attorney-client privileges. Counsel requested that Mr. Sigler draft these metes and bounds descriptions and Mr. Sigler sent these descriptions to counsel for their legal advice and review. Advice of counsel was sought regarding the metes and bounds precisely due to the prospect of future litigation, and these documents were reviewed for that purpose. Oldham Aff., Ex. 1 ¶¶ 3-7, 17; *see also LULAC v. Abbott*, 2022 U.S. Dist. LEXIS 131217, at *35 (W.D. Tex. July 25, 2022) (work-product protections apply when pertinent documents were created by the prospect of potential litigation). Documents sent to attorneys specifically for their advice regarding the legality of proposed voting precincts or districts are within the ambit of attorney-client privilege and are properly withheld.

### J.   Drafting documents/redistricting orders in advance of the November 12, 2021 meeting; reviewing drafts for legal compliance and sufficiency (Doc IDs 201-324).

Documents or redistricting orders drafted in advance of the November 12, 2021 meeting and attached to privileged communications with redistricting counsel to ensure compliance with the law's requirements are covered under attorney-client privilege. These documents request information as to what is legally required by the Commissioners to consider and vote on any new maps. Many of these documents were sent or received by the County's General Counsel or redistricting counsel for the purpose of obtaining or providing legal advice. Any advice sought from or provided by an attorney regarding potential county business prior to disclosure to the general public is protected. *LULAC IV*, 342 F.R.D. at 236 Furthermore, as discussed *supra*, many of the underlying draft documents have already been produced to Plaintiffs, obviating Plaintiffs' concerns about withholding underlying facts.

### K.   Internal emails between Holtzman Vogel and Mr. Oldham about strategy and progress (Doc IDs 325-328).

Internal emails between Holtzman Vogel and Mr. Oldham discussing legal strategy are quintessentially protected documents under the attorney-client and work-product privileges. In fact, these documents specifically mention that litigation is anticipated. Such privileged discussions among attorneys about legal strategy and answering questions from the County General Counsel Mr. Ready are protected. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d at 593 (quoting Fed. R. Civ. P. 26(b)(3)).

### L.   Documents regarding the DOJ's demands as part of their investigation into potential violations of section 2 of the VRA (Doc IDs 335, 339-40).

On November 22, 2021, Commissioner Clark received a question regarding the redistricting process from a local newspaper. Doc ID 339. The following day, Mr. Ready

received a phone call from three DOJ attorneys stating they had received complaints regarding the County's redistricting. Doc ID 333. He also provided legal counsel to Commissioner Clark on strategy regarding the same. Doc ID 335. Later, Holtzman Vogel attorneys and County General Counsel Mr. Ready corresponded via email to discuss legal strategy regarding how to respond to these demands. Such exchanges are covered by attorney-client privilege and the work-product doctrine because they were prepared in the context of ongoing litigation and in anticipation of imminent litigation as described *supra*. *See LULAC IV*, 342 F.R.D. at 236; *see also In re Kaiser Aluminum*, 214 F.3d at 593.

### M.    Communications about Response to DOJ's demand (Doc IDs 383-457)

Doc IDs 383 to 457 include Map Proposal 1 and 2 shapefiles, news articles covering the proposed redistricting maps, and written public comments. Many of these have been provided to the Plaintiffs or are publicly available. Doc. IDs 383, 403, 423, 443-448, and 453 include emails between counsel about how to respond to the DOJ's demand, which are protected by the attorney-client privilege and were prepared in anticipation of litigation under the work-product doctrine. *See id.* Additionally, these underlying documents have already been produced to Plaintiffs, as described *supra*.

### CONCLUSION

For the above-mentioned reasons, DOJ Plaintiff's Motion to Compel should be denied.

Dated: February 16, 2023

Respectfully submitted,

*/s/ Dallin B. Holt*
Dallin B. Holt
Attorney in Charge
Texas Bar No. 24099466
S.D. of Texas Bar No. 3536519
Jason B. Torchinsky*
Shawn T. Sheehy*
dholt@holtzmanvogel.com
jtorchinsky@holtzmanvogel.com
ssheehy@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 2019
P: (540) 341-8808
F: (540) 341-8809

*\* Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served on all counsel of record on February 16, 2023, through email and on February 21, 2023, through the CM/ECF system.

*/s/ Dallin B. Holt*
Dallin B. Holt

**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS GALVESTON
DIVISION**

| | | |
|---|---|---|
| **TERRY PETTEWAY et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:22-CV-00057** |
| | § | |
| **GALVESTON, TEXAS et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER DENYING UNITED STATES' MOTION TO COMPEL (ECF 103)

On this day, the Court considered the Motion to Compel filed by the DOJ Plaintiff (ECF 103). After considering the record and arguments of counsel the Court DENIES the Motion in its entirety.

Dated: _____, 2023


_____ _____
United States Magistrate Judge Andrew M. Edison