# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| DICKINSON BAY AREA BRANCH NAACP, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-117- JVB |
| GALVESTON COUNTY, TEXAS, et al., | § § § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| TERRY PETTEWAY, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-57-JVB [Lead Consolidated Case] |
| GALVESTON COUNTY, TEXAS, et al., | § § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 3:22-cv-93-JVB |
| GALVESTON COUNTY, TEXAS, et al., | § § § | |
| *Defendants*. | § | |

## NAACP AND PETTEWAY PLAINTIFFS' REPLY
## IN SUPPORT OF JOINT MOTION TO COMPEL PRODUCTION OF

## <u>TABLE OF CONTENTS</u>

I.   The Work Product Doctrine Does Not Apply to the Challenged Documents. ........... 3

II.   Attorney-Client Privilege Does Not Apply to the Challenged Documents. .............. 7

   A.  Defendants cannot claim privilege over political, strategic, or policy decisions by outsourcing legislative duties to counsel. ...................................................................... 7

   B.  Documents that relay underlying facts are not privileged..................................... 11

   C.  Defendants concede that implied waiver applies. ................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*Baldus v. Brennan*,
    843 F. Supp. 2d 955 (E.D. Wis. 2012) ........................................................... 5

*Baldus v. Brennan*,
    No. 11-CV-1011, 2011 WL 6385645, (E.D. Wis. Dec. 20, 2011). ........................ 6, 15

*Castillo v. Frank*,
    70 F.3d 382 (5th Cir. 1995) ...................................................................... 3

*EEOC v. BDO USA, L.L.P.*,
    876 F.3d 690 (5th Cir. 2017) ..................................................................... 9

*Exxon Mobil Corp. v. Hill*,
    751 F.3d 379, 380–81 (5th Cir. 2014) ....................................................... 11

*Freiermuth v. PPG Indus.*,
    218 F.R.D. 694 (N.D. Ala. 2003) ............................................................. 11

*Galveston v. United States*,
    Case No. 1:11-cv-1837 (D.D.C. 2011) ....................................................... 7

*LULAC v. Abbott*,
    342 F.R.D. 227 (W.D. Tex. 2022) ................................................... 10, 11, 12

*LULAC v. Abbott*,
    No. EP-21-CV-00259, 2022 WL 3353409 (W.D. Tex. Aug. 12, 2022) ..................... 5

*LULAC v. Abbott*,
    No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2921793 (W.D. Tex.
    July 25, 2022) ........................................................................... 8, 9, 14, 16

*Miller v. Johnson*,
    515 U.S. 900 (1995) ............................................................................. 17

*Navigant Consulting, Inc. v. Wilkinson*,
    220 F.R.D. 467 (N.D. Tex. 2004) ............................................................. 10

*Ohio A. Philip Randolph Inst. v. Smith*,
    No. 1:18-CV-357, 2018 WL 6591622 (S.D. Ohio Dec. 15, 2018) ..................... 11, 16

*Petteway v. Galveston County*,
    No. 3:13-cv-308 (S.D. Tex.) ...................................................................... 7

*S.C. State Conf. of NAACP v. Alexander*,
   No. 21-CV-3302, 2022 WL 2375798 (D.S.C. Apr. 27, 2022) ............................ 12, 13

*United States v. Davis*,
   636 F.2d 1028 (5th Cir. 1981) ...................................................................... 14

*United States v. Reagan*,
   596 F.3d 251 (5th Cir. 2010) ........................................................................ 16

*Willy v. Admin. Rev. Bd.*,
   423 F.3d 483 (5th Cir. 2005) ........................................................................ 17

**Statutes**

Texas Open Meetings Act ................................................................................ 13

Voting Rights Act .......................................................................................... 4

**Other Authorities**

Federal Rules of Civil Procedure Rule 37(a)(3)(B)(iv) ...................................... 3

Rule 26(a)(1)(A) ............................................................................................ 7

NAACP and Petteway Plaintiffs submit this Reply in further support of their Joint Motion to Compel Production of Documents from Defendants, Doc. 102, pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure.[1]

Defendants' Opposition is based upon arguments that are legally baseless, factually unsubstantiated, and often irrelevant. Defendants try to convert *their* assertions of privilege to be *Plaintiffs*' burden, despite well-established law otherwise. *See* Opp. at 15. Defendants assert they anticipated litigation during the map-drawing process, but are unable to substantiate that with a single statement from Commissioners or their staff, resorting instead to the conclusory and self-serving declaration from their attorney and a third party's (irrelevant) testimony. *See* Opp. at 21–24.

Defendants also contend that their production of *other* documents in this litigation should allow them to unreasonably shield the communications most relevant to the key matters in dispute here—the process of drawing the 2021 Enacted Plan that dismantles a long-standing majority-minority district. But this misses the point. Defendants have withheld 270 documents from the key drafting period of October 15, 2021 to November 12, 2021. *See* Doc. 102-5 at Doc. IDs 59–329. And of the 992 documents from this period they have produced, nearly half (458) are public comments, and the remaining documents principally concern logistics of setting the November 12 special session, calendar invitations, and duplicative copies of the finalized map proposals and special meeting agenda. They have not produced *any* documents reflecting edits to the proposals, map-

---

[1] As a non-dispositive motion, the Court's ruling is subject to a "clearly erroneous" standard. *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995).

drawing rationales, or strategic considerations, and Defendants are also claiming privilege over substantive testimony that could shed light on how these final proposals came to be drafted. *See* Doc. 105 (Joint Dispute Letter re Deposition Testimony).

To compensate where they lack in legal purchase or facts, Defendants resort to scare tactics, contending that compelling production here would create a "sweeping rule that threatens to eliminate the attorney-client privilege for legislators." Opp. at 9. The Court should reject that slippery slope argument here as the Western District of Texas already has in the statewide redistricting matter. *See LULAC v. Abbott* ("*LULAC I*"), No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2921793, at *11 (W.D. Tex. July 25, 2022) (rejecting the argument that denying work product protection to documents created in the ordinary course of redistricting business would result in legislators "hav[ing] second-class status when it comes to obtaining legal advice and the associated protections accommodating the full and frank exchange of such advice for legislation").

At bottom, it is Defendants, not Plaintiffs, who are asking this Court to deviate from established practice with their overbroad assertions of privilege. Opp. at 9. Accepting Defendants' arguments would mean that legislative bodies need only follow a simple playbook to avoid accountability for their actions in redistricting: Just outsource legislative responsibilities entirely to a map-strategist who also has a law degree and have that person hire a demographer to draw the map. This would be a sure-fire way for a legislative body intent on depriving minority voters of their constitutional rights to shield the entire drafting process behind privilege, and later assert whatever redistricting factors best suit a defense at trial, knowing that the validity of those factors cannot be explored in discovery. The

Court should reject Defendants' transparent attempt to exploit the attorney-client privilege and work product doctrine to "cloak the record" of the 2021 redistricting process "behind a charade masking as privilege." *Baldus v. Brennan* ("*Baldus II*"), 843 F. Supp. 2d 955, 958–61 (E.D. Wis. 2012).

## I.   THE WORK PRODUCT DOCTRINE DOES NOT APPLY TO THE CHALLENGED DOCUMENTS.

Defendants have not satisfied their burden to show that the work product doctrine applies to the challenged documents. They cite to no testimony from Defendants that would establish that any of the challenged documents were prepared in anticipation of litigation and no evidence at all that the challenged documents would not have been prepared but for litigation. They have therefore failed to show that any challenged documents were created for the primary purpose of aiding in litigation.

The best Defendants can do is provide an affidavit from Dale Oldham that undermines, rather than bolsters, their assertions of work product. Oldham asserts without specificity that he (not his client) was "aware that litigation over redistricting" was "anticipated." Opp. Ex. 1 ¶ 4. Even if Oldham's *ipse dixit* were relevant to Galveston County's anticipation of litigation (which it is not), it is plainly insufficient; a general anticipation does not trigger work product even if Defendants had "reasonably believed that litigation would result from its redistricting efforts." *LULAC v. Abbott* ("*LULAC III*"), No. EP-21-CV-00259, 2022 WL 3353409, at *5 (W.D. Tex. Aug. 12, 2022) (cleaned up). This holds true for documents pertaining to pending legislation because "[t]he [l]egislature could always have a reasonable belief that any of its enactments would result in litigation.

That is the nature of the legislative process." *Baldus v. Brennan* ("*Baldus I*"), No. 11-CV-1011 JPS-DPW, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011).

Importantly, in the remainder of his affidavit, Oldham *never* asserts that the primary motivating purpose for any of his communications, or the map-related documents generated during this period, was to aid in future litigation. Instead, Oldham asserts he engaged in communications to evaluate the "legal implications" of his work drafting maps and to ensure a "legally compliant map" by assessing what was "legally permissible." Opp. Ex. 1 ¶¶ 8–18. Surprisingly, this makes sense. After all, Defendants *had* to enact new Commissioners Court precincts. That is their constitutional and legislative duty. The work that went into this—initial drafts, revisions, analyses, draft orders adopting the maps, and so on—was done to aid in the legislative process of redistricting. Oldham's affidavit thus does little more than confirm that the primary purpose of his and Holtzman Vogel's work was fulfilling the Commissioners Court's constitutional duty to redistrict commissioners' precincts, and therefore supports Plaintiffs' position that these documents were created in the ordinary course of redistricting. *See* Doc. 102 at 9–12.

Defendants' other arguments fare no better. They claim it is "self-evident" that litigation was anticipated in this matter due to separate litigation over Galveston County's districts for justices of the peace and constables from last decade. *See* Opp. 18–20. But as Defendants themselves acknowledge, a Court has already held that the two matters are "not sufficiently related" to be in the same matter, Doc. 1, as justice of the peace and constable precincts are different from the commissioners' precincts at issue here. In any event, trial

4

in that matter had concluded over seven years earlier,[2] as did the settlement in the pre-clearance litigation that did involve commissioners' precincts from 2013.[3] Defendants cite not even a single case to support their novel proposition that litigation over different districts from a prior redistricting cycle somehow cloaks all their internal map-drawing done in connection with redistricting efforts years later with work product protection.

The other "record evidence" Defendants' cite to is simply irrelevant. Opp. 21. It includes the testimony of Roxy Hall Williamson, a community advocate working with the NAACP to educate Galveston residents about redistricting in order to ensure they "had a voice" during the process,[4] *see* Ex. 1 (Williamson Dep. 25:4–26:10), and Commissioner Stephen Holmes' having discussed redistricting with his constituents.[5] *See* Opp. at 22–23.

Taking Commissioner Holmes first, Defendants can find no support for their anticipation of litigation mantra there for the simple reason that there is no suggestion that litigation was discussed at these two meetings attended by Commissioner Holmes, nor that Judge Henry or the other Commissioners were present during these meetings and as a consequence were put on notice of anticipated litigation. *See* Doc. 97–12; 97–13. Defendants do not cite any other record evidence or testimony from Commissioner Holmes that he anticipated litigation during the entirety of the redistricting process, or even that he

---

[2] *See Petteway v. Galveston County*, No. 3:13-cv-308 (S.D. Tex.).

[3] *See Galveston v. United States*, Case No. 1:11-cv-1837 (D.D.C. 2011).

[4] Defendants' complaints about Plaintiffs' disclosures in footnote 8 of their opposition are a red herring. NAACP Plaintiffs identified Ms. Williamson as a witness likely to have discoverable evidence, including her membership with the Galveston NAACP Branch, in full compliance with Rule 26(a)(1)(A).

[5] Defendants wrongly assert that Plaintiffs have waived the ability to counter these arguments by not addressing them in the initial motion. Given Plaintiffs' explanation that these arguments were irrelevant and inaccurate, *see* Doc. 97 at 2, Plaintiffs had no idea whether Defendants would raise them again here.

understood his interactions with Ms. Williamson as having anything to do with litigation as opposed to public education. Even if he had, it is hard to see how this could be imputed to Galveston County and others given that during the November 12, 2021 special session, Commissioner Holmes indicated that he was generally excluded from the process. *See* Ex. 2 (Nov. 12 Hr'g Tr. 64:23–25).

As for Ms. Williamson, she is a third party to Defendants whose views on any subject have no connection to Defendants' assertions of work product privilege. Defendants have failed to cite (and Plaintiffs are unaware of) any cases holding that a third party's anticipation of litigation can establish by proxy that Defendants created documents in anticipation of litigation. In any event, Ms. Williamson never testified to any specific anticipation of litigation beyond acknowledging a general possibility it could come to that. *See, e.g.*, Ex. 1 (Williamson Dep. 145:23–146:2, 194:7–195:10) (testifying she "didn't have any idea what kind of litigation" might occur and that litigation "was not a foregone conclusion"). What's more, Defendants point to no evidence showing that Ms. Williamson communicated any thoughts she might have had about litigation to Defendants.

Finally, and ironically, Defendants' final justification of work product on the assertion that counsel was involved at "every step" of the redistricting process does not, as they claim, "strongly support[]" their work product assertions, Opp. at 20, but rather substantiates the fact that they always intended to misuse privilege to shield the legislative record from public view. Defendants inexplicably rely on *LULAC I* for this assertion, but that case makes clear that documents relating to the outside counsel and map-drawers "are not categorically shielded by work product doctrine simply because outside counsel is

involved"; instead, it is Defendants' burden to "show[] these documents were created outside of the ordinary course of business or that their primary purpose was in anticipation of litigation." *LULAC I*, 2022 WL 2921793, at *7, *12. As shown above, and for the reasons set forth in Plaintiffs' Motion, Doc. 102 at 7–13, Defendants have failed to establish that the work product doctrine applies to any challenged documents here.

## II.   ATTORNEY-CLIENT PRIVILEGE DOES NOT APPLY TO THE CHALLENGED DOCUMENTS.

In their Opposition, Defendants try to shed their burden to establish that attorney-client privilege applies to the wholesale withholding of relevant documents by arguing that Plaintiffs have "fail[ed] to substantiate their assertion that certain documents are 'mixed purpose documents.'" Opp. at 15. But it is not Plaintiffs' burden to prove that the privilege *does not* apply; it is *Defendants*' burden to prove that the privilege *does* apply. *See EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). They have failed to do so here.

### A.   Defendants cannot claim privilege over political, strategic, or policy decisions by outsourcing legislative duties to counsel.

Defendants' Opposition is based upon a straw man. They assert that privilege applies to communications in which "legislators expressly seek or obtain legal advice from counsel during the drafting process." Opp. at 9–10. But Plaintiffs have not challenged documents which, assuming Defendants have described them in good faith, reflect such communications. *See, e.g.*, Doc. 102-5 at Doc. ID 1 ("Communica[t]ion from Judge Henry to redistricting counsel requesting legal review of draft redistricting criteria.").

The issue here is that Defendants outsourced their legislative duty to redistrict entirely to a map-drawing strategist who happens to have a law degree, who in turn hired

a demographer to carry out drafting at that map-drawing strategist's sole instruction. As Defendants concede, the drafts shown to the Commissioners Court remained unchanged after Oldham and Thomas Bryan met with Commissioners. *See* Opp. at 16 (noting shapefiles disclosed for proposed maps were "identical" to those made public on October 28, 2021). Oldham's declaration reinforces this point: He admits to working directly with Bryan to prepare the first draft maps at his direction pursuant to the Commissioners Court's "requests." Opp. Ex. 1 ¶ 10. In other words, the Commissioners Court did not merely seek legal advice from Oldham during the drafting process; they asked him to take over and complete that map-drawing process for them. It is now their burden to establish the *primary* purpose of any document withheld for attorney-client privilege was the provision of legal advice, not policy or strategic advice about where the lines should be drawn. *See LULAC v. Abbott* ("*LULAC IV*"), 342 F.R.D. 227, 232 (W.D. Tex. 2022).

But Oldham's declaration doesn't come close to meeting this burden. His conclusory assertions that he provided "legal advice" and "legal analysis," Opp. Ex. 1 ¶¶ 4, 7, 8, 10, 14, 18, are the same type of boilerplate assertions that courts routinely conclude are plainly insufficient to support privilege. *See* Doc. 102 at 14–15; *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 474 (N.D. Tex. 2004) ("Such a categorical approach to the attorney-client privilege is not proper."). These assertions are also belied by the representations Defendants have otherwise made about the map-drawing process.

Of the six "factors" Defendants assert in their interrogatory responses that Oldham and Bryan used in crafting the map proposals, just one (the first) has to do with legal considerations; the other five fall squarely within policy and strategic advice, such as which

areas to unify and what shape districts should be. *See* Doc. 102-11 at 7. Defendants' last-ditch effort to remedy their deficient privilege log with an affidavit full of conclusory assertions is simply not enough to establish that legal advice was the primary purpose of any of the challenged documents. *See Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-CV-357, 2018 WL 6591622, at *4 (S.D. Ohio Dec. 15, 2018) (holding attorney  cannot meet burden of establishing privilege "by stating in conclusory fashion that he sent and received the documents at issue in order to help him render legal advice"); *Freiermuth v. PPG Indus.*, 218 F.R.D. 694, 699 (N.D. Ala. 2003) ("An affidavit containing mere conclusory statements that a document was prepared for the purpose of obtaining legal advice will not suffice in meeting [respondent's] burden.") (citation omitted). To the extent Oldham may have discussed the rationale behind the configuration of commissioners' precinct lines as related to any legal consequences with the Commissioners or other counsel, "questions about the rationale behind legislative choices do not necessarily transgress privilege, even if the answers have legal consequences or expose the legislature to legal liability." *LULAC IV*, 342 F.R.D. at 235.

Defendants cannot find a safe haven in the non-redistricting case, *Exxon Mobil Corp. v. Hill*. *See* Opp. at 10, 15 n.4. In *Exxon*, the Fifth Circuit considered whether a memorandum written by *Exxon*'s in-house counsel was protected by attorney-client privilege in later litigation claiming damages over exposure to radioactive materials. 751 F.3d 379, 380–81 (5th Cir. 2014). The lack of applicability here could not be more apparent. Exxon is a private company that was undertaking contract negotiations, not a government body engaged in the legislative process. *Id.* The attorney who drafted the

memo at issue was consulted on the legal consequences of data disclosure by the Exxon employee who was actually engaged in negotiations at the time; she was not (as Oldham and other counsel were for the Commissioners Court) directly undertaking the business at hand herself as a corporate representative. *Id.* As such, the memorandum in *Exxon* could not "be mistaken for anything other than legal advice." *Id.* at 382. And while the document in *Exxon* was a legal memorandum, not one of the challenged documents withheld by Defendants here is characterized as such. *See* Doc. 102-5 (Pl.'s annotated privilege log).

Defendants' passing reliance on two redistricting cases is also misplaced. *See* Opp. at 11 (citing *LULAC IV*, 342 F.R.D. at 236; *S.C. State Conf. of NAACP v. Alexander*, No. 21-CV-3302, 2022 WL 2375798, at *19 (D.S.C. Apr. 27, 2022)). In *LULAC IV*, the panel held that deposition testimony was properly withheld when it concerned a lawyer's suggestions on a draft plan when asked by a legislator to "run the legal" on the bill. 342 F.R.D. at 236. As noted above, Defendants here did not simply ask Oldham or Holtzman Vogel to "run the legal" on a bill they drafted—they had their attorneys and a demographer draft it from start to finish. The other holdings in *LULAC IV*, which are much more applicable here, actually support granting the motion to compel here. The panel held the legislators could not refuse to answer other questions regarding enacted districts because "the rationale behind legislative choices do not necessarily transgress privilege, even if the answers have legal consequences or expose the legislature to legal liability." *Id.* at 235.

Likewise, the court in *Alexander* found a legal research memo containing "legal analysis related to Sine Die Adjournment" privileged following *in camera* review, 2022 WL 2375798, at *5, but otherwise ordered communications much more analogous to those

at issue in this matter to be produced. *See id.* at *4–7 (ruling that (1) communications relating to outside counsel reviewing the state legislature's "draft map room procedures" were "normal legislative business"; (2) attorney approval of a draft text regarding the timing of when session would be called for redistricting was "legislative strategy"; and (3) attorney advice to put up a "special order" to adopt a house resolution regarding the maps was "strategy as per procedural aspects of the special order").

If Defendants truly wanted only legal advice from Oldham and his associates, they could have conducted the policy portions of redistricting themselves, as actually should have been done under state law per the Texas Open Meetings Act, *see* Mot. at 24–25, and then sought legal advice as to whether the policy decisions they were proposing complied with the law. But Defendants did not do that. Instead, Defendants chose to funnel the full map-drawing process—practical, policy, and legal compliance alike—through Oldham, Bryan, and Holtzman Vogel. *See, e.g.*, Ex. 3 (Henry Dep. 171:20–173:6, 214:19–215:5). To the extent any incidental legal advice appears to be primarily conveying political, strategic, or policy advice, that is a problem of Defendants' making. They should not be rewarded by being permitted to assert attorney-client privilege over these communications.

**B. Documents that relay underlying facts are not privileged.**

Defendants acknowledge that "a document outside the attorney-client relationship is not privileged, even if sent to an attorney for legal review." Opp. at 13 (citing *United States v. Davis*, 636 F.2d 1028, 1040–41 (5th Cir. 1981)). Indeed, *Davis* is clear that "documents created outside the attorney-client relationship should not be held privileged in the hands of the attorney unless otherwise privileged in the hands of the client," and it

11

focuses primarily on documents transferred from client to attorney. *Id.* at 1041. But Defendants go on to assert that "initial draft maps created, analyzed, and revised between October 15 and October 21, 2021" are *de facto* privileged while later versions created in the same process are not. Opp. at 14. They cite no cases in support of this proposition, because there are none.

Indeed, for all the reasons stated above, third party demographer Bryan's initial draft maps were not client communications but rather inter-consultant communications. *See, e.g.*, Doc. 102-5 at Doc. IDs 59–76. These communications were not "fashioned exclusively within the attorney-client relationship" in a privileged manner because Bryan was a technical expert serving a redistricting consultant who was acting primarily in a policy and strategic capacity. When considering Bryan's work for the Texas legislature in the 2021 redistricting cycle, the panel in *LULAC I* noted that "[s]uch technical work may well have been necessary in reviewing the legality of the proposed legislation and compliance with the Voting Rights Act. Nevertheless, just because attorneys are involved in the process does not automatically shield the work of such technical experts." 2022 WL 2921793, at *11.

At most, any legal advice implicated in the exchange of maps would require redaction. But the underlying draft maps themselves are not privileged and must be produced. Defendants describe the pre-October 21 maps as drawn after Oldham had met with Commissioners to ask "about the changes that they wanted to make to the boundaries of the Commissioners Court precincts." Opp. Ex. 1 ¶ 8. He then worked with Bryan to prepare baseline maps at his direction to follow through on those "clients' requests." *Id.* ¶¶

9–10. This is quintessentially technical work, and Defendants "may not shield the opinions and conclusions of an individual hired with taxpayer money, simply by funneling the hiring of that individual through outside counsel." *See Baldus I*, 2011 WL 6385645, at *1. Even Defendants' self-serving and post-hoc description of the communications does not meet the primary purpose standard.

Defendants also acknowledge that underlying facts within the client's knowledge are not privileged. *See* Opp. at 13. Plaintiffs are mystified by what Defendants mean when they say they have produced underlying facts to Plaintiffs, *see* Opp. at 2, especially when Defendants' counsel have claimed privilege over their clients' own understanding of redistricting obligations and criteria. *See* Doc. 105. Indeed, Oldham's declaration describes conducting "fact-finding" conversations to "gather facts" from Commissioners Court members, Opp. Ex. 1 ¶ 8, but no documents have been produced on those underlying facts within the Commissioners and Judge Henry's knowledge. Documents that reflect such underlying facts, including from the legislative record, cannot be generated and then shielded from discovery by simply being emailed to counsel; they must be produced.

**C. Defendants concede that implied waiver applies.**

In their Motion, Plaintiffs argued that Defendants implicitly waived privilege because they impermissibly attempted to use privileged information as a sword and shield in this matter. Mot. at 23. Defendants' brief fails to directly address Plaintiffs' implied waiver argument or legal authorities, which abandons or concedes the applicability of this doctrine to this matter. *See United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) ("[A] failure to brief . . . constitutes waiver.").

13

At best, Defendants try to justify their reasons for withholding all shapefiles created before October 21, 2021. *See* Opp. at 16. As noted above, they fail to provide any legal basis for this distinction; furthermore, these documents are part of the legislative record where they were prepared following Oldham's consultation with the Commissioners Court on their preferences, *see* Opp. Ex. 1 ¶¶ 8–10, and cannot be withheld merely because someone with a law degree was involved in drafting them. *See, e.g.*, *LULAC I*, 2022 WL 2921793, at *11 ("[J]ust because attorneys are involved in the process does not automatically shield the work of such technical experts, nor does it necessarily protect all communications between the parties."); *Ohio A. Philip Randolph Inst.*, 2018 WL 6591622, at *3 (finding that documents containing "only facts, data, and maps" are not protected by attorney-client privilege).

Indeed, Defendants' brief only indicates they have doubled down on their usage of attorney-client privilege as both a sword and shield in this case. Oldham's Declaration is literally "Exhibit 1" for this. He talks about the initial drafting of "baseline maps," but thereafter provides no explanation of how Map Proposal 1 and Map Proposal 2 came to be from these. Opp. Ex. 1 ¶¶ 10–12. Again, Defendants disclose just enough to support their claims but withhold equally relevant information that would undercut them.

Additionally, Defendants' continued reliance on their interrogatory responses, *see* Opp. at 7, only emphasizes this point. In these responses, Defendants list the six "factors" they assert were considered in enacting the 2021 Enacted Plan, with full knowledge that Plaintiffs' will have to show at trial that Defendants "subordinated traditional race-neutral districting principles . . . to racial considerations" to prove their claims of racial

14

gerrymandering. *Miller v. Johnson*, 515 U.S. 900, 916 (1995). By withholding the challenged documents, Defendants can successfully deprived Plaintiffs (and by extension the Court) of any ability to interrogate the validity of their responses on this point. But "[a] party may not use privileged information both offensively and defensively at the same time," and fairness requires greater transparency over communications. *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005).[6]

*     *     *     *     *

Defendants have failed to meet their burden to establish that the documents identified in Exhibit 16 to Plaintiffs' Motion to Compel are protected by the attorney-client privilege and work product doctrine.[7] Plaintiffs respectfully request that the Court grant their motion to compel, order production of the documents identified in Exhibit 16 to the Motion, Doc. 102-1, and award reasonable attorneys' fees incurred in making the Motion.

Respectfully submitted this 21st day of February, 2023.

| | |
|---|---|
| */s/ Valencia Richardson* | /s/   *Sarah Xiyi Chen* |
| Mark P. Gaber* | **TEXAS CIVIL RIGHTS PROJECT** |
| Simone Leeper* | Attorney-in-Charge |
| Valencia Richardson* | Hani Mirza |
| Alexandra Copper* | Texas Bar No. 24083512 |

---

[6] Defendants' assertions that the Commissioners' deposition testimony is an adequate substitute is plainly false. *See* Opp. at 7. As the joint dispute letter filed February 16 shows, Defendants' counsel repeatedly made overly broad attorney-client privilege assertions and blocked their clients from testifying as to the policy rationales considered in the drafting of proposed maps. *See* Doc. 105; *e.g.*, Doc. 105-2 (Apffel Dep. 141:9–16); Doc. 105-3 (Giusti Dep. 297:23–298:1, 298:11–13).

[7] Defendants' inappropriately request to "incorporate by reference" several portions of their Opposition to the United States' Motion to Compel, *see* Opp. at 12, 25, thereby extending their brief far beyond the 25 page limit. Plaintiffs respectfully request the court either disregard these portions or permit Plaintiffs to incorporate by reference those arguments made by the United States in their Reply.

15

Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegal.org
sleeper@campaignlegal.org
vrichardson@campaignlegal.org
acopper@campaignlegal.org

Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
sonni@uclavrp.org
bernadette@uclavrp.org

Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Cave Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

Neil G. Baron
Law Office of Neil G. Baron
1010 E Main Street, Ste. A
League City, TX 77573
(281) 534-2748
neil@ngbaronlaw.com

**COUNSEL FOR
PETTEWAY PLAINTIFFS**
*admitted *pro hac vice*

Joaquin Gonzalez*
Texas Bar No. 24109935
Sarah Xiyi Chen*
California Bar No. 325327
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
hani@texascivilrightsproject.org
joaquin@texascivilrightsproject.org
schen@texascivilrightsproject.org

**SOUTHERN     COALITION     FOR
SOCIAL JUSTICE**
Hilary Harris Klein*
North Carolina Bar No. 53711
Adrianne M. Spoto*
DC Bar No. 1736462
1415 W. Hwy 54, Suite 101
Durham, NC 27707
919-323-3380 (Telephone)
919-323-3942 (Facsimile)
hilaryhklein@scsj.org
adrianne@scsj.org

**WILLKIE   FARR   &   GALLAGHER
LLP**
Richard Mancino*
New York Bar No. 1852797
Michelle Anne Polizzano*
New York Bar No. 5650668
Andrew J. Silberstein*
New York Bar No. 5877998
Molly Linda Zhu*
New York Bar No. 5909353
Kathryn Carr Garrett*
New York Bar No. 5923909
787 Seventh Avenue
New York, New York 10019
212-728-8000 (Telephone)
212-728-8111 (Facsimile)
rmancino@willkie.com
mpolizzano@willkie.com

asilberstein@willkie.com
mzhu@willkie.com
kgarrett@willkie.com

JoAnna Suriani*
DC Bar No. 1645212
Diana C. Vall-llobera*
DC Bar No. 1672102
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000 (Telephone)
(202) 303-2000 (Facsimile)
jsuriani@willkie.com
dvall-llobera@willkie.com

**SPENCER & ASSOCIATES, PLLC**
Nickolas Spencer
Texas Bar No. 24102529
9100 Southwest Freeway, Suite 122
Houston, TX 77074
713-863-1409 (Telephone)
nas@naslegal.com

***COUNSEL FOR NAACP PLAINTIFFS***
*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 21, 2023, the foregoing document was filed

electronically (via CM/ECF), and that all counsel of record were served by CM/ECF.

/s   *Sarah Xiyi Chen*