# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, THE HONORABLE DERRECK ROSE, MICHAEL MONTEZ, SONNY JAMES and PENNY POPE, | § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:22-cv-57 |
| v. | § § | |
| GALVESTON COUNTY, TEXAS, and HONORABLE MARK HENRY, in his official capacity as Galveston County Judge, | § § § § § § | |
| *Defendants*. | § § § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 3:22-cv-93 |
| GALVESTON COUNTY, TEXAS, GALVESTON COUNTY COMMISSIONERS COURT, and HONORABLE MARK HENRY, in his official capacity as Galveston County Judge, | § § § § § § § | |
| *Defendants*. | § § § | |
| DICKINSON BAY AREA BRANCH NAACP, GALVESTON BRANCH NAACP, MAINLAND BRANCH NAACP, GALVESTON LULAC COUNCIL 151, EDNA COURVILLE, JOE A. COMPIAN, and LEON PHILLIPS, | § § § § § § § § | Civil Action No. 3:22-cv-117 |

|  |  |
|---|---|
| *Plaintiffs*, | § |
|  | § |
| v. | § |
|  | § |
| GALVESTON COUNTY, TEXAS, | § |
| HONORABLE MARK HENRY, in | § |
| his official capacity as Galveston | § |
| County Judge, and DWIGHT D. | § |
| SULLIVAN, in his official capacity as | § |
| Galveston County Clerk | § |
|  | § |
| *Defendants.* | § |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANTS**

Galveston County, Texas, the Galveston County Commissioners Court, and the Honorable Mark Henry ("Defendants") ask this Court to shield documents related to underlying facts and data, policy, strategy, and legislation based on dubious assertions of attorney-client privilege and the work product doctrine. Despite Defendants' eleventh-hour efforts to obfuscate the record, the United States' motion to compel should be granted because: (1) Dale Oldham's and Thomas Bryan's activities and communications during the 2021 redistricting process reflect efforts to further Defendants' policy, strategic, and political goals, not the provision of legal advice; (2) underlying facts and data remain nonprivileged; and (3) the documents at issue were not created in anticipation of litigation.

## I. Defendants again fall short of proving the withheld documents were created for the primary purpose of securing legal advice.

The heart of this dispute is whether withheld documents involving a redistricting consultant who happens to be an attorney and a demographer fall within the attorney-client privilege that courts have "construed narrowly to apply only where its application would serve its purposes." *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997). They do not fall within the privilege, and Defendants again fail to "bear[] the burden of proving" that the withheld communications were made "for the *primary purpose* of securing either a legal opinion or legal services." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (emphasis added).

Defendants fall short of meeting their burden for two reasons. First, Defendants unsuccessfully attempt to recast Mr. Oldham's role in Galveston County's 2021

1

redistricting process through an affidavit in which he states that he "provided . . . legal advice and services," Defts.' Resp. in Opp. to U.S. Mot. to Compel (hereinafter "Opp."), Ex. 1 ¶ 7, but did not draft the commissioners court maps, *id*. ¶¶ 10, 14-17. This is in direct contradiction to Defendant County Judge Mark Henry's express and repeated expectations that Mr. Oldham would draft the map. ECF No. 103-5. Indeed, Mr. Oldham's affidavit is clear that he was inextricably intertwined with the map-drafting process by not simply supervising Mr. Bryan but by providing him with express instructions on how to draw the lines of the commissioners court map. And as County Judge Henry desired in 2021 and has testified in this litigation, Mr. Oldham "instructed Mr. Bryan to adjust the contours" of the map by "prepar[ing] initial baseline maps." Opp. Ex. 1 ¶¶ 9-10. Without conceding anything about Mr. Oldham's role as a redistricting consultant, assuming *arguendo* that Mr. Oldham played some hybrid role—providing both "legal advice and services" and map drawing services—attorney-client privilege does not automatically attach to the vast majority, let alone all, of his communications. *See League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 234 n.5 (W.D. Tex. 2022) ("*LULAC IV*") ("[T]he attorney-client privilege extends only to those communications made in confidence for the purpose of seeking legal advice. . . . It does not shield all law-adjacent subjects from discovery."). The United States respectfully requests this Court consider this during its *in camera* review of the challenged documents.

  Second, and more critically, Defendants fail to explain how the process of redistricting, a quintessential legislative activity, can be subsumed within their expansive

2

interpretation of protected legal advice. *See, e.g.*, *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) ("The Court has repeatedly held that redistricting . . . is a legislative task) (citations omitted). At best, Defendants point to several examples of redistricting plans that may "create" or "trigger[] legal liability," Opp. at 7. But the mere existence of a potential cause of action against a piece of legislation does not and cannot transform communications about that legislation into privileged communications. *See* ECF No. 103 at 14-15 (citing *LULAC v. Abbott*, No. 3:21-CV-00259-DCGJES-JVB, 2022 WL 2921793, at *9 (W.D. Tex. July 25, 2022), *appeal filed*, No. 22-50662 (5th Cir. July 26, 2022)). Defendants cannot use potential liability as a broad shield such that communications with an attorney regarding pending legislation or legislative choices that that "do not pertain to the rendering of . . . legal services" are shielded by privilege "simply because . . . any legislative decision . . . can have legal consequences." *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 3359324, at *1 (W.D. Tex. July 9, 2014); *see also, LULAC IV,* 342 F.R.D. at 235 ("[Q]uestions about the rationale behind legislative choices do not necessarily transgress privilege, even if the answers have legal consequences or expose the [government body] to legal liability."). Similarly, Defendants' repeated characterizations of redistricting as a "legal obstacle course," Opp. at 2, 5, 13, fall flat because all state and local legislation must comport with the U.S. Constitution and federal laws. *See, e.g.*, *KVUE, Inc. v. Moore*, 709 F.2d 922, 931 (5th Cir. 1983) (outlining supremacy of federal law and U.S. Constitution). Indeed, the need for drafting constitutional and enforceable legislation is, without question, common to all legislative drafting. Defendants' invocation of the attorney-client privilege for any legislative

3

drafting that involves individuals who happen to be attorneys would dramatically expand the privilege's scope, contrary to courts' regular calls that it be "interpreted narrowly." *BDO USA*, 876 F.3d at 695.

## II. Underlying facts and data are not privileged.

Although Defendants admit that the attorney-client privilege does not shield underlying facts, Opp. at 13, they continue to press for an erroneous expansion of the privilege that finds the underlying facts and data contained in the withheld communications remain privileged, *id*. at 14-15. As the Supreme Court made clear, however, the "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

Here, Defendants' claims that "documents created as communications from the client to counsel are privileged," Opp. at 14, miss the mark because they rely on facts and data "within the client's knowledge," which are "not protected by the attorney-client privilege, 'even if the client learned those facts through communications with counsel.'" *La Union Del Pueblo Entero v. Abbott*, SA-21-CV-00844-XR, 2022 WL 1667687, at *7 (W.D. Tex. May 22, 2022) (quoting *Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 482 (E.D. Tex. 2000)); *see also Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (citing *Upjohn*, 449 U.S. at 395-96) ("facts, data, and maps are not protected by the attorney client privilege"). Moreover, as Defendants acknowledge, "documents created outside the attorney-client relationship should not be held privileged in the hands of the attorney unless otherwise

4

privileged in the hands of the client." *United States v. Davis*, 636 F.2d 1028, 1041 (5th Cir. Unit A 1981). Defendants here erroneously withheld the underlying preexisting facts and data, such as the "updated redistricting data" referenced in an email exchange between Mr. Oldham and Mr. Bryan. Ann. Priv. Log Doc ID 76.

Further, as the Supreme Court has emphasized, "[a] fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn*, 449 U.S. at 395-96 (quotation omitted). The former is discoverable, while the latter is not. *Id.* ("[T]he protection of the privilege extends only to *communications* and not to facts.") (citations omitted); *LULAC IV*, 342 F.R.D. at 231-32. The attorney-client privilege extends to communications between an attorney and a client, but factual documents never shared with a client are not covered "communication[s]." *Upjohn*, 449 U.S. at 389 (purpose of privilege is "encourage full and frank communication between attorneys and their clients"); *see also Davis*, 636 F.2d at 1041 ("documents created outside the attorney-client relationship should not be held privileged"); *LULAC*, 2022 WL 2921793, at *11 (explaining how "just because attorneys are involved in the process does not automatically shield the work of such technical experts, nor does it necessarily protect all communications between the parties"). Here, communications about underlying facts and data between just Mr. Oldham and Mr. Bryan—*i.e.*, communications that do not include any Galveston County staff or any member of the commissioners court, the client—are not communications between an attorney and a *client*. Such communications are therefore not covered by the attorney-client privilege. *See generally id.* Yet, Defendants have withheld multiple email exchanges between just Mr. Oldham and Mr.

5

Bryan. Ann. Priv. Log Doc ID 66-69 (email and attachments from Mr. Bryan to Mr. Oldham withheld as a "[c]ommunication from map-drawer to redistricting counsel with attached PDF's of draft plans and analysis to assist in the provision of legal analysis and opinion"), *id.* at 70-71 (email and attachment from Mr. Bryan to Mr. Oldham withheld as "[c]ommunication from map-drawer to redistricting counsel with attached PDF of draft plan to assist in the provision of legal analysis and opinion"), *id.* at 72-73 (email and attachment from Mr. Bryan to Mr. Oldham withheld as "[c]ommunication from map-drawer to redistricting counsel with attached data and analysis to assist in the provision of legal analysis and opinion"), *id.* at 74-75 (email and attachment from Mr. Bryan to Mr. Oldham withheld as "[c]ommunication from map-drawer to redistricting counsel with attached PDF of map to assist in the provision of legal analysis and opinion"), *id.* at 76-77 (email and attachment from Mr. Bryan to Mr. Oldham withheld as "[c]ommunication between map-drawer and redistricting counsel re: Zoom meeting on October 22, 2021 to discuss updated redistricting data and analysis to assist in forming legal opinion and providing analysis"), *id.* at 78-79 (email and attachment from Mr. Oldham to Mr. Bryan withheld as "[c]ommunication from redistricting counsel to map-drawer re: legal analysis of voting precincts in relation to legal requirements for voting precinct size"). All of these documents are non-privileged communications that must be produced.

**III.    Defendants' claims that many documents were created in anticipation of litigation are tenuous at best.**

Defendants' belated attempts to meet a threshold requirement of the work product doctrine, that documents must be created "in anticipation of litigation" and not the mere

6

possibility of a legal challenge, *Davis*, 636 F.2d at 1040 (citations omitted), do not withstand scrutiny.

First, the existence of the long-dormant *Petteway v. Galveston County*, 3:13-cv-308 (S.D. Tex. 2013), case does not create anticipation of litigation. That case was a wholly distinct cause of action that arose out of different circumstances and challenged different maps for a different elected body. Specifically, the *Petteway* case Defendants refer to challenged Galveston County's justice of the peace and constable redistricting plan adopted in 2013. Opp. At 18-21, 23. Trial in that case was held in January 2014.

On January 16, 2014, this Court held the plaintiffs had failed to establish a violation of the Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 under the results standard on the 2013 justice of the peace and constable redistricting plan. Bench Trial Tr. Vol. 3, 3:13-cv-308, ECF No. 76 at 88-91 (S.D. Tex.). The case remained pending and between January 2014 and the end of 2021, only two docket entries appeared, a June 2014 notice from the court and an October 2015 advisory notice from the plaintiffs. On August 31, 2022, the Court similarly ruled that the plaintiffs had failed to establish that the County's adoption of that same 2013 plan had been motivated by a discriminatory intent. *See* Ruling on Bench Trial, 3:13-cv-308, ECF No. 78 (S.D. Tex.). Defendants' attempt to use a 2013 case as a hook in 2023 to demonstrate anticipation of litigation for a plan developed and adopted in 2021 for an entirely different elected body is, at best, tenuous. *See* ECF No. 1 in 3:22-cv-00057 (S.D. Tex.) (February 15, 2022 court order opening a new case for a challenge to the 2021 Galveston County Commissioners Court

7

map because "[r]edistricting cases in different rounds of redistricting (let alone for different offices) are regularly filed as new matters").

Second, Mr. Oldham's bald *post hoc* assertion that he anticipated litigation is insufficient for the work product doctrine to apply. The work product doctrine "can apply where litigation is not imminent, 'as long as the *primary motivating purpose* behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States v. El Paso Cnty.*, 682 F.2d 530, 542 (5th Cir. 1982)) (emphasis added); *see also Clover Staffing, LLC v. Johnson Controls World Servs., Inc.*, 238 F.R.D. 576, 579 (S.D. Tex. 2006). Courts across the country have regularly held that "[m]ore than the mere possibility of litigation must be present before material is protected by the doctrine." *Varo, Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 142 (N.D. Tex. 1989) (citations omitted); *see also Hof v. LaPorte*, No. 19-10696, 2020 WL 4541928, at *2-3 (M.D. La. Aug. 6, 2020) (collecting cases).

Here, Mr. Oldham and Mr. Bryan were not aiding in possible future litigation when creating the challenged documents. Rather, they were merely fulfilling Defendants' responsibilities under the Texas Constitution to draft a redistricting plan. Tex. Const. art. V §18 (a)-(b). While Mr. Oldham might have conceived of litigation as a mere possibility based on his experience in 2011, *see* Opp. Ex. 1 ¶4, litigation was not the "primary motivating purpose" behind creation of the documents at issue here, *In re Kaiser*, 214 F.3d at 593. In *United States v. El Paso*, for instance, the Fifth Circuit held that an analysis from a company's in-house counsel was not entitled to work-product

8

protections even when it contained legal analysis because the analysis "[wa]s only a means to a business end" and the company's litigation was "handled by outside counsel." *El Paso Cnty.*, 682 F.2d at 543.  Similarly, here, Mr. Oldham's and Mr. Bryan's work was a means to a legislative end of adopting a new redistricting plan, and Galveston County's redistricting litigation is being handled by attorneys other than Mr. Oldham.

Further undermining their assertions that litigation was anticipated, Defendants offer no evidence that they initiated a litigation hold.  *See, e.g.*, *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011) (citations omitted) ("A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.").

**IV.   The privilege log remains conclusory and deficient.**

As a threshold matter, Defendants attempt to lower the bar on what an adequate privilege assertion requires.  Opp. at 8-9.  And, even though Defendants identify the sender, recipient, subject line, and dates, among other things, on their privilege log, the "description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[] the merits of' the privilege claim."  *BDO USA*, 876 F.3d at 697 (quoting *El Paso Cnty.*, 682 F.2d at 541).  The log contains numerous conclusory assertions of communications "containing legal advice" or made "to assist in the formulation and provision of legal advice."  *See generally* Ann. Priv. Log.  While the privilege log does provide additional information ostensibly tying "legal advice" back to the redistricting process or particular map proposals, this effort still falls short of providing the "sufficient information to permit courts and other parties to test the merits

9

of the privilege claim." *Id*. At this point, this Court has in its possession the Annotated Privilege Log that details the numerous references to conclusory assertions of privilege as well as the challenged documents to make its own determinations as to the inadequacy of Defendants' log.

## CONCLUSION

For the reasons stated here and in the United States' Motion to Compel Production of Documents from Defendants, ECF No. 103, an order compelling production of the challenged documents is warranted.

Date: February 21, 2023

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

KRISTEN CLARKE
Assistant Attorney General
ELISE C. BODDIE
Principal Deputy Assistant Attorney General
Civil Rights Division

DANIEL D. HU
Civil Chief
United States Attorney's Office
Southern District of Texas
Texas Bar No. 10131415
SDTX ID: 7959
1000 Louisiana Ste. 2300
Houston, TX 77002
713-567-9000 (telephone)
713-718-3303 (fax)
daniel.hu@usdoj.gov

 /s/ Catherine Meza
T. CHRISTIAN HERREN, JR.
ROBERT S. BERMAN*
CATHERINE MEZA*
Attorney-In-Charge
BRUCE I. GEAR*
THARUNI A. JAYARAMAN*
ZACHARY J. NEWKIRK*
K'SHAANI SMITH**
MICHAEL E. STEWART**
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202-307-2767 (telephone)
202-307-3961 (fax)
catherine.meza@usdoj.gov

10

Case 3:22-cv-00057   Document 110   Filed on 02/21/23 in TXSD   Page 13 of 14

*\* Admitted Pro Hac Vice*
*\*\* Pro Hac Vice Admission Pending*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of record in this case.

/s/ *Catherine Meza*
CATHERINE MEZA