IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DICKINSON BAY AREA BRANCH NAACP, GALVESTON BRANCH NAACP, MAINLAND BRANCH NAACP, GALVESTON LULAC COUNCIL 151, EDNA COURVILLE, JOE A. COMPIAN, and LEON PHILLIPS, *Plaintiffs*, | § § § § § § § § § | |
| v. | § § | **Civ. Action No. 3:22-cv-117** *Consolidated into* **Civil Action No. 3:22-cv-57** |
| GALVESTON COUNTY, TEXAS, the HON. MARK HENRY, in his official capacity as Galveston County Judge, and DWIGHT D. SULLIVAN, in his official capacity as Galveston County Clerk, *Defendants.* | § § § § § § § § | |

**DEFENDANTS' ANSWER TO THE NAACP AND LULAC PLAINTIFFS'
FIRST AMENDED COMPLAINT**

Defendants Galveston County, Texas, County Judge Mark Henry, in his official capacity as Galveston County Judge, and Dwight D. Sullivan, in his official capacity as Galveston County Clerk (collectively "Defendants") file this Answer to the First Amended Complaint (Dkt. 38 in Civ. Action No. 3:22-cv-117, or "Complaint") filed by Plaintiffs Dickinson Bay Area Branch NAACP, Galveston Branch NAACP, Mainland Branch NAACP ("NAACP Plaintiffs"), Galveston League of United Latin American Citizens ("LULAC Plaintiff") Council 151, Edna Courville, Joe A. Compian, and Leon Phillips (collectively, "Plaintiffs").

## I.      Response to Introduction

(unnumbered first paragraph) Denied.

(unnumbered second paragraph) Defendants deny the allegations in the first sentence. Defendants admit, as stated in *Petteway, et al. v. Galv. Cnty, et al.*, No. 12-40856, 2013 WL 6634558 (5th Cir. Dec. 17, 2013) that:

- Galveston County sought preclearance from the Department of Justice ("DOJ") for its County Commissioners, Justice of the Peace and Constable redistricting plans in October 2011,

- only after the County sought preclearance, Cause No. 3:11-cv-00511 ("2011 Redistricting Case") was filed seeking, in part, an injunction to prevent use of unprecleared maps,

- the County assured the DOJ and the court in the 2011 Redistricting Case that it would not implement any unprecleared maps,

- on November 21, 2011, a temporary restraining order was entered in the 2011 Redistricting Case that a majority of a three-judge panel vacated on December 9, 2011,

- the DOJ did not issue an objection to the submitted plan until March 5, 2012 and, afterward, the County promptly entered into discussions with the DOJ and negotiated a new Commissioner Court plan that was precleared and submitted in the 2011 Redistricting Case,

- despite agreement among the parties about the submitted map, the court in the 2011 Redistricting Case permanently enjoined the County from implementing plans for 2012 elections that were not precleared,

- the Fifth Circuit made clear on appeal that the injunction had no effect on the implementation of the electoral map before or after preclearance, that preclearance had always been an express condition of any election and the County always unequivocally committed itself to that condition, and that the plaintiffs were not prevailing parties because their suit did not materially change any conduct of the County and the plaintiffs did not benefit from the injunction where the County had already voluntarily, on the record, committed to forbear from making any permanent changes without preclearance as was required by law, and

- (as the 2011 Redistrict Case records show), on remand, the district court entered a take-nothing judgment dismissing Plaintiffs' case.

Defendants further admit that Cause No. 3:13-cv-308 ("2013 Redistricting Case") was filed challenging the reduction of Justice of the Peace and Constable precincts, and that on August 31, 2022, the Court ruled that the County's redistricting was not motivated by discriminatory intent, and entered a final judgment dismissing the plaintiffs' claims. Defendants deny the remaining allegations in this paragraph.

(unnumbered third paragraph) Defendants admit that the Galveston County Commissioners precinct map was adopted on or about November 12, 2021 ("2021 Redistricting Plan") at a public meeting. Defendants further admit that the November 12, 2021 meeting was held fourteen days after the Map 1 and Map 2 proposals were released to the public, that public comment was available online at the Galveston County website between October 29, 2021 and November 12, 2021, and that the meeting was properly noticed under Texas law. Defendants admit that the November 12, 2021 meeting was the only public meeting regarding the map proposals due to the time constraints imposed by law, including notice for the meeting and the imposed deadline for adopting a redistricting plan. Defendants admit that Galveston County residents attended and made public comments at the meeting. Defendants admit that Commissioner Stephen Holmes was the only Commissioner who voted against adopting the 2021 Redistricting Plan. Defendants deny the remaining allegations in this paragraph.

(unnumbered fourth paragraph) Denied.

## II.        Response to Jurisdiction and Venue[1]

1.        Defendants deny that the NAACP and LULAC Plaintiffs have standing to bring this action. Defendants otherwise admit the Court has jurisdiction to hear this case and deny that the Plaintiffs' claims have merit.

2.        Admitted.

## III.       Response to Parties

### A.  Plaintiffs

3.        Upon information and belief, Defendants admit the first two sentences. Defendants lack sufficient knowledge to admit or deny the third sentence, and therefore deny same. Defendants deny the fourth sentence.

4.        Defendants lack sufficient knowledge to admit or deny, and so deny same.

5.        Defendants lack sufficient knowledge to admit or deny, and so deny same.

6.        Defendants lack sufficient knowledge to admit or deny, and so deny same.

7.        Defendants lack sufficient knowledge to admit or deny, and so deny same.

8.        Defendants deny that the NAACP Plaintiffs have standing in this case. Defendants lack sufficient knowledge to admit or deny any remaining allegations in this paragraph, and so deny same.

9.        Defendants deny the first, fourth and fifth sentences. Defendants lack sufficient knowledge to admit or deny the allegations in the second and third sentences, and so deny same.

---

[1] The paragraphs here are numbered to correspond with the Complaint paragraphs to which they respond.

10.    Denied.

11.    Upon information and belief, Defendants admit the first sentence of paragraph 11. Defendants lack sufficient knowledge to admit or deny the remaining allegations in this paragraph, and so deny same.

12.    Defendants lack sufficient knowledge to admit or deny the first two sentences, and so deny same. Defendants deny the last sentence of paragraph 12.

13.    Defendants lack sufficient knowledge to admit or deny, and so deny same.

14.    Denied.

15.    Defendants deny the allegations in the first sentence. Defendants lack sufficient knowledge to admit or deny the second sentence in this paragraph, and so deny same. Defendants deny the remaining allegations in this paragraph.

16.    Denied.

17.    Upon information and belief, Defendants admit the first three sentences of this paragraph. Defendants lack sufficient knowledge to admit or deny the third and fourth sentences in this paragraph, and so deny same. Defendants deny the last sentence.

18.    Defendants admit the first sentence of paragraph 18. Upon information and belief, Defendants admit the second through fifth sentences of this paragraph. Defendants lack sufficient knowledge to admit or deny the sixth sentence in this paragraph, and so deny same. Defendants deny the last sentence.

19.    Defendants admit the first sentence of paragraph 19. Defendants lack sufficient knowledge to admit or deny the second, fifth and sixth sentences and so deny same. Upon information and belief, Defendants admit the third and fourth sentences of this

paragraph. Defendants deny the last sentence.

### B. Defendants

20.    Admit.

21.    Admit.

22.    Defendant Dwight D. Sullivan is sued in his official capacity as Galveston County Clerk only. Otherwise, admitted.

## IV.    Response to Factual Background

### A. Response to "Galveston County Commissioners Court"

23.    Admitted. Further admit that Judge Henry appointed Commissioner Robin Armstrong to fill the Commissioner Precinct 4 position left open by the passing of Commissioner Clark, and that Commissioner Armstrong was elected to a full term as Commissioner for Precinct 4 in 2022.

24.    Admit that the Commissioners Court is responsible for adopting County Commissioners, Constables, and Justice of the Peace precincts. Otherwise, denied.

25.    Admit that Commissioner Holmes was the only Black member of the County Commissioners' Court from 1999 until Dr. Robin Armstrong was appointed in 2022 and then elected to a full term.

26.    Admitted.

27.    Admitted.

28.    Admit that County Commissioner Precinct 3 was the only majority non-Anglo precinct before the 2011 and 2021 redistricting cycles. Defendants lack sufficient information to confirm or deny whether this has always been the case; therefore, otherwise

denied.

29.     Defendants lack sufficient knowledge to admit or deny, and so deny same.

30.     Paragraph 30 is a legal argument or assertion that does not require a response. To the extent a response is appropriate here, Defendants admit that 2021 Redistricting Plan abides by the one person, one vote and constitutional requirements, as well as Voting Rights Act requirements.

31.     Paragraph 31 is a legal argument or assertion that does not require a response. To the extent a response is appropriate here, Defendants admit that the 2021 Redistricting Plan was necessary after the 2020 Census data was released.

**B.  Response to "Recent History of Commissioners Court Redistricting"**

32.     Defendants incorporate the contents of the response to Plaintiffs' unnumbered second paragraph of their Introduction here. Defendants admit that there was litigation over the Commissioners, Justice of the Peace, and Constables Precincts adopted (subject to Section 5 preclearance of the Commissioners precincts) in the 2011 redistricting cycle. Otherwise, denied.

33.     Paragraph 33 is a legal argument or assertion that does not require a response.

34.     Defendants admit that Texas and Galveston County were previously subject to Section 5 preclearance.

35.     Defendants incorporate the contents of the response to Plaintiffs' unnumbered second paragraph of their Introduction here. Admit that the DOJ contended the populations of racial minorities in Precincts 1 and 3 were reduced. Otherwise, denied.

36.     Defendants admit that 2011 redistricting reduced the number of Justice of the

Peace and Constable precincts. Otherwise, denied.

37.     Admit that Judge Henry was first elected in 2010, that Commissioner Holmes was first appointed in 1999, and that Commissioner Clark was the sole Republican Galveston County Commissioner for more than 10 years before the 2010 elections.

38.     The March 5, 2012 letter speaks for itself. Defendants incorporate the contents of the response to Plaintiffs' unnumbered second paragraph of their Introduction here. Otherwise, denied.

39.     Defendants incorporate the contents of the response to Plaintiffs' unnumbered second paragraph of their Introduction here.

40.     Paragraph 40 contains legal arguments or assertions that does not require a response. To the extent a response is appropriate here, the number of Justice of the Peace and Constable precincts were reduced and consolidated, that reduction was challenged in the 2013 Redistricting Case, and on August 31, 2022, the Court ruled that the redistricting was not motivated by discriminatory intent and entered a final judgment dismissing the plaintiffs' claims. Otherwise, denied.

## C. Response to "The 2021 Commissioners Court Redistricting"

41.     Admit that the U.S. Census Bureau released 2020 Census redistricting data in a largely unusable format in August of 2021. Otherwise, denied.

42.     The 2020 census data speaks for itself. Otherwise, denied.

43.     The 2020 census data speaks for itself. Otherwise, denied.

44.     Defendants admit that the 2020 census revealed population imbalances under the 2011 Commissioner precincts which required redistricting in 2021. Otherwise, denied.

45.     Defendants lack sufficient information to admit or deny, so deny same.

46.     Defendants lack sufficient information to admit or deny, so deny same.

47.     Admitted.

48.     Defendants deny the first sentence. Defendants lack sufficient information to admit or deny the second sentence, therefore denied.

49.     Denied.

50.     Admit that after the 2020 Census data was released, the County's attorneys communicated with all County Commissioners, including Commissioner Holmes, about redistricting. Otherwise, denied.

51.     The letter from the League of Women Voters and Plaintiffs' counsel speaks for itself. Otherwise, denied.

52.     Admit that the proposed maps were available for viewing and public comment online at the Galveston County website between October 29, 2021 and November 12, 2021 and that the text on the website speaks for itself. Otherwise, denied.

53.     Admit that the map proposals were made available for public viewing online as soon as possible after usable 2020 Census data was released and after all commissioners conferred with redistricting counsel. Otherwise, denied.

54.     Denied.

55.     The Map 1 proposal speaks for itself. Otherwise, denied.

56.     Admit.

57.     Defendants lack sufficient information to admit or deny, so deny same.

58.     Defendants lack sufficient information to admit or deny, so deny same.

59.     Admit that Map 2 did not maintain the same precinct boundaries. It speaks for itself. Otherwise, denied.

60.     Admit that Map 2 did not maintain the same precinct boundaries. It speaks for itself. Otherwise, denied.

61.     Admit that Map 2 did not maintain the same precinct boundaries. It speaks for itself. Otherwise, denied.

62.     Admit.

63.     Defendants lack sufficient information to admit or deny, so deny same.

64.     Defendants lack sufficient information to admit or deny, so deny same.

65.     Denied.

66.     Admit that the time and date of the November 12, 2021 meeting was appropriately and timely noticed under the law, once the date and location was set. Otherwise, denied.

67.     Defendants incorporate paragraph 66 here. Admit that the 2020 Census data was not released in a usable format until September 2021, which caused delays in the preparation and adoption of redistricting plans. Admit that public comment for the map proposals was available online at the Galveston County website between October 29, 2021 and November 12, 2021, and that approximately 440 people provided online comments.

68.     Admit that prior years' public meetings on redistricting have been held at various times of the day, including the evening.

69.     Admit that the November 12, 2021 special meeting was held from 1:30 p.m. until approximately 3:00 p.m., fourteen days after the Map 1 and Map 2 proposals were

released to the public. Admit that, as a special Commissioners Court meeting and not a regularly scheduled Commissioners Court meeting, the November 12, 2021 was noticed for and occurred in a courtroom at 174 Calder Road in League City, located approximately halfway between Houston and Galveston Island.

70.     Admit that the Calder Road courtroom was the usual location for special Commissioners Court meetings,. Admit that the Commissioners heard public comment without microphones and that members of the public could view proceedings in an overflow room. Otherwise, denied.

71.     Defendants lack sufficient information to admit or deny, so deny same. Special meetings are routinely and customarily held at the Calder Road courtroom in League City.

72.     Defendants lack sufficient information to admit or deny the first sentence, so deny same. Admit that the November 12, 2021 meeting was the only public meeting regarding the map proposals due to the time constraints imposed by law, including notice for the meeting and the imposed deadline for adopting a redistricting plan. Admit that the meeting was available via livestream online and that public comment was available prior to the meeting online. Otherwise, denied.

73.     Admit.

74.     Defendants lack sufficient information to admit or deny the number of people in attendance, so deny same. Admit that that the arrangements were made for members of the public to view the meeting in an overflow room. Otherwise, denied.

75.     The recording of the public testimony at the November 12, 2021 meeting

speaks for itself. Admit that many speakers did not comment specifically on either map proposal. Otherwise, denied.

76.     Defendants lack sufficient information to admit or deny the allegations in paragraph 76 regarding attendance, so deny same. Admit that the time and date of the November 12, 2021 meeting was appropriately and timely noticed under the law. Otherwise, denied.

77.     Defendants incorporate paragraph 76 here.

78.     Defendants lack sufficient information to admit or deny, so deny same. Admit there was construction occurring along the north parking entrance and that the south parking entrance was open. Otherwise, denied.

79.     Denied. Admit that the arrangements were made for members of the public to view the meeting in an overflow room.

80.     Admit that the County Judge and Commissioners heard public comment without microphones, that the County Judge and Commissioners did not have microphones, that the meeting was recorded and livestreamed, and that members of the public could view proceedings in an overflow room. Otherwise, denied.

81.     The recording of the public testimony at the November 12, 2021 meeting speaks for itself. Otherwise, denied.

82.     The recording of the meeting speaks for itself. Otherwise, denied.

83.     The recording of the meeting speaks for itself. Otherwise, denied.

84.     Denied. Admit that only Map 1 and Map 2 were published prior to the November 12, 2021 meeting for public comment, and that prior to the November 12, 2021

meeting, Commissioner Holmes did not present any other map to any of the Commissioners for consideration, publication, or otherwise request that any other map be considered. Admit that because of this, no analysis of any such maps was made, and no vote could be held on any previously undisclosed map.

85.     Admit that the Map 2 proposal was adopted at the November 12, 2021 meeting on a 3-1 vote, with Commissioner Holmes voting against the adoption and not moving to adopt map 1 or any other map. The map proposal speaks for itself. Otherwise, denied.

86.     The recording of the meeting speaks for itself. Admit that the meeting was held according to appropriate rules and conduct regarding public comment. Otherwise, admit.

87.     Denied.

88.     Denied.

89.     County Judge Mark Henry, Commissioner Giusti, and Commissioner Armstrong were all elected and/or reelected in 2022, and Commissioners Holmes and Apffel's current terms end in 2024. Otherwise, denied.

### D. Response to "Racially Polarized Voting"[2]

90.     Defendants lack sufficient information to admit or deny, so deny same.

91.     Denied.

92.     Denied.

---

[2] Defendants deny any allegation of racially polarized voting in this case.

93.     Denied.

94.     Denied.

95.     Denied.

### E. Response to "Context of Discrimination"[3]

96.     Denied.

*Response to "Black and Latino residents in Galveston County continue to face barriers to success in electoral politics, including open racism."[4]*

97.     Denied.

98.     On information and belief, admit.

99.     Defendants lack sufficient information to admit or deny, so deny same.

100.    Defendants incorporate the contents of the response to Plaintiffs' unnumbered second paragraph of their Introduction here. The March 5, 2012 letter from the DOJ speaks for itself. Defendants admit that under the Voting Rights Act ("VRA") in 2011, Galveston County was required to obtain judicial or administrative preclearance before implementing a voting change such as a redistricting plan. Otherwise, denied.

101.    Paragraph 101 contains legal arguments or assertions that does not require a response. To the extent a response is appropriate here, Defendants incorporate paragraph 40 here.

102.    Defendants incorporate paragraph 40 here.

---

[3] To the extent a response is required to this subheading, Defendants deny allegations of official discrimination and incorporate their responses to all paragraphs concerning such allegations here.
[4] Defendants deny this allegation.

103.    Admit that the City of Galveston did not change City Council positions to at-large elections. Defendants lack sufficient knowledge to admit or deny who advocated for or against this issue. Otherwise, denied.

104.    The document speaks for itself. Admit that Galveston County implemented countywide polling to improve the voting process and allow voters to vote at any polling location on election day, that the County invited public feedback before implementing such process, had discussions with NAACP and LULAC representatives, provided education to the public about polling locations, that feedback from the public was generally favorable, and that Commissioner Holmes proposed an additional polling location at the Dickinson Community Center which was unanimously passed. Otherwise, denied.

105.    Denied.

106.    Denied.

107.    Paragraph 107 contains legal argument or assessment that does not require a response. Otherwise, denied.

108.    Admit that the County negotiated with the DOJ in 2007 regarding Spanish language assistance for voters. Otherwise, Denied.

109.    Defendants lack sufficient information to admit or deny, so deny same.

110.    Admit that litigation was filed against state and local officials in Cause No. 2:19-cv-00040 which was later transferred to a different court, and that a consent agreement was executed by certain defendants, not Ms. Johnson, before the case was dismissed. Admit the litigation concerned an election advisory sent by the Texas Secretary of State with which Ms. Johnson complied until being instructed not to, and that Ms.

Johnson complied with all such instructions. Otherwise, denied.

111.    Admit that a few isolated incidents involving race have occurred in various jurisdictions around Galveston County over the last 20 years that did not involve Defendants and were not supported in any way by the County Judge or any member of the Commissioners Court; in fact, the isolated incidents were publicly denounced by Galveston County officials. Otherwise, denied.

112.    Admit that La Marque city was in County Commissioner precincts 2 and 3 before the 2021 Redistricting Plan and, under that plan, is in County Commissioner precincts 1, 2 and 3. The cited 2014 article speaks for itself. Otherwise, denied.

113.    Admit that, as reported in late 2019, then-Galveston County GOP chairwoman Yolanda Waters, who is Latina and Black, faced demands for her resignation from several members of her own party in Galveston County, including a request from Judge Henry, when they learned she used a racial slur to describe a former friend and party member, J.T. Edwards, in a text message that referenced personal loans she and her husband had made to Mr. Edwards. Admit that Ms. Waters stated the slur was a typo, that she tried to apologize to Mr. Edwards, and that she apologized in a Facebook post. Admit further that Ms. Waters was not subsequently elected to be the Galveston County GOP Chairwoman. The cited article speaks for itself. Otherwise, denied.

114.    Admit that Ms. Johnson's opponent in the 2020 primary sent an ad that, as Ms. Johnson stated in her deposition, "suggests that noncitizens are heavily tattooed gang members and it makes it appear that every Hispanic male or somebody with tattoos is a noncitizen" and that Ms. Johnson believes "that is despicable and vile and as well as being

a lie." Further admit that Galveston County voters reelected Ms. Johnson. The article speaks for itself. Otherwise, denied.

115.   Defendants lack sufficient information to admit or deny, so deny same.

116.   Defendants lack sufficient information to admit or deny, so deny same.

*Response to "Black and Latino residents of Galveston County face continued socio-economic disparity, and political infrastructure issues, including housing and disaster relief, break down along racial lines."[5]*

117.   The cited 2013 report speaks for itself. Otherwise, denied.

118.   Admit that Galveston Independent School District was under federal court supervision for school desegregation from 1959 to 2009. Otherwise, denied.

119.   Defendants lack sufficient information to admit or deny the first sentence, so deny same. Admit that Hurricane Ike was a devastating storm that sent 110 mile-per-hour winds and 12-to-15-foot storm surges across Galveston Island and the Bolivar Peninsula, impacted virtually all residents of Galveston County, caused hundreds of deaths, destroyed and damaged homes, and caused Galveston Island to close to returning residents for over a week. Otherwise, denied.

120.   Admit that three public housing developments were damaged beyond repair and demolished. Defendants further admit that residents of damaged public housing structures were displaced by Hurricane Ike. Admit further that there was subsequently a debate in the City of Galveston regarding how to rebuild and restore the damaged housing

---

[5] Defendants deny this allegation.

units. Otherwise, denied.

121.    Defendants incorporate paragraph 120 here. Paragraph 121 contains legal analysis or assertion that does not require a response. To the extent a response is appropriate, federal disaster relief money was provided for disaster relief, including for housing assistance and public housing. Otherwise, denied.

122.    Defendants incorporate paragraph 120 here. The quoted statement omits that it was the housing authority's mission to provide decent housing, and the article speaks for itself. Otherwise, denied.

123.    The article cited speaks for itself. Admit that the article includes a quote from the head of the Galveston NAACP that: "The whole thing is they don't want poor people in town." Otherwise, denied.

124.    Defendants incorporate paragraph 120 here. The article cited speaks for itself. Otherwise, denied.

125.    Defendants incorporate paragraph 120 here. The article cited speaks for itself. Otherwise, denied.

126.    Admit that the article cited speaks for itself. Otherwise, denied.

*Response to "Anglo-preferred candidates in Galveston County are less responsive than minority-preferred candidates to the needs and interests of the African American and Latino communities."[6]*

127.    Admit that, as Commissioner Joe Giusti testified in his deposition,

---

[6] Defendants deny this allegation.

Commissioner Holmes' "constituents love him, they do, because he's done a good job for them," and that he is a longstanding and well-respected member of the Galveston County Commissioners Court. Defendants lack sufficient information to admit or deny the last sentence, so deny same.

128.    Defendants lack sufficient information to admit or deny the last sentence, so deny same.

129.    Defendants lack sufficient information to admit or deny the last sentence, so deny same.

130.    Defendants lack sufficient information to admit or deny the last sentence, so deny same.

131.    Defendants lack sufficient information to admit or deny, so deny same.

132.    Defendants lack sufficient information to admit or deny, so deny same.

133.    Denied.

134.    Defendants lack sufficient information to admit or deny, so deny same.

135.    Defendants lack sufficient information to admit or deny, so deny same.

*"Response to Discrimination persists in other issues concerning race, including immigration, policing, and Confederate history, in which Commissioner Holmes also cast dissenting votes against the Anglo members of the Commissioners Court."*[7]

136.    Denied.

137.    The cited disaster declaration and executive order speak for themselves.

---

[7] Defendants deny this allegation.

Admit that these documents were intended to protect the health and safety of Galveston County residents. Otherwise, denied.

138.    Admit that in July 2021 the Commissioners Court voted to uphold the disaster declaration, with Commissioner Holmes voting in opposition. Otherwise, denied.

139.    The cited article speaks for itself. Otherwise, denied.

140.    Denied as written.

141.    Admit that an August 2019 post on a League City Police Department Facebook page asked the public for help in identifying two women caught on camera stealing from a perfume shop, one of whom was holding an infant during the theft. Admit that the post called the women "buffoonish besties" and "sorry excuses for adults," and that the post was deleted within hours after the League City Police Chief called it unacceptable and ordered it removed. Otherwise, denied.

142.    The cited article speaks for itself. Admit that the Commissioners' Court vote took place after the deadly shooting at the Santa Fe High School in Galveston County.

143.    Admit that Galveston is the birthplace of the nationally celebrated and federally recognized Juneteenth holiday. Admit that the Commissioners Court voted not to remove a statute in front of the old Galveston County Courthouse, but the plaque was removed from the statute.

144.    Defendant incorporate paragraph 143 here. Otherwise, admit.

145.    Admit that Commissioner Holmes placed the removal of the statute on the August 24, 2020 meeting agenda, which was a special meeting, and was therefore held at the Calder Road courthouse. Otherwise, denied.

146.    Defendants incorporate paragraph 143 here. The cited article speaks for itself. Otherwise, denied.

**Response to COUNT 1 alleging Intentional Racial Discrimination in Violation of the Fourteenth and Fifteenth Amendments**

147.    Defendants incorporate the above paragraphs.

148.    Denied.

**Response to COUNT 2 alleging Racial Gerrymandering in Violation of the Fourteenth Amendment**

149.    Defendants incorporate the above paragraphs.

150.    Denied.

**Response to COUNT 3 alleging Vote Dilution in Violation of Section 2 of the Voting Rights Act, U.S.C. § 10301 et seq.**

151.    Defendants incorporate the above paragraphs.

152.    This paragraph contains legal assertions or analysis that do not require a response. Defendants deny any alleged violation.

153.    This paragraph contains legal assertions or analysis that do not require a response. Defendants deny any alleged violation.

154.    Denied.

155.    Denied.

156.    Denied.

157.    Denied.

158.    Denied.

159.    Denied.

V.      **Response to Prayer for Relief**

1.      Defendants deny that Plaintiffs are entitled to any relief and oppose the relief prayed for in paragraphs 1 through 7 of the Prayer for Relief in their Complaint.

**<u>DEFENSES</u>**

1.      <u>Nonjusticiable Political Question</u>. The Plaintiffs' claims are barred because they raise nonjusticiable political questions. The consideration of party affiliation in redistricting is not actionable before the Court.

2.      <u>Plaintiffs request an unconstitutional racial gerrymander</u>. The relief sought by the Plaintiffs would result in an unconstitutional racial gerrymander and therefore cannot be granted.

3.      <u>Not a violation</u>.

    a.   The County Commissioners precincts were drawn without consideration of race. Not considering race in a redistricting plan is not a violation of any of the claims herein.

    b.   Any alleged vote dilution is not on account of race or color, and is not a violation of any of the claims herein.

    c.   Defendants did not "crack" or "pack" voters based on race in the County Commissioner redistricting plan.

    d.   Defendants did not intend to discriminate with the adoption of the 2021 Redistricting Plan.

4.      <u>Unconstitutional</u>.

    a.   The County Commissioners Precincts proposed amount to an unconstitutional racial gerrymander.

    b.   The County Commissioners Precincts proposed violate the one-person, one-vote rule.

    c.   The County Commissioners Precincts proposed are inconsistent with

traditional districting criteria.

d.  To the extent Section 2 is held to require the plan to be redrawn with consideration of race, or without respect to traditional districting criteria, Section 2 is unconstitutional.

e.  To the extent Section 2 is held to permit a finding of liability without proof of intentional discrimination, Section 2 is unconstitutional.

f.  To the extent Section 2 is held to require a court to assume that polarized voting is evidence of racial bias, Section 2 is unconstitutional.

g.  To the extent Section 2 is held to require a court to assume that a white voter's support of Republican candidates is evidence of racial bias, Section 2 is unconstitutional.

h.  To the extent Section 2 recognizes the claim(s) asserted herein, or permits the relief sought, it is not proportional and congruent under the United States Constitution.

5.      <u>No private right of action</u>. Section 2 of the VRA does not provide a private right of action.

6.      <u>No 15th Amendment intentional vote dilution claim</u>. There is no cause of action for intentional vote dilution under the Fifteenth Amendment. *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000).

7.      <u>Timing</u>. Complaints about the timing of the redistricting process are attributable to the Census Bureau's considerable delays in delivering districting data as statutorily required, and those delays required the Galveston County Commissioners Court to move quickly to comply with State law to timely adopt plans for the 2022 election.

8.      <u>No *Gingles* Preconditions</u>. The Plaintiffs fail to satisfy the *Thornburg v. Gingles*, 478 U.S. 30 (1986) requirements of cohesion, compactness, and majority bloc voting (i. the minority group is sufficiently large and geographically compact to constitute

23

a majority in a single-member district, ii. the minority group is politically cohesive, and iii. the majority votes sufficiently as a bloc so it can usually defeat the minority group's preferred candidate).

## PRAYER

Defendants pray that the Court dismiss the Plaintiffs' claims in full. Pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), upon prevailing Defendants may recover their reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs. Defendants pray the Court award Defendants their reasonable attorney's fees, expert fees, and costs. Defendants pray for all other relief to which they are entitled.

Respectfully Submitted,

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC

Dallin B. Holt
Attorney in Charge
Texas Bar No. 24099466
S.D. of Texas Bar No. 3536519
Jason B. Torchinsky*
Shawn T. Sheehy*
dholt@holtzmanvogel.com
jtorchinsky@holtzmanvogel.com
ssheehy@holtzmanvogel.com
15405 John Marshall Hwy
Haymarket, VA 2019
P: (540) 341-8808
F: (540) 341-8809


*admitted pro hac vice

GREER, HERZ & ADAMS, L.L.P.

By: /s/ Angie Olalde
   Joseph Russo
   Fed. ID No. 22559
   State Bar No. 24002879
   jrusso@greerherz.com
   Jordan Raschke
   Fed. ID No.3712672
   State Bar No. 24108764
   jraschke@greerherz.com
   1 Moody Plaza, 18th Floor
   Galveston, TX 77550-7947
   (409) 797-3200 (Telephone)
   (866) 422-4406 (Facsimile)
   Angie Olalde
   Fed. ID No. 690133
   State Bar No. 24049015
   2525 S. Shore Blvd. Ste. 203
   League City, Texas 77573
   aolalde@greerherz.com
   (409) 797-3262 (Telephone)
   (866) 422-4406 (Facsimile)

   *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on the 21st day of April, 2023, a true and correct copy of the foregoing was served via email upon all counsel of record.

/s/ Angie Olalde