**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| TERRY PETTEWAY, et al.<br> Plaintiffs,<br><br>v.<br><br>GALVESTON COUNTY, TEXAS, et al.<br> Defendants.<br><br><br>DICKINSON BAY AREA BRANCH NAACP, et al.<br> Plaintiffs,<br>v.<br>GALVESTON COUNTY, TEXAS, et al.<br> Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-CV-00057<br>(consolidated)<br><br><br><br>Civil Action No. 3:22-CV-00117 |

**DEFENDANTS' SUGGESTION OF MOOTNESS**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants Galveston County, Texas, the Hon. Mark Henry as Galveston County Judge, and Dwight D. Sullivan as Galveston County Clerk (collectively, "Defendants" or "County") file this suggestion of mootness to inform the Court of the County's recent adoption of new County Commissioners, Constables, and Justices of the Peace (JP) precinct boundaries. *See* Exhibit A (June 29, 2026 Order establishing new precinct boundaries). The adoption of new precinct boundaries renders Plaintiffs' remaining claims moot.[1]

---

[1] Plaintiffs are Dickinson Bay Area Branch NAACP, Galveston Branch NAACP, Mainland Branch NAACP, Galveston League of United Latin American Citizens Council 151, Edna Courville, and Joe A. Compian, and Plaintiffs Terry Petteway, Constable Derrick Rose, and the Hon. Penny Pope (collectively, "Plaintiffs").

1

## BACKGROUND

Plaintiffs challenged the County's 2021 County Court Commissioner's precinct map (2021 Map), asking the Court to enjoin the County from using the 2021 Map. Their requested declaratory and injunctive relief relates solely to the 2021 Map. *See* ECF 42 at 32-34 (Petteway Plaintiffs' Second Amended Complaint); ECF 38 at 38-39 (NAACP Plaintiffs' First Amended Complaint). The Petteway Plaintiffs asked that the Court retain jurisdiction until the Defendants "have complied with all orders and mandates of this Court" and other relief the Court deems proper. *Id*.

Following the Court's preliminary injunction in October 2023 and the Fifth Circuit's stay orders and September 2024 judgment, elections under the 2021 Map were held in November 2024. The County has now enacted a new plan which replaces the 2021 Map and aligns the County's Commissioner, Constable, and JP precinct boundaries; the change was made by the Galveston County Commissioners' Court because it "determined that the interests of the people of the county are best served by changing the existing Commissioners, Constables, and Justices of the Peace Precinct Boundaries." Exhibit A. The vote was unanimous. *Id*. The changed boundaries are not minor—they constitute a significant change to the Commissioners' Court precincts drawn in the 2021 Map:



2021 Map & Exhibit A, new precinct boundaries.

**ARGUMENT**

## I.     The Plaintiffs' challenges to the 2021 Map are moot.

The Article III case-or-controversy requirement is a fundamental principle of "the judiciary's proper role in our system of government." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quotation omitted). To invoke federal court jurisdiction, plaintiffs "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Cases become moot when the issues they present are no longer live, or when plaintiffs lack a legally cognizable interest in the outcome. *Cnty of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Without a case or controversy, federal courts have nothing to decide, rendering any decision they issue an impermissible advisory opinion. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

This Article III requirement persists throughout a case's life, not only when it is first filed. *Thomas v. Bryant*, 938 F.3d 134, 143-44 (5th Cir. 2019). New legislation that alters a challenged law can moot a case, "because courts can no longer enjoin the enforcement of a repealed law that has no effect." *Id*. Cases become moot when there is no "reasonable expectation" the violation will recur, and interim events "completely and irrevocably eradicated the effects of the alleged violation." *Id*. If at any point a case becomes moot, it must be dismissed. *Lewis*, 494 U.S. at 477-78.[2]

---

[2] Cases may become moot at any time, even on appeal. *See Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc) (new bail legislation enacted while case was on appeal so that plaintiffs' as-applied challenge was based on evidence predating new law, and any attack on procedures in place at the time of trial was no longer a present, live controversy); *see also U.S. Dep't of Justice v. Provenzano*, 469 U.S. 14, 15-16 (1984) (per curiam) (case became moot when Freedom of Information Act was amended); *United*

Here, the challenged 2021 Map has been replaced, there is no remaining controversy over its application, and no declaratory relief or injunction regarding its impact or enforcement can provide any relief. In these circumstances, a ruling on the repealed 2021 Map would be an impermissible advisory opinion. *See McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed"). Plaintiffs lack grounds to litigate a request for declaratory or injunctive relief for enactment of repealed and replaced boundaries. *See Abbott v. Perez*, 585 U.S. 579, 590-91 (2018) (district court allowed plaintiffs to litigate challenges to replaced districting plan, and erred in holding the amended plans were not shown to be cured of the "taint" of the old plans); *see also Holloway v. City of Va. Beach*, 42 F.4th 266, 270 (4th Cir. 2022) (holding case mooted after challenged at-large districts were repealed and reversing district court's holding that old at-large system violated Section 2 and granting injunctive relief to remedy that violation going forward).

Though Plaintiffs will undoubtedly cast aspersions in response to this suggestion of mootness, they cannot overcome the fact that courts "presume that public officials act in good faith and without invidious bias in formulating policy." *Abbott v. Anti-Defamation League*, 610 S.W.3d 911, 923 (Tex. 2020) (citing *Miller v. Johnson*, 515 U.S. 900, 915 (1995)); *see also Abbott*, 585 U.S. at 603 (2018) (discussing presumption of legislative good faith in redistricting matter); *see also*, *Jackson v. Tarrant Cnty.*, 158 F.4th 571, 590

---

*Bldg. & Constr. Trades Council v. Mayor and Council of Camden*, 465 U.S. 208, 213-14 (1984) (repeal of municipal residency requirement "moot[ed] appellant's equal protection challenge" to that requirement); *Diffenderfer v. Cent. Baptist Church*, 404 U.S. 412, 414 (1972) (per curiam) (claim for injunctive relief moot when new legislation enacted because relief sought is based on the "law as it now stands").

(5th Cir. 2025). While private parties may easily switch courses, governmental action is of a different character. Where a new law is enacted or ordinance adopted, courts presume that action was made in good faith, that government officials have "properly discharged their official duties," and unless there is a clear intent to revert to prior law, courts presume there is no such intent. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties").

In *Miller*, the Supreme Court made clear that the "good faith of a state legislature must be presumed" and courts "must be sensitive to the complex interplay of forces that enter a legislature's redistricting calculus." *Miller*, 515 U.S. at 915. This presumption extends to local government officials. *See Jackson*, 158 F.4th at 589-90; *Kimbrough v. Walling*, 371 S.W.2d 691, 692 (Tex. 1963) ("[t]he law presumes that officers of municipal corporations act within the limits of their authority; that they act in good faith; and that they act in the best interests of the municipality they represent"); *Melton v. Wichita Falls*, 799 S.W.2d 778, 780 (Tex. App.—Fort Worth 1990, no writ) ("[t]he law presumes that city officials act within the limits of their authority, in good faith, and in the best interest of the city they serve"). Therefore, "Texas courts afford state statutes a strong presumption of constitutionality under the Texas Constitution." *Miller v. Raytheon Co.*, 716 F.3d 138, 148 (5th Cir. 2013). This is because courts must presume "the Legislature 'understands and correctly appreciates the needs of its own people'" and therefore directs its laws "to problems made manifest by experience, and that its discriminations are based upon

6

adequate grounds." *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996).

No injury can flow from the repealed 2021 Map, and the Court cannot provide Plaintiffs with the relief they have requested with respect to that map. The case is now moot, and the Court lacks subject matter jurisdiction and must dismiss.[3] Because the new plan has been adopted, this Court no longer has jurisdiction to consider declaratory or injunctive relief relating to implementation of the 2021 Map. *See Davis v. Abbott*, 781 F.3d 207, 215 (5th Cir. 2015).

There is no threat that the 2021 map will be reinstated, such as might exist if the County had implemented an interim plan. Nor is there any theoretical possibility of a future reversion to the 2021 Map. Federal courts do not maintain jurisdiction over cases on the off chance of a potential future action. They certainly do not in the face of government conduct. Rather, courts presume that government enactments are not made with the intent to revert to prior laws. *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 930 (7th Cir. 2003). It is only when legislatures make clear that they intend to revert to prior plans in certain circumstances, such as a court win, that a case or controversy remains. *See Hunt v. Cromartie*, 526 U.S. 541, 545 n.1 (1999) ("[b]ecause the State's 1998 law provides that the State will revert to the 1997 districting plan upon a favorable decision of this Court…this case is not moot"). When it is clear that a change in law is temporary or contingent, a concern over evading review might arise. *See City News & Novelty v. City*

---

[3] a request for fees and costs is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)

*of Waukesha*, 531 U.S. 278, 284 n.1 (2001). For example, in *Thomas v. Bryant*, the case was *not* moot where the legislature adopted new district boundaries but explicitly stated that "it will restore the challenged boundaries if it 'prevails'" on appeal. *Thomas*, 938 F.3d at 144. That is not the case here, where the County Commissioners' Court has expressly found that the best interests of the people of Galveston County are served by the new boundaries. *See* Exhibit A. Therefore, under the new map, there is no "capable of repetition, yet evading review" concern. *See Preiser v. Newkirk*, 422 U.S. 395, 403 (1975) (after inmate was transferred to minimum security facility, there was "no reasonable expectation that the wrong will be repeated").

## II.     Standing

Plaintiffs have no standing to challenge the new precinct boundaries.[4]

Article III standing requires the plaintiff to identify a concrete and imminent intrusion upon a legally protected interest, one that is not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Daves v. Dallas County*, the Fifth Circuit held that Texas' new bail-reform legislation mooted the plaintiffs' case, which was brought to challenge old Texas procedures. *Daves v. Dallas Cty.*, 64 F.4th 616, 625 (5th Cir. 2023) (en banc). The Court held that ruling on the new law based on evidence generated from pre-amendment procedures "would constitute no more than an advisory opinion." *Id*. The plaintiffs in *Daves* had not been subject to those new procedures, so that "their ability to pursue th[e] litigation for ongoing injunctive relief as injured parties, much

---

[4] Defendants previously briefed that the Plaintiffs lack standing because they only sought relief for a political coalition. ECF 289 at 7-9.

less class representatives" was called into question. *Id*. The case was moot, because there was no longer a live issue to resolve, "or the parties lack a legally cognizable interest in the outcome." *Id*. (quotation omitted).

Because Plaintiffs' challenge is to a now-replaced 2021 Map, the matter is moot, and should be dismissed.

Respectfully Submitted,

PUBLIC INTEREST LEGAL FOUNDATION

Joseph M. Nixon
Federal Bar No. 1319
Tex. Bar No. 15244800
J. Christian Adams
South Carolina Bar No. 7136
Virginia Bar No. 42543
Jewel Lightfoot
Bar No. 24138965
107 S. West St., Ste. 700
Alexandria, VA 22314
jnixon@publicinterestlegal.org
jadams@publicinterestlegal.org
jlightfoot@publicinterestlegal.org
713-550-7535 (phone)
888-815-5641 (facsimile)

GREER, HERZ & ADAMS, L.L.P.

By: /s/ *Angie Olalde*
    Joseph R. Russo, Jr. (Lead Counsel)
    Fed. ID No. 22559
    State Bar No. 24002879
    jrusso@greerherz.com

    Angie Olalde
    Fed. ID No. 690133
    State Bar No. 24049015
    aolalde@greerherz.com

    123 Rosenberg St., Ste. 3000
    Galveston, TX 77550-7947
    (409) 797-3200 (Telephone)
    (866) 422-4406 (Facsimile)

    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2026, I served the foregoing via email on all counsel of record in this case.

/s/ *Angie Olalde*

9