**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **TERRY PETTEWAY, et al.** | § | |
| Plaintiffs, | § | |
| v. | § | **Civil Action No. 3:22-CV-00057** |
| **GALVESTON COUNTY, TEXAS, et al.** | § | **(consolidated)** |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| **DICKINSON BAY AREA BRANCH** | § | |
| **NAACP, et al.** | § | |
| Plaintiffs, | § | **Civil Action No. 3:22-CV-00117** |
| v. | § | |
| **GALVESTON COUNTY, TEXAS, et al.** | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF
SUGGESTION OF MOOTNESS**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................. iii

SUMMARY ........................................................................................................... 1

REPLY .................................................................................................................. 2

   I.      This case is moot after the County's elected Commissioners properly noticed a special meeting to redistrict and adopted a new precinct map ........... 2

   II.     No exception saves the Plaintiffs' claims .......................................... 3

        A.     Redistricting is not a short-duration exception to mootness ........................ 4

        B.     There is no reasonable expectation of recurrence ........................................ 4

   III.   Plaintiffs invent a test that skews and misapplies the presumption of legislative good faith ................................................................................ 6

        A.     Plaintiffs' rhetoric misses, and misapplies, mandated standards ................ 6

        B.     A presumption of good faith is required for governmental acts, and formally enacted plans will not be presumed to be mere litigation posturing ................................................................................................ 8

   IV.   Plaintiffs' *res ipsa* arguments and citation to historical requirements do not create a justiciable controversy .............................................................. 11

   V.    Plaintiffs' request to amend is improper and unsupported ................................... 13

CONCLUSION AND PRAYER ................................................................................. 15

# INDEX OF AUTHORITIES

Cases

*Abbott v. LULAC*,
   146 S. Ct. 418 (2025) ................................................................................ 7, 13

*Abbott v. Perez*,
   585 U.S. 579 (2018) ................................................................................ 3, 9, 10

*Alexander v. S.C. State Conf. of the NAACP*,
   602 U.S. 1 (2024) .........................................................................................*passim*

*City of Mesquite v. Aladdin's Castle*,
   455 U.S. 283 (1982) ..................................................................................... 4, 5

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ......................................................................... 3

*Davis v. Abbott*,
   781 F.3d 207 (5th Cir. 2015) ....................................................................... 10

*FBI v. Fikre*,
   601 U.S. 234 (2024) ..................................................................................... 5, 6

*Holloway v. City of Va. Beach*,
   42 F.4th 266 (4th Cir. 2022) ......................................................................... 3

*Hunt v. Cromartie*,
   526 U.S. 541 (1999) ....................................................................................... 4

*Hunter v. Underwood*,
   471 U.S. 222 (1985) ................................................................................ 14, 15

*Jackson v. Tarrant Cnty.*,
   158 F.4th 571 (5th Cir. 2025) ..........................................................*passim*

*Louisiana v. Callais*,
   146 S. Ct. 1131 (2026) ......................................................................*passim*

*LULAC v. Abbott*,
   601 F. Supp. 3d 147 (W.D. Tex. 2022) ........................................................ 14

*LULAC v. Perry*,
   548 U.S. 399 (2006) ..................................................................................... 12

*Miller v. Johnson*,
   515 U. S. 900 (1995) ....................................................................................... 9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
   508 U.S. 656 (1993) ................................................................................ 5

*Perez v. Texas,*
   970 F. Supp. 2d 593 (W.D. Tex. 2013) .................................................. 12

*Petteway v. Galveston Cnty.,*
   111 F.4th 596 (5th Cir. 2024) ...................................................... 3, 11, 15

*Petteway v. Henry,*
   738 F.3d 132 (5th Cir. 2013) .................................................................. 14

*Rhone v. City of Tex. City,*
   93 F.4th 762 (5th Cir. 2024) .................................................................... 3

*Shelby Cnty. v. Holder,*
   570 U.S. 529 (2013) ................................................................................ 11

*Sossamon v. Texas,*
   560 F.3d 316 (5th Cir. 2009)..................................................................... 9

*Speech First, Inc.,*
   979 F.3d 319 ...............................................................................*passim*

*Students for Fair Admis., Inc. v. Univ. of Tex. at Austin,*
   142 F.4th 819 (5th Cir. 2025) .................................................................. 8

*Thomas v. Bryant,*
   938 F.3d 134 (5th Cir. 2019) ................................................................ 3, 4

*Vill. of Arlington Heights v. Metro. Hou. Dev. Corp.,*
   429 U.S. 252 (1977) ................................................................................ 14

<u>Statutes</u>

52 U.S.C. §10302 ..................................................................................... 13

Defendants[1] file this Reply in further support of their Suggestion of Mootness (Dkt. 310), to address Plaintiffs'[2] arguments in response (*see* Dkts. 317 & 318).[3]

## SUMMARY

This case is moot. Plaintiffs challenged Defendants' 2021 County Commissioner's precinct map (2021 Map), requesting declaratory and injunctive relief requiring Defendants to create a majority coalition precinct. *See* Dkt. 42 at 32-34; Dkt. 38 at 38-39. The 2021 Map no longer exists, and the relief Plaintiffs seek is unavailable.

In their responses, Plaintiffs ignore the County's 2026 partisan redistricting (*see* **Exhibit 1**), misstate the applicable test for mootness, and invert the presumption of legislative good faith by baselessly characterizing the County's alignment of its Constable, Commissioner, and Justice of the Peace precincts as a "ploy." Dkt. 318 at 2-3.

Plaintiffs' assertions contradict binding precedent. They cite cases pointing to historical, rather than recent events, to claim racial intent. But the Supreme Court has plainly instructed that distant history is not indicative of current intent. Plaintiffs conclude that the County must draw a majority-minority coalition district, or adopt a map drawn by Plaintiffs to create such a district, contrary to *Callais*. *See Louisiana v. Callais*, 146 S. Ct. 1131, 1143 (2026). They disregard the discretion guaranteed to legislative bodies to choose

---

[1] Defendants are Galveston County, Texas, Galveston County Judge Mark Henry in his official capacity, and Galveston County Clerk Dwight D. Sullivan in his official capacity.

[2] Plaintiffs are Dickinson Bay Area Branch NAACP, Galveston Branch NAACP, Mainland Branch NAACP, Galveston League of United Latin American Citizens Council 151, Edna Courville, and Joe A. Compian (NAACP Plaintiffs), and Terry Petteway, Constable Derrick Rose, and the Hon. Penny Pope (Petteway Plaintiffs) (collectively, Plaintiffs).

[3] The arguments in the NAACP Plaintiffs' and Petteway Plaintiffs' responses overlap, and they seek the same relief. Defendants file a consolidated reply to both responses (Dkts. 317 & 318).

1

when to redistrict, and what nonracial districting criteria to use. *See Jackson v. Tarrant Cnty.*, 158 F.4th 571, 577 (5th Cir. 2025). Following the enactment of the new map, there is no live controversy. The Court must dismiss.

## REPLY

I.    **This case is moot after the County's elected Commissioners properly noticed a special meeting to redistrict and adopted a new precinct map.**

Plaintiffs challenged the 2021 Map. Five years later, Galveston County proposed a new County Commissioner's precinct map (2026 Map) which was drawn to, among other things, "[i]mprov[e] partisan performance in favor of Republican candidates." **Exhibit 1**.[4] The resulting map aligns Commissioner, Constable, and Justice of the Peace precinct boundaries. The Galveston County Commissioners Court posted the proposed map on the County webpage and scheduled a special meeting to consider these new boundaries. Dkt. 317 at Exhibit I (Agenda for June 2026 Commissioners Court Meeting). An open and public meeting was held. It was well attended, with over two hours of public testimony, and several emailed comments submitted beforehand. Following public comment, the County's elected Commissioners, including Commissioners Robin Armstrong and Hank Dugie who were not part of the Court in 2021, unanimously voted to pass the 2026 Map.

The NAACP Plaintiffs contend there must be some "fanfare" apart from the required public procedures, such as posting notice. *See* Dkt. 317 at 3. There is no such requirement, just as there is no requirement to post a map with demographic data, or adopt certain redistricting criteria. Certainly, there is no requirement to announce that the 2026 Map is

---

[4] Plaintiffs' bald statement that it was "plainly illegal" to redistrict after the primary lacks any explanation, argument, or support, and should be disregarded by the Court.

"meant to *remedy* any alleged discriminatory effects" as the NAACP Plaintiffs propose. *Id*.

Such an announcement would be tantamount to declaring that race *was* considered in

drawing the map. That is not only untrue, it would be an unconstitutional racial

gerrymander, since a majority-minority precinct is not required under the Voting Rights

Act (VRA). *See Callais*, 146 S. Ct. at 1143; *Petteway v. Galveston Cnty.*, 111 F.4th 596,

613-14 (5th Cir. 2024).[5]

Once a challenged district is repealed and replaced, the case becomes moot. *Thomas v. Bryant*, 938 F.3d 134, 143-44 (5th Cir. 2019) (courts cannot "enjoin the enforcement of a repealed law that has no effect"). Here, declaratory or injunctive relief cannot issue concerning the repealed and replaced 2021 Map. *See Holloway v. City of Va. Beach*, 42 F.4th 266, 270 (4th Cir. 2022); *see also Abbott v. Perez*, 585 U.S. 579, 590-91 (2018).

## II.    No exception saves the Plaintiffs' claims.

Plaintiffs argue their case is not moot, citing "the class of controversies capable of repetition, yet evading review." Dkt. 317 at 12 (citing *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)); Dkt. 318 at 10.

But that rule "applies only in exceptional situations." *Rhone v. City of Tex. City*, 93 F.4th 762, 766 (5th Cir. 2024). It applies when (1) the challenged act is too short in duration to be fully litigated before it ceases, and (2) there is a reasonable expectation the plaintiff will be subjected to the same action again. *Id.* ("demolition of the apartment buildings does

---

[5] The NAACP Plaintiffs also claim—recklessly and falsely—that the Commissioners "apparently [came] to an agreement" before meeting. Dkt. 317 at 9. They mention a lack of public debate, and disregard not only the open meeting, but also hours of public commentary received before the vote.

not eliminate a takings claims; indeed, it may create one"). Neither apply here.

## A. Redistricting is not a short-duration exception to mootness.

Five years have passed since the 2021 redistricting. There are new elected officials on the Commissioners Court. Certainly, redistricting itself is not an event too short in duration to permit litigation, or else no redistricting case would ever be moot.

Oddly, Plaintiffs claim they "have not had sufficient time to fully litigate their case" before the 2026 Map was enacted. Dkt. 318 at 10; Dkt. 317 at 12. That argument is unsustainable—it has been five years. The parties had a multi-day evidentiary hearing on Plaintiffs' motion for injunctive relief. They underwent intensive fully developed written, deposition and expert discovery. The Court issued findings and rulings based on then-existing law, and the parties cycled through an appeal. Not only have they had ample time to fully litigate, no challenge to the 2026 Map is justiciable now, as it was adopted to advance partisan performance in favor of Republican candidates. **Exhibit 1**.

## B. There is no reasonable expectation of recurrence.

The 2026 Map was passed to politically align partisan offices. The County has no reason to revert to a prior map because the 2026 Map achieved the County's partisan goals.

In cases involving a governmental body, courts have cited *evidence* to show a reasonable chance of recurrence. *See Hunt v. Cromartie*, 526 U.S. 541, 545 n.1 (1999); *Thomas*, 938 F.3d at 143-44. In *City of Mesquite v. Aladdin's Castle, Inc.*, the Supreme Court acknowledged that, when a city revised its ordinance to remove vague language, "[a]rguably, if the [district] court had been fully advised, it would have regarded the vagueness issue as moot." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 288 (1982).

4

But in that case, there was evidence that the city had previously taken inconsistent acts by changing the challenged age restriction and eliminating an exemption in response to a state court judgment, so the case was not moot. *Id*.; *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (case not moot where the "gravamen of petitioner's complaint" was that the ordinance disadvantaged plaintiff's members in obtaining city contracts and the revised ordinance still gives "preferential treatment to black- and female-owned contractors").

Here, Plaintiffs cite no evidence of expected recurrence. Instead, they cast baseless aspersions and compare government actions that require public notice, hearing, and a majority vote of elected officials to cases involving changed policies or listings.

For example, Plaintiffs rely on *FBI v. Fikre*, claiming it imposes a "formidable burden" to show mootness due to voluntary cessation. *FBI v. Fikre*, 601 U.S. 234, 241 (2024). In *Fikre*, the FBI put the plaintiff on the no-fly list, and offered to remove him if he informed on members of his mosque in Portland. *Id*. at 238. He refused, was allowed to travel abroad, but was detained, allegedly tortured and interrogated at the FBI's request, and was not allowed to return to the United States for years. *Id*. Fikre sued, asking to enjoin the government from keeping him on the no-fly list, and the FBI removed him from the list, leading the district court to dismiss the case as moot. *Id*. On appeal, the Supreme Court reiterated that a defendant's "voluntary cessation of a challenged practice'" will moot a case only if the defendant can show that the practice cannot "reasonably be expected to recur" *Id*. at 241 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The Court warned that defendants (there, a

5

governmental agency), cannot manipulate jurisdiction by stopping challenged conduct only to restart it later. *Id*. Instead, it must show no reasonable expectation that it will "return to [its] old ways." *Id*. This "holds" for both government and private parties. *Id*. In *Fikre*, the government stated it would not relist the plaintiff based on "currently available information," but that was not enough to moot the case, because the government could relist him for doing "the same or similar things in the future," like "attend[ing] a particular mosque or refus[ing] renewed overtures to serve as an informant." *Id*. at 242 ("[p]ut simply, the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past").

This case is very different. Removing and reinstating someone on the no-fly list based on a person's past and potential future acts is not the same as an elected body enacting a redistricting plan after public notice and hearing. Nor did the County repeal a court-required map. The repealed and replaced map was the one the Commissioners adopted in 2021.[6]

### III.   Plaintiffs invent a test that skews and misapplies the presumption of legislative good faith.

#### A.  Plaintiffs' rhetoric misses, and misapplies, mandated standards.

Plaintiffs cannot support their claim that "Defendants have already demonstrated with the 2026 redistricting a 'repetition' of much of their 2021 discriminatory process." Dkt. 317 at 13; *see also* Dkt. 317 at 9 (asserting that "in 2026, the Commissioners Court

---

[6] The NAACP Plaintiffs appear to argue that the 2026 Map may not have replaced the 2021 Map. *See* Dkt. 317 at 15. Not only is that argument nonsensical, it is completely baseless.

6

repeated the egregious procedures from its 2021 redistricting"). Plaintiffs did not elaborate on what part of: (1) proposing a new map; (2) placing the map on the County website along with an agenda for the special meeting in which the map would be discussed; (3) holding the special meeting; and (4) publicly and unanimously passing the proposed map constitutes race-based discrimination.

Plaintiffs, however, do take exception to the County's recitation in the order adopting the 2026 Map that the County's governing body "has determined that the interests of the people of the county are best served by changing" existing precinct boundaries. *See* Dkt. 310-1. In Plaintiffs' view, a democratically elected body determining what best serves its constituents' interests is no longer Democratic, it is Orwellian. *See* Dkt. 318 at 7. But since our government operates through the acts of elected officials who, as a body, determine legislative policy, courts must presume the good faith of such legislative acts.

As in *Abbott v. LULAC*, Plaintiffs have "failed to honor the presumption of legislative good faith by construing ambiguous direct and circumstantial evidence against the legislature." *Abbott v. LULAC*, 146 S. Ct. 418, 419 (2025). They ask this Court to follow along. The mere fact that the Commissioner's Court adopted a new map with different boundaries for Precinct 3 does not establish that race drove the redistricting process.

Instead, federal courts must presume that state legislatures act in good faith when undertaking redistricting. *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 19-20 (2024) (holding "[n]one of the facts" relied on by the district court "to infer a racial motive" were "sufficient to support an inference that can overcome the presumption of legislative good faith"). Plaintiffs ignore this requirement, citing *Speech First*, a First Amendment

7

case involving a university's policy against rude, harassing or uncivil statements. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020). The university withdrew the policy, and the Fifth Circuit held that voluntary cessation did not moot the case because it was not "*absolutely* clear" the challenged provision "could not be reasonably expected to recur," especially where the university left the same broad definition of harassment in its revised policy. *Id.*

The Fifth Circuit noted that the case before it was not the first time "a public university has had a sudden change of heart, during litigation, about the overbreadth and vagueness of its speech code." *Id.* The Sixth Circuit had previously found, in its own *Speech First* case, that the matter was not moot because (1) the University of Michigan did not have a controlling statement of future intention, (2) the timing of the changed policy immediately followed litigation, and (3) the university continued to defend against the challenged policy. *Id.* (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767-70 (6th Cir. 2019)).[7] Plaintiffs superimpose these three factors here without any explanation or analysis of their applicability, claiming the Fifth Circuit now 'requires' these elements to establish voluntary cessation. Dkt. 318 at 3. That is not what the Fifth Circuit said.

### B. A presumption of good faith is required for governmental acts, and formally enacted plans will not be presumed to be mere litigation posturing.

The Fifth Circuit has held that "voluntary cessation of a challenged practice" will

---

[7] Of course, *Speech First* does not hold that a case against a university cannot become moot after voluntarily cessation. *See Students for Fair Admis., Inc. v. Univ. of Tex. at Austin*, 142 F.4th 819, 825 (5th Cir. 2025) (UT rescinded its admissions policy that considered race and adopted a race-neutral policy, and it could not reasonably be expected to revive the old policy, making the plaintiff's claim moot).

not destroy jurisdiction unless "it is absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Speech First, Inc.*, 979 F.3d at 328 (cleaned up). Of course, what is 'absolutely clear' will depend on the case, including the parties. Plaintiffs' imposition of the *Speech First* analysis as a new and mandated test forgets this. It also forgets the Fifth Circuit's clear recognition that it has treated "voluntary governmental cessation of possibly wrongful conduct" with "some solicitude." *Id.* (quoting *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd* 563 U.S. 277 (2011)).[8] The Fifth Circuit noted that it had not applied a "relaxed standard" to a *public university's* voluntary cessation—citing *Sossaman* and therefore underscoring the difference between how courts may treat a governmental body such as the State or a County, as opposed to a university. *Sossaman* noted the "heavy burden" under *Laidlaw*, explaining that,

> …courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity—a practice that is reconcilable with *Laidlaw*.

*Sossaman*, 560 F.3d at 325 (citing *Laidlaw*, 528 U.S. at 189). While *Laidlaw* discusses a "heavy burden" to show the challenged conduct will not recur,

> government actors in their sovereign capacity and in the exercise of their official duties are **accorded a presumption of good faith because they are public servants, not self-interested private parties**. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.

*Id.* (emphasis added); *see also Abbott v. Perez*, 585 U.S. 579, 603-04 (2018); *Miller v.*

---

[8] This is where the NAACP and Petteway Plaintiffs appear to diverge. The Petteway Plaintiffs claim governmental and private defendants share the exact same burden. The NAACP Plaintiffs, however, acknowledge *Sossamon*'s "lighter burden" for government defendants under a presumption of good faith. Dkt. 317 at 7 n.4.

*Johnson*, 515 U. S. 900, 915-16 (1995) (courts must "be sensitive to the complex interplay of forces that enter a legislature's redistricting calculus" and the "good faith" of the Legislature "must be presumed"). This presumption is so strong, it is not altered even if there is a "finding of past discrimination," because "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Perez*, 585 U.S. at 604 ("we have never suggested that past discrimination flips the evidentiary burden on its head") (cleaned up).

The peculiar result of Plaintiffs' application of the *Speech First* factors and their disregard for the good-faith presumption, is Plaintiffs' apparent contention that a legislative body must pass some unenforceable statement of future intent *in addition to the enacted map* to satisfy Fifth Circuit tests for mootness. *See* Dkt. 318 at 7. The 2026 Map, however, was enacted. It is the formal and current governing document establishing the County's precinct boundaries. The Commissioners Court need not pass a separate resolution on future conduct to make it any more of an enforceable, valid, or current law. Regardless, the Commissioners did pass a resolution before hearing and voting on the 2026 Map, stating their intentions: to comply with current law, and improve partisan performance in favor of Republican candidates. **Exhibit 1**. And while Plaintiffs distinguish *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015) as a case where the parties agreed to mootness (Dkt. 318 at 6 n.2; Dkt. 317 at 10 n.6), that agreement occurred after the State adopted the *court's* plan. Here, the **exact same action** was taken when the 2026 Map was passed—the lawful adoption of a districting plan. Here, Plaintiffs improperly fault the County only for its lawful actions— noticing a proposed redistricting plan, holding a public hearing, and its Commissioners'

10

vote to adopt that plan. This case is moot.

### IV.   Plaintiffs' *res ipsa* arguments and citation to historical requirements do not create a justiciable controversy.

Plaintiffs seek to return to a long-past jurisprudential era that the Supreme Court and Fifth Circuit have explicitly ended. It is no longer true that any retrogression of a minority officeholder must undergo preclearance review. *See Shelby Cnty. v. Holder*, 570 U.S. 529, 529 (2013). Nor may governments use race to draw legislative districts that the VRA does not require. *Callais*, 146 S. Ct. at 1161-62. And where Plaintiffs seek to protect an admittedly racially drawn coalition precinct, they face a further obstacle: the Fifth Circuit ruled that precinct is a political coalition not protected under Section 2 of the VRA and the Fifteenth Amendment, which the VRA was written to enforce. *See Petteway*, 111 F.4th at 612.

Plaintiffs essentially propose a *res ipsa* racial intent theory, where "dismantling of the sole majority-minority [coalition] district" is sufficient evidence to presume racial intent. Dkt. 308 at 1; *see also* Dkt. 317 at 7 (claiming that the 2026 precincts are continuations of the 2021 precincts). According to Plaintiffs, Precinct 3's boundaries could never be redistricted in a way that reduces its majority-minority status—which would effectively reinstitute the same retrogression banned under *Shelby County*. Plaintiffs cannot divorce their claims from the fact that Precinct 3 was, for decades, the product of then-permitted racial gerrymandering under the VRA—and that such gerrymandering is no longer constitutional. Nor can they escape the fact that the coalition within Precinct 3 was fastened by political, not racial, ties. *See Petteway*, 111 F.4th at 609. Boiled down,

11

Plaintiffs' allege any change to Precinct 3 that reduces a coalition majority is unconstitutional. This is the equivalent of requesting a race-based electoral outcome, asserting that "minority candidates representing Precinct 3 will likely face more difficulty getting elected in the newly drawn Precinct 3 with its significantly reduced minority population." *See* Dkt. 317 at 4 (citing Dkt. 250 ¶ 138). Plaintiffs' claim is foreclosed under *Callais*. The County is not required to adopt a map drawn by Plaintiffs, and is unable to consider race to create a (coalition) minority-majority district in any event. What it can do, is consider politics: a departure from previous procedures can be explained by partisan motive, as a legislature engaging in partisan redistricting would want to avoid an extensive, public process. *See* **Exhibit 1**. Plaintiffs may believe this is inconsistent with the best practices of good government, but it is no indication of racial motives. *See Jackson*, 158 F.4th at 586. The Supreme Court has already found mid-decade redistricting for partisan purposes is not unconstitutional. *LULAC v. Perry*, 548 U.S. 399, 420 (2006).

Despite all of this, Plaintiffs point to historic acts and requirements that trace back to preclearance, contending that any deviation from those prior requirements is evidence of intentional racial discrimination. They cite *Perez v. Texas*, 970 F. Supp. 2d 593, 596-97 (W.D. Tex. 2013), a districting case arising out of a failed administrative preclearance process. Dkt. 318 at 5. Not only did that case involve a Section 2 claim, preclearance presupposed continued federal monitoring under a statutory scheme. That is not the current landscape of this case. Requirements imposed under preclearance, such as the adoption of particular districting criteria, are now recognized to fall squarely within the discretion of governmental bodies. *See Jackson*, 158 F.4th at 577 (local governments "enjoy

12

'considerable discretion in establishing rules for their own elections," and that this "discretion reaches its height in the redistricting process"). The choice to deviate from previously imposed requirements under the VRA is not evidence of ill intent—especially when Section 2 does not apply, and the claimed "violations" are not violations, such as choosing how and when to redistrict. If it were, legislative bodies would *lack* discretion to choose which redistricting criteria, timing, or methods to use, and would be stuck forever doing exactly what was required of them under preclearance.

That is not the law. It is impossible to reconcile Plaintiffs' demand that the same preclearance-required districting criteria and precinct boundaries remain with the mandates of *Jackson*, *Callais*, *Alexander*, and *Abbott v. LULAC. See Callais*, 146 S. Ct. at 1143; *Alexander,* 602 U.S. at 39; *Jackson*, 158 F.4th at 577; *Abbott*, 146 S. Ct. at 419.

## V.    Plaintiffs' request to amend is improper and unsupported.

Plaintiffs ask to amend to challenge the 2026 Map and seek Section 3(c) bail-in relief. *See* Dkt. 318 at 8; 52 U.S.C. §10302(c).[9] Nothing supports this request.

While Plaintiffs appear to contend that this Court already found intent, it has not. Dkt. 250 at ¶ 427. The Court's findings show no intentional racial discrimination:

- Dkt. 250 ¶¶ 218-219: "The court finds that the commissioners never expressly considered" racial data from mapmaker Bryan.

- Dkt. 250 ¶ 228: "Commissioner Apffel testified that he never witnessed anyone instruct Oldham to use or consider racial data when designing potential maps. Dkt. 232, at 310. Apfell also did not recall seeing, reviewing, evaluating, or using racial demographics when considering maps. *Id*. ¶ 311.[10]Dkt. 250 ¶ 144

---

[9] The Court previously held that none of the Plaintiffs pled for relief under Section 3(c). Dkt. 250 ¶ 429.

[10] Oddly, Plaintiffs generated their own race-based data for their response, violating *Callais*. Dkt. 317 at 4.

- • : Plaintiffs admit it is impossible to disentangle race and politics in Galveston County.

- • Dkt. 250 ¶¶ 280(6), 289. The County maintains that partisanship was a factor in redistricting.

- • Dkt. 250 ¶ 227: "Based on Oldham's assessment, Judge Henry believed that Maps 1 and 2 were both legally compliant."

Plaintiffs' continued reference to history is not only improper as discussed above, it belies the fact that they cannot show discriminatory intent. Even their reference to *LULAC v. Abbott*'s mention of the "most recent redistricting cycle" falls flat, where here, there is no intentional racial discrimination in the most recent redistricting cycle—not in 2021, not in 2011, and not for decades before that time. *See* Dkt. 318 at 9 (quoting *LULAC v. Abbott*, 601 F. Supp. 3d 147, 170 (W.D. Tex. 2022)); *see also Petteway v. Henry*, 738 F.3d 132, 134 (5th Cir. 2013) (holding plaintiffs were not prevailing parties in prior redistricting suit). Plaintiffs cannot argue this case into a live controversy by pointing to *no* recent findings of intentional racial discrimination.

Nor is the effect or impact of redistricting evidence of intent. In Galveston County, white voters "overwhelmingly participate in Republican primaries" while Black and Latino voters "overwhelmingly participate in Democratic primaries." Dkt 250 at ¶ 399. Partisan redistricting will likely result in some racial impact. Courts have never been able to hold legislative actions unconstitutional solely because they result in a racially disproportionate impact. *Vill. of Arlington Heights v. Metro. Hou. Dev. Corp.*, 429 U.S. 252, 264-65 (1977); *see also Hunter v. Underwood*, 471 U.S. 222, 227-28 & 232 (1985) (racially disproportionate impact alone will not establish an Equal Protection challenge); *Jackson*,

14

158 F. 4th at 586; *see also Alexander*, 602 U.S. at 39; *Petteway*, 111 F.4th at 614 n.13 (requiring Plaintiffs follow the *Hunter* analysis).

Where neither Black nor Hispanic populations alone can form a majority-minority district in the County (Dkt. 250 ¶ 74), and the Fifth Circuit held the coalition is cemented by political, not racial, ties, any "dismantling" of Precinct 3 indicates a political, not racial, motive. That motive is further evidenced by the express resolution stating that the County wanted to improve "partisan performance" for "Republican candidates." **Exhibit 1**.

Here, the Fifth Circuit has rejected—

authorizing litigation, not compelled by law or the Supreme Court, whose principal effects are to (a) supplant legislative redistricting by elected representatives with judicial fiat; (b) encourage divisively counting citizens by race and ethnicity; and (c) displace the fundamental principle of democratic rule by the majority with balkanized interests.

*Petteway*, 111 F.4th at 612. That is precisely what Plaintiffs request when they seek to amend. But they cannot amend to cure what is already moot. The Court should dismiss.

**CONCLUSION AND PRAYER**

The 2021 Map has been replaced by the 2026 Map which was drawn with partisan intent, rendering this case both moot and nonjusticiable. Plaintiffs cannot overcome the presumption of good faith to maintain an effects-only claim to protect a coalition district, especially when they admit their inability to distinguish between race and politics in Galveston County. This Court should dismiss all remaining claims as moot.

15

Respectfully Submitted,

PUBLIC INTEREST LEGAL
FOUNDATION

Joseph M. Nixon
Federal Bar No. 1319
Tex. Bar No. 15244800
J. Christian Adams
South Carolina Bar No. 7136
Virginia Bar No. 42543
Jewel Lightfoot
Bar No. 24138965
107 S. West St., Ste. 700
Alexandria, VA 22314
jnixon@publicinterestlegal.org
jadams@publicinterestlegal.org
jlightfoot@publicinterestlegal.org
713-550-7535 (phone)
888-815-5641 (facsimile)

GREER, HERZ & ADAMS, L.L.P.

By: /s/ *Angie Olalde*
    Joseph R. Russo, Jr. (Lead Counsel)
    Fed. ID No. 22559
    State Bar No. 24002879
    jrusso@greerherz.com

    Angie Olalde
    Fed. ID No. 690133
    State Bar No. 24049015
    aolalde@greerherz.com

    123 Rosenberg St., Ste. 3000
    Galveston, TX 77550-7947
    (409) 797-3200 (Telephone)
    (866) 422-4406 (Facsimile)

    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I served the foregoing via email on all counsel of record in this case.

/s/ *Angie Olalde*

16