UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 3:22-CV-57 |
| | § | |
| GALVESTON COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING SUGGESTION OF MOOTNESS

Before the court is the defendants' suggestion of mootness. Dkt. 310.

For the following reasons, the court finds the plaintiffs' remaining claims are

not moot.[1]

### 1. The Legal Standard

"Article III's case or controversy requirement permits federal courts to

adjudicate only live disputes—a party must retain a legally cognizable

interest in the outcome of an issue, or its resolution is moot." *Hinkley v.

Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020) (quoting *Campanioni v.

Barr*, 962 F.2d 461, 464 (5th Cir. 1992)) (citation modified). There must be

---

[1] The defendants re-assert lack of standing because the plaintiffs sought relief only for a political coalition. *See* Dkts. 310 at 8 n.4; 289 at 7–9. The Petteway plaintiffs respond, "[u]nless Galveston has redistricted Plaintiffs out of the county entirely, they are subject to its redistricting map and have standing to raise their legal claims against it." Dkt. 318 at 11 n.3. The court finds the plaintiffs have standing to proceed with their claims.

an "actual controversy" throughout "all stages of a case," and "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Robinson v. Ardoin*, 731 F.Supp.3d 711, 718–19 (M.D. La. 2024) (quoting *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) and *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021)) (citation modified).

There are two general exceptions to mootness: *voluntary cessation* and *capable of repetition yet evading review*. This order focuses on the former. "A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Robinson*, 731 F.Supp.3d at 719 (quoting *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023)) (quotation modified). "In general, a defendant's voluntary conduct moots a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Freedom From Religion Found., Inc.*, 58 F.4th at 833) (quotation modified).

"[G]overnment entities bear a lighter burden" than the absolutely-clear standard "in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Id.* (quoting *Freedom From Religion Found., Inc.*, 58 F.4th at 833) (quotation modified). The Fifth Circuit has at times applied a

more "relaxed standard" to "voluntary governmental cessation of possibly wrongful conduct" and treated it with "some solicitude." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (quoting *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651, 179 L.Ed.2d 700 (2011)) (choosing "not [to] adopt the relaxed standard, but assum[ing] its applicability *arguendo* for the purposes of this case" regarding voluntary cessation by a public university).

This is because the court applies a presumption of good faith to state actors. *See Robinson*, 731 F.Supp.3d at 719. "[U]nless there is evidence to the contrary, the [c]ourt assumes that formally announced changes to official government policy are not mere litigation posturing." *Id.* (quoting *Freedom From Religion Found., Inc.*, 58 F.4th at 833) (quotation modified). Additionally, "the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *Id.* (quoting *Freedom From Religion Found., Inc.*, 58 F.4th at 833) (quotation modified).

Here, the parties dispute the appropriate standard. The defendants emphasize the court's obligation to apply a presumption of good faith and, thereby, hold the defendants to a lesser standard. Dkt. 310 at 4–5. In

3/8

contrast, the plaintiffs argue that a "governmental defendant may be accorded 'some solicitude' but still must satisfy the 'absolutely clear' standard." Dkt. 318 at 2 (quoting *Speech First*, 979 F.3d at 328). The plaintiffs further note that the Supreme Court recently reinforced that even government defendants must meet the high burden under the voluntary-cessation exception. *Id.* at 2 n.1; Dkt. 317 at 7 n.4; *see FBI v. Fikre*, 601 U.S. 234, 241 (2024) (concluding that the "formidable burden" a defendant has to prove voluntary cessation "holds for governmental defendants no less than for private ones"). Even though the Fifth Circuit has not yet "decide[d] whether the good-faith presumption survives *Fikre*," the Circuit "note[s] that *Fikre* makes no mention of that presumption." *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 826 n.10 (5th Cir. 2025).

Like the Fifth Circuit in *Speech First* and *Students for Fair Admissions*, this court will not definitively decide whether the defendants need only satisfy a lower burden, but rather concludes that the case is not moot regardless of which burden applies and regardless of whether the defendants receive a presumption of good faith. *See Speech First*, 979 F.3d at 328 ("We do not adopt the relaxed standard, but assume its applicability *arguendo* for purposes of this case."); *Students for Fair Admissions*, 142 F.4th at 826

("Because UT repealed its previous admissions policy, the UT Board of Regents repealed Rule 40304, and there is no indication that either intends to reconsider its decisions, the case is moot regardless of whether UT receives a presumption of good faith.").

### 2. The Three Factors

The presumption of good faith can be overcome "for three reasons: (1) the absence of a controlling statement of future intention; (2) the suspicious timing of the change; and (3) the [defendant's] continued defense of the challenged policies." *Speech First*, 979 F.3d at 328 (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769–70 (6th Cir. 2019)); *see Robinson*, 731 F.Supp.3d at 719; *cf. DeJohn v. Temple Univ.*, 537 F.3d 301, 311 (3d Cir. 2008) (rejecting mootness by voluntary cessation after considering only the timing of a policy change and continued defense of contested policy). In this case, all three factors weigh in favor of the plaintiffs.

First, the defendants have made no controlling statement of future intention. As the Petteway plaintiffs assert, the defendants' contention in their briefing that "[t]here is no threat that the 2021 map will be reinstated" is insufficient and lacks any evidentiary support. Dkt. 310 at 7; *see Speech First*, 979 F.3d at 328–29 ("Fenves's statements in brief are not a controlling statement of future intention."). Like in *Speech First*, the controlling entity

here—the Commissioners Court—has not "affirmatively stated," whether in a sworn affidavit or otherwise, that it has no intention of reinstating the 2021 map. *Speech First*, 979 F.3d at 328 (quoting *Schlissel*, 939 F.3d at 769).

Second, the 2026 map's timing is suspicious, even presuming that the new map is not litigation posturing. The defendants' stated reasons for the map's change are those listed in the Commissioners Court's resolution for its June 8, 2026, meeting: (1) compliance with applicable law, (2) the 2020 Census results, and (3) "improving partisan performance in favor of Republican candidates."[2] Dkt. 321-1; *see* Dkt. 321 at 14. But as the defendants acknowledged during the court's hearing, the new map does not change partisan outcomes in the 2026 general election except to make the commissioners' precincts slightly more Republican. *See* Dkt. 322 at 38:11–39:7. The primary partisan change under the new map is that the winner of the Constable election in Precinct 3 will likely be a Republican rather than a Democrat—as the current incumbent is—but not until the 2028 election. *See id.* Moreover—and oddly for a map drawn to improve Republican prospects—under the 2026 map a Democratic nominee for Justice of the Peace will run unopposed in a precinct that, as newly drawn, would otherwise

---

[2] The order adopting the 2026 map does not enumerate these same justifications. Dkt. 310-1. Rather, the order states generally that the "Commissioners' Court has determined that the interests of the people of the county are best served by changing the existing Commissioners, Constables, and Justices of the Peace Precinct Boundaries." *Id.*

likely elect a Republican. *See id.* at 36:12–23, 37:20–24, 40:9–17. If the defendants really cared about improving Republican partisan performance, they would have changed the 2021 map *before* the primary election to encourage a Republican to run for Justice of the Peace in that now-Republican-leaning precinct in 2026.

Indeed, the defendants could have changed the 2021 map to accomplish these partisan goals any time before this election cycle. The defendants did not have to wait until *between* the primary and general elections this cycle to change the map. And nothing in the Supreme Court's intervening redistricting opinions requires the Commissioners Court to adopt a new map in the middle of this election cycle. *See, e.g., Louisiana v. Callais*, 146 S. Ct. 1131, 1146–47 (2026). Even with the presumption of good faith in their favor, the defendants' timing is highly suspicious.

Third, the defendants continue to defend the 2021 map on its merits—even in the same hearing as they argued this litigation is moot. *See generally* Dkts. 316, 322.

Accordingly, the court finds the voluntary-cessation exemption applies, and the plaintiffs' claims are not moot.[3]

---

[3] The defendants' mootness argument is also undermined by the plaintiffs' recent announcement that they are seeking nominal damages in this litigation. Dkt. 324.

Additionally, the court grants the plaintiffs' request for leave to supplement their complaints as represented to the court during its hearing on July 28, 2026. *See* Dkt. 322 at 41:19–43:22.

Signed on Galveston Island this 7th day of August, 2026.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE